# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

--------------------------------------------------------

Jenna Gordon, by her Guardians Debra
and Marvin Gordon; Tenner Murphy, by his
guardians Kay and Richard Murphy;
Marrie Bottelson; Dionne Swanson; and on
behalf of others similarly situated,

Civ. No. 16-2623 (DWF/BRT)

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION
TO DISMISS**

Plaintiffs,

vs.

The Minnesota Department of
Human Services, an agency of the State of
Minnesota; and Emily Johnson Piper in her Capacity as
Commissioner of The Minnesota Department of
Human Services,

        Defendants.

-----------------------------------------------------------

## INTRODUCTION

　　Marrie Bottelson, one of the named Plaintiffs in this case, is a 41-year-old woman who has cerebral palsy and other developmental disabilities. She lives in a corporate foster care facility. Despite her disabilities, Ms. Bottelson is a successful artist and a valued member of the arts community in Minnesota. She is her own guardian and prides herself on making independent decisions about her life. For the past several years, she

has asked her case managers to help her move into her own apartment, only to be told that there are no options for her.  Because she lives in a corporate foster care facility, Ms. Bottelson's interaction with the community is severely limited.  As one example, because of staffing patterns in the facility, Ms. Bottelson is put to bed between 7 and 8 p.m. as there is no other way for her to receive her necessary care.  Ms. Bottelson would like to live in her own apartment, hire her own staff, and be as independent as possible.  She has been denied the necessary individualized housing services needed to help her find or develop alternatives to her current corporate foster care facility.  That is what this case is about.

Ms. Bottelson, the other named Plaintiffs, and hundreds of similarly situated people are individuals with disabilities receiving a Minnesota Home and Community Based Services ("HCBS") Disability Waiver ("Waiver") living in Community Residential Setting facilities, otherwise known as corporate foster care facilities.  They would like to be able to choose where they live – a choice most of us take for granted. The Minnesota Department of Human Services ("DHS") has promised for many years to help people "move to more integrated settings, homes that they choose," (*DHS Advertisement*, ACCESS PRESS, September, 2015), but it has failed to give Plaintiffs the opportunity to meet that that goal.

Defendants have over relied on corporate foster care facilities for people receiving Waiver services.  This overreliance has led Defendants to violate the integration mandate of both the Americans with Disabilities Act ("ADA") and Chapter 504 of the Rehabilitation Act ("Rehabilitation Act").  The class consists of hundreds of individuals

living in corporate foster care facilities who are not in the most integrated setting. Essentially, Plaintiffs seek services to help them plan for an alternative individualized housing option, and reasonable modifications to Defendants' service system to ensure they have an opportunity to implement these individualized plans. In their Complaint, Plaintiffs seek declaratory and injunctive relief to redress the harm Defendants have caused them, and assert the following claims: failure to furnish services with reasonable promptness in violation of 42 U.S.C. § 1396a(a)(8); violation of due process, advance notice, and fair hearing; violation of Title II of The Americans with Disabilities Act; and violation of Section 504 of the Rehabilitation Act. *See* Complaint dated August 3, 2016 ("Compl.") [Dkt. #1] ¶¶ 105-135; Prayer for Relief. Plaintiffs have sufficiently pled these claims.

For years, Defendants have ignored, delayed, and denied integrated services to class members in Defendants' residential service system under the guise that changes would be made at a later date. Defendants' Motion to Dismiss seeks to do the same, and requests that the Court dismiss Plaintiffs' claims in order to further delay action. In so doing, Defendants attempt to broadly shield themselves from any liability by inventing arguments about a five-year grace period supposedly granted by the 2014 HCBS settings rule ("2014 rule") promulgated by the Centers for Medicaid and Medicaid ("CMS"). The 2014 rule merely sets a deadline for states to come into compliance with bare-minimum requirements about where states are allowed to authorize the use of HCBS. It does not, however, absolve Defendants from authorizing and providing prompt services or remedying illegal segregation. Defendants further rely on several arguments this Court

3

has already found unpersuasive as recently as July of this year in *Guggenberger v. Minnesota*, No. 15-3439 (DWF/BRT), ___ F. Supp. 3d ___, 2016 WL 4098562 (D. Minn. July 28, 2016). Ultimately, Defendants' arguments are unavailing, contain significant legal errors, and fail to accept the allegations in the Complaint as true, as they must. Plaintiffs respectfully submit this brief in opposition to Defendants' Motion to Dismiss, and, for the reasons explained herein, respectively request that Defendants' Motion to Dismiss be denied.[1]

## FACTUAL BACKGROUND

### A. As Enrollees in the Medical Assistance Waiver Program, Plaintiffs are Entitled to Services in Integrated Settings.

Defendant DHS is the dedicated Medicaid Agency for Minnesota. Defendant Emily Johnson Piper is the Commissioner of DHS. Defendants manage and operate Minnesota's Medicaid program, Medical Assistance ("M.A."). The M.A. Waiver Program ("Waiver Program") provides different types of services for persons with disabilities, including different types of residential services in a variety of settings. Pursuant to Title II of the ADA, residential settings must be "the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. §

---

[1] Defendants' motion to dismiss should be denied in its entirety. If, however, the Court determines there is a deficiency in the Complaint, or that any claims are insufficiently pled, Plaintiffs respectfully request leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendment to pleadings shall be liberally permitted to give a plaintiff an opportunity to test claims on the merits. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.*, 958 F.2d 836, 839 (8th Cir. 1992).

35.130(d).  In the administration of its Waiver Program, however, Defendants over rely on the most dominant type of residential setting, the corporate foster care facility. Compl. ¶¶ 4, 13, 28.  These facilities do not necessarily provide the most integrated setting appropriate to an individual's needs.  *Id.* at ¶¶ 6, 70.  Nonetheless, Defendants have essentially funneled individual Waiver recipients into receiving residential services in corporate foster care facilities.  *Id.* at ¶¶ 4, 70-74.  Plaintiffs are individuals who are eligible for and enrolled in the Waiver Program.  *Id.* at ¶¶ 2, 96.  Like thousands of other persons with disabilities, they receive residential Waiver services and live in one of the 3,457 corporate foster care facilities in Minnesota.  *Id.* at ¶¶ 23, 68.  Plaintiffs are capable of living in a more integrated setting than they are afforded in corporate foster care facilities.  *Id.* at ¶ 13.  Plaintiffs have requested but not received access to Waiver services to help plan for, move into, and live in customized settings.  *Id.* at ¶¶ 11, 30-34, 92, 110-11, 114.  Defendants refuse to direct lead agencies[2] to present, offer, or discuss alternative housing possibilities and ultimately authorize payment for and provide such services.  *Id.* at ¶¶ 29, 72, 110, 116.

**B.  The Named Plaintiffs.**

The named Plaintiffs have been living in corporate foster care facilities for most of their adult lives.  *See id.* at ¶ 96.  As discussed above, Marrie Bottelson is a 41-year-old woman who has cerebral palsy and other developmental disabilities.  *Id.* at ¶ 33.  She lives in a corporate foster care facility, has asked her case managers to help her move into

---

[2] Pursuant to Minn. Stat. § 256B.05, subd. 1, Defendants supervise counties, which serve as lead agencies for purposes of administering M.A., including Waiver services.

her own apartment, but been denied the necessary individualized housing services she needs to help her find or develop alternatives. *Id.* The other named Plaintiffs face similar problems.

Dionne Swanson is a 43-year-old woman who has cerebral palsy and other developmental disabilities. *Id.* at ¶ 34. Ms. Swanson lives in a corporate care facility. *Id.* Ms. Swanson is her own guardian and has developed many independent skills over the years. *Id.* at ¶ 34(b). Ms. Swanson wants to make basic decisions other adults are able to make, such as choosing what time to go to bed. *Id.* at ¶ 34(c). Ms. Swanson has had difficulty getting group home staff to provide care that respects her wishes. *Id.* at ¶ 34(d). Ms. Swanson needs person-centered planning services, and other individualized housing services to help her create and execute a plan to live in the most integrated setting appropriate to her needs. *Id.* at ¶ 34(e). Despite asking for person-centered planning and other individualized housing services for a long time, Ms. Swanson has not received them. *Id.* at ¶ 34(f). She has never received a notice of denial or information regarding her due process rights in regards to her request for these services. *Id.*

Jenna Gordon is a 24-year-old woman who has various developmental disabilities, including Coffin Siris Syndrome and Dandy Walker Syndrome that impede her cognitive functioning. *Id.* at ¶ 31. She has lived in multiple corporate foster care facilities. *Id.* at ¶ 31(a)-(b). Ms. Gordon has always wanted to live alone in order to enjoy more independence, have more control over her day-to-day choices, and to better access the community. *Id.* at ¶¶ 31(d)-(f). Ms. Gordon and her guardians have requested, but have

not received, services to enable her to properly plan for and remain in a more integrated setting. *Id.* at ¶ 31(g).

Tenner Murphy is a 32-year-old man who has severe physical and cognitive disabilities as a result of a lifelong battle with degenerative brain cancer. *Id.* at ¶ 32. When he was younger, Mr. Murphy's disabilities were less severe, allowing him to graduate from high school and develop various hobbies. *Id.* at ¶¶ 32(a)-(c). Due to the progression of his disabilities, Mr. Murphy moved into a corporate foster care facility. *Id.* at ¶ 32(e). In this environment, Mr. Murphy is forced to use a wheelchair and spends most of his time alone, even though he would prefer to interact with other people. *Id.* at ¶¶ 32(f)-(g). The other residents in the corporate foster care facility have difficulty communicating and Mr. Murphy rarely speaks or interacts with them. *Id.* at ¶ 32(j). Because he enjoys meeting new people and conversing with others, Mr. Murphy wants to be able to choose his own roommates. *Id.* Mr. Murphy, and his mother, have requested, but not received, services to enable him to plan for and transition into a more integrated setting. *Id.* at ¶¶ 32(k)-(n). Defendants' failure to provide Mr. Murphy with an informed choice of integrated alternatives has prevented Mr. Murphy from choosing individualized housing services, such as a live-in caregiver that he can hire and train to help him more fully interact with his community and be as integrated as possible. *Id.* at ¶ 32(m). Mr. Murphy has not received a notice of denial or information regarding his due process rights in regards to his request for these services. *Id.* at ¶ 32(n).

The named Plaintiffs, as well as hundreds of similarly situated individuals, are stuck in corporate foster care facilities and are thereby unnecessarily segregated from

their community.  *Id.* at ¶¶ 6, 11-13, 28, 43, 78-82, 90, 94.  Defendants' actions and inaction have resulted in an overreliance on corporate foster care facilities, thereby unnecessarily segregating Plaintiffs from the community, leading to learned helplessness, limiting their autonomy, and limiting their ability to interact with non-disabled persons to the fullest extent possible.  *Id.* at ¶¶ 2-3, 6, 79, 82.  Defendants do not dispute this central assertion.  Under Defendants' own definition, corporate foster care facilities are segregated, as all residents have disabilities, there is regimentation in daily activities, and there are limitations on community activities.  *Id.* at ¶¶ 5-6.

Defendants argue that Plaintiffs are not in an institution or at imminent risk of being institutionalized.  Defendants' Memorandum in Support of Motion to Dismiss dated August 14, 2016 ("Defs' Mem.") [Dkt. #12] at 22-23.  Defendants claim that Plaintiffs "reside in the community in private residences."  *Id.* at 22.  But calling them that does not make it so.  Plaintiffs have been stuck in corporate foster care facilities for years, and wish to receive residential Waiver services in more a more integrated setting.  *See generally* Compl. at ¶¶ 2-4, 31-34, 96.

To remedy this violation, Defendants can and should make reasonable modifications to the residential service system.  *Id.* at ¶ 104; Prayer for Relief.  The requested relief is two-fold: provide a planning process and make reasonable changes to the residential services system so that integrative plans can be implemented.  Compl. at ¶¶ 11-13; Prayer for Relief 4(b), 4(c)(ii).

**C. The Waiver Program Prevents Prompt Authorization and Provision of Individualized Housing Services.**

Defendants have denied and failed to provide services to Plaintiffs with reasonable promptness. *Id.* at ¶¶ 105-112. Moreover, Defendants have also denied Plaintiffs the required legal notice or opportunity to challenge such denial. *Id.* at ¶¶ 113-20.

When Plaintiffs applied for and enrolled in the Waiver Program, they became eligible for all the Waiver services offered for which they may have a need. *See* Minn. Stat. § 256B.092 subd. 1a-1b. Minnesota law requires that case managers, under the supervision of Defendants, help Waiver Program participants, such as Plaintiffs, identify these needs and identify the services available to help them meet their needs. Minn. Stat. § 256B.049 subd. 1a (laying out the basic requirements of case management). While each Plaintiff has varying needs, Plaintiffs generally require several services to ensure their health, safety, welfare, and to help them live and participate in the community. *See* Compl. at ¶ 2; Minn. Stat. § 256B.092 subd. 1b (describing the statutorily mandated planning required for Defendants to ensure they are providing for the health and welfare of Waiver recipients).

Defendants, however, have failed to administer the Waiver Program in a manner that conforms with these state statutes and federal Medicaid law as they do not afford reasonably prompt authorization (payment) and provision of Waiver services.[3] Compl. at

---

[3] Both parties agree that professional person-centered planning, a service offered through the Waiver Program, could provide for individualized transition or moving plans for individuals. *See* Compl. at ¶ 10; Defs' Memo at 4-5. Person-centered planning is a process of discovery and action and when facilitated by a trained planner, can enable the creation of an individualized transition plan. Compl. at ¶¶ 8-9. Plaintiffs assert this

¶¶ 109-11.  Instead, Defendants' overreliance on corporate foster care facilities has produced a system where case managers rarely discuss integrated alternatives to such facilities, irrespective of an individual's needs.  *Id.* at ¶ 77.  In Defendants' Motion to Dismiss, rather than admit they are required to enforce state law and require lead agencies to authorize individualized services such as person-centered planning, Defendants posit that Plaintiffs might have to wait several more years for such services.  Defs' Mem. at 13-15.  They argue such period would be reasonable, as a matter of law.  *Id.*  They even suggest that Plaintiffs may not ever receive such services.  *Id.* at 14.  They also refuse to provide written notice and other due process protections to ensure Plaintiffs have a chance to challenge these denials.  *See* Compl. at ¶¶ 114-15.  Contrary to Defendants' position, Plaintiffs are entitled to informed choice and reasonably prompt access to the full range of services Defendants offer under the Waiver.  *Id.* at ¶ 4.

## <u>ARGUMENT</u>

### A.   **LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1051 (D. Minn. 2014).[4]  To

---

service, combined with other individualized services, could afford a reasonable chance to live in a more integrated setting.  *Id.* at ¶ 10.

[4] Defendants also seek dismissal, in part, based on standing, a 12(b)(1) challenge. Specifically, they make a facial attack regarding jurisdiction claiming Plaintiffs "have not alleged [an] injury in fact."  Defs' Mem. at 12.  The party seeking to establish the court's jurisdiction bears the burden of proof.  *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d

survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, Plaintiffs are not required to actually prove the merits of their case in the complaint. *See Advanced Auto Transp., Inc. v. Pawlenty*, No. 10-159 (DWF/AJB), 2010 WL 2265159, at *2 (D. Minn. June 2, 2010). A complaint need not contain "detailed factual allegations," it only must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## B.    JUSTICIABILITY

Defendants make two justiciability challenges in seeking to dismiss Count I of the Complaint. First, they argue that Plaintiffs do not have standing to bring a reasonable promptness claim because they have not alleged an injury-in-fact. Defs' Mem. at 12. Second, Defendants assert that Plaintiffs' reasonable promptness claim is not ripe for judicial review. *Id.* at 18. Both arguments are incorrect, as the Plaintiffs do have Article III standing to bring all their claims and all the claims are fit for judicial review.

---

985, 988 (8th Cir. 2010). On a facial attack, "the court restricts itself to the face of the pleadings . . . and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted); *see also Ebert v. General Mills*, 48 F.Supp.3d 1222, 1227 (D. Minn. 2014) (holding under Rule 12(b)(1) facial attack, court applies Rule 12(b)(6) standard, and "assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.").

**1. Plaintiffs have Suffered Injury Caused by Defendants' Actions that can be Redressed by this Court.**

Article III of the Constitution limits the power of the federal courts to deciding only actual "cases" and "controversies." U.S. Const., art. III, § 2, cl. 1. To establish constitutional Article III standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between that injury and the challenged conduct; and (3) the likelihood that a favorable decision by the court will redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (holding that the party invoking federal jurisdiction bears the burden of proof). These constitutional requirements of standing limit federal courts to deciding only cases where the plaintiffs can show a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014).

The plaintiff's burden corresponds with the degree of evidence required at the relevant stage of litigation. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). "At the pleading stage . . . general factual allegations of injury . . . may suffice." *Id.*; *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013).

Here, Plaintiffs allege facts that show distinct injury caused by the Defendants' conduct that can be redressed by the requested relief. The direct injury is plainly segregation, in other words, being cut off from the community and having limited ability to interact with persons who do not have disabilities. Compl. at ¶¶ 4, 6, 13, 78, 82; *see*

*also id.* at ¶¶ 31-34, 94 (describing the effects of isolation and lack of interaction with nondisabled persons).  Defendants' management of the Waiver Program, including their denial of reasonable prompt services and overreliance on corporate foster care facilities in the residential system, has directly led to this harm of segregation from the community at large.  *Id.* at ¶¶ 4, 6, 13.

Plaintiffs request two primary types of relief that would alleviate this harm.  First, Plaintiffs request reasonably prompt payment authorization and provision of services that could help develop an individualized plan to move out of their corporate foster care facility.  Compl. at Prayer for Relief ¶ 4(b).[5]  Second, Plaintiffs ask for reasonable modifications to the service system, such as roommate network and provider incentives, to help ensure they will have an opportunity to actually develop and implement these individualized plans.  *Id.* at ¶ 4(c).

Defendants assert that Plaintiffs have not shown an injury because Defendants believe they are not required to provide person-centered planning.  Defs' Mem. at 12.  In so doing, they ignore Plaintiffs' allegations that Defendants' comprehensive actions, or lack thereof, are causing the direct injury and harm of segregation (and its resulting ill-effects).  Plaintiffs have properly alleged a personal injury traceable to Defendants' actions that can be redressed by the proposed relief.  Defendants' objection to standing should therefore be rejected.

---

[5] They also ask for relief from the ongoing violation of due process stemming from Defendants' refusal to procure reasonably prompt authorization of payment and provision of services.  Compl. at ¶ 120; Prayer for Relief ¶ 2.

### 2. Plaintiffs' Claims are Ripe.

Plaintiffs' claims are ripe because the issues are fit for judicial review and they have already alleged a direct injury. "The ripeness doctrine flows from both the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Public Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000) (internal citations omitted). *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

Ripeness "requires examination of both [1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (internal quotations and citations omitted). Fitness, the Court explained, guards the courts from judicial review of "hypothetical or speculative disagreements." *Id.* Hardship "asks whether delayed review inflicts significant practical harm on the plaintiffs." *Id.* (internal quotations omitted).

Defendants' allege that that Plaintiffs' reasonable promptness claim is not ripe for review until after a 2014 rule compliance deadline expires in 2019. Contrary to Defendants' contentions, Plaintiffs' reasonable promptness claim is fit to be resolved and any delay in adjudicating Plaintiffs' reasonable promptness claim inflicts harm and hardship on Plaintiffs.

### a. Plaintiffs' Reasonable Promptness Claims Under Medicaid are Fit for Review.

Defendants assert that Plaintiffs' reasonable promptness claim, brought pursuant to 42 U.S.C. § 1396a(a)(8), is not ripe for review. "Whether a case is fit depends on

14

whether it would benefit from further factual development. . . . [A] case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Public Water Supply Dist. No. 10 of Cass Cnty. v. City of Peculiar*, 345 F.3d 570, 573 (8th Cir. 2003). Plaintiffs' case satisfies this standard.

Federal law requires Minnesota, a state that has elected to participate in the Medicaid program under 42 U.S.C. §§ 1396 *et seq.*, to provide all services to eligible individuals with reasonable promptness. 42 U.S.C. § 1396a(a)(8); 42 C.F.R. § 435.930. Defendants have managed and continue to manage the Waiver Program in a manner that denies Plaintiffs person-centered planning and other individualized housing services offered through the Waivers. Compl. at ¶¶ 11, 77, 89-94. The violations are real and exist today and are not contingent on future events.

Moreover, the proper question in a ripeness analysis is whether Defendants' conduct has resulted (and continues to result) in actual, current, and ongoing violations of Medicaid laws. *See Farm-to-Consumer Legal Def. Fund v. Sebelius*, 734 F. Supp. 2d 668 (N.D. Ia. 2010) (rejecting defendants' lack of ripeness argument by finding "that the defendants are challenging the ripeness of the wrong claims"). Defendants' argue that the Court cannot fully adjudicate Plaintiffs' claims until at least 2019, the last year they have to come into full compliance with the 2014 rule. Defs' Mem. at 18. In *Guggenberger*, the same Defendants made similar arguments related to their implementation of legislative changes and the *Olmstead* plan. *Guggenberger*, 2016 WL 4098562, at *9. But as this Court reasoned in that case, "ripeness is not automatically defeated by ongoing revision or implementation of an administrative agency's regulatory

15

plan." *Id.* at *8.  And here, unlike in *Guggenberger*, Defendants do not even specify how their plan to comply with the 2014 rule will address the alleged violations of the reasonable promptness requirement.  As it concluded in *Guggenberger*, this Court should find the ongoing violations in this case fit for review.

###### b. Delay in Adjudicating Plaintiffs' Reasonable Promptness Claim Inflicts Harm and Hardship on Plaintiffs.

The "hardship" aspect of the ripeness doctrine provides that "[i]t must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Public Water*, 345 F.3d at 573.  Here, there is more than a mere threat of some future injury.  Plaintiffs have alleged a direct, sustained injury based on the Defendants' conduct.  Compl. at ¶¶ 4, 6, 13, 28, 110, 111, 115, 127, 134.  Defendants have already denied services to Plaintiffs, deprived them of due process rights, and isolated them for years in corporate foster care facilities that do not constitute the legally required most integrated setting.  *Id.*  This harm is real, specific, and immediate.  *See id.*

In fact, Defendants assert that they may only have to respond to Plaintiffs' complaint if there is a determination that Plaintiffs' corporate foster care settings are not home and community based.  Defs' Mem. at 18.  Nothing could be further from the truth. The harm flows directly from Defendants' denial of reasonably prompt services and their unnecessary segregation in corporate foster care facilities, regardless of whether the Secretary of Health and Human Services finds the setting to be "community-based."  And it is happening right now.  *See Guggenberger*, 2016 WL 4098562, at *9 (concluding that

allegations of real harm stemming from Defendant's purported mismanagement of the Waivers made withholding judicial review unwarranted).  Plaintiffs' reasonable promptness claim is therefore ripe and may be reviewed by this Court.

## C.  PLAINTIFFS HAVE PLED ACTIONABLE INTEGRATION MANDATE CLAIMS

Plaintiffs claim they are currently receiving Waiver services in corporate foster care facilities that are not the most integrated settings appropriate to their needs. Plaintiffs allege Defendants can reasonably accommodate their request to receive Waiver services in a more integrated setting.  In trying to further delay Plaintiffs' desired transition, Defendants raise two improper arguments.  They rely on an incorrect and discredited theory regarding who can legally bring integration mandate claims and they attempt to assert an affirmative defense that is inappropriate to litigate at this stage of the lawsuit.

### 1.  Plaintiffs Need Not Allege They are Institutionalized or at Imminent Risk of Institutionalization to Bring Integration Mandate Claims.

Defendants rely on a discredited argument that Plaintiffs cannot bring their integration mandate claims because they "are not, and have not been, institutionalized" nor "are under an impending risk of institutionalization."[6]  Defs' Mem. at 22-23.  But as

---

[6] The ADA and Rehabilitation Act claims can be analyzed together.  *Guggenberger*, 2016 WL 4098562, at *32.  Notwithstanding Defendants' insistence to the contrary, this Court in *Guggenberger* held that plaintiffs need not allege a "sole impetus" requirement to maintain a Rehabilitation Act claim.  *Id.* at *38-39.  Plaintiffs also recognize, however, that this Court's dismissal of DHS from the Rehabilitation Act claim in *Guggenberger* is similarly applicable in this case.  *Id.* at *15 (holding that allowing the Rehabilitation Act claims to proceed against DHS would be redundant).  Under that reasoning, Plaintiffs do not oppose dismissal of Defendant DHS from this case.

recently as July 28, 2016, this Court in *Guggenberger* considered the same argument and explicitly rejected it, reasoning:

> The text of the [integration] mandate requires Defendants to administer their "services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); *see also* 28 C.F.R. § 41.51(d). Although the Supreme Court's interpretation of the integration mandate in *Olmstead* arose in the context of claims by two individuals who had been institutionalized, nothing within the integration mandate limits its application to the precise situation faced by the *Olmstead* plaintiffs. Rather, the preamble to the ADA regulations suggests that the integration mandate's scope is much broader, referring to "the most integrated setting" as "a setting that enables individuals with disabilities to interact with nondisabled persons *to the fullest extent possible*."

*Id.* at *34 (emphasis original) (citing *Olmstead v. L.C.*, 527 U.S. 581, 607 (1999)).  The Court relies on a variety of sources, including the recent Seventh Circuit's reasoning that "isolation in the home for a person 'who could handle and benefit from' time out in the general community is also inconsistent with the integration mandate."  *Steimel v. Wernert*, 823 F.3d 902, 910-11 (7th Cir. 2016) (concluding that the integration mandate applies to all settings and prohibits unjustified segregation wherever it takes place); *Guggenberger*, 2016 WL 4098562, at *36 (concluding that the unjustified isolation prohibited by *Olmstead* extends "beyond the limited scope of institutionalization").

Plaintiffs here claim that living in a corporate foster care facility, filled exclusively with other residents with disabilities, is not the most integrated setting for their needs. *See* Compl. at ¶¶ 6, 13, 96.  These facilities do not enable Plaintiffs to interact with persons without disabilities to the greatest extent possible, as required by the integration mandate. *Id*. at ¶¶ 6, 78-79, 81-82.

The named Plaintiffs experience these restrictions and lack of interaction with non-disabled persons because their current settings restrict their ability to structure their everyday lives and schedules, including with whom to associate.  *Id.* at ¶¶ 31(a); 32(g)-(j); 33(e)-(g); 34(c)-(d); 81.  The structure and administration of corporate foster care facilities, including staffing patterns, limits the scope of participation and interaction in everyday activities in the community.  *Id.* at ¶¶ 31(f), 32(f)-(i), 33(e)-(f), 34(c), 78-82.  Plaintiffs properly pled their integration mandate claims by alleging that living in a corporate foster care facility is not the most integrated setting for their needs.

### 2. Plaintiffs Request Reasonable Accommodations to Resolve Their Integration Mandate Claim.

Plaintiffs assert that the Defendants can reasonably accommodate the requested relief to receive residential Waiver services in the most integrated settings.  Defendants, in response, mischaracterize the nature of the requested relief while improperly raising a "fundamental alteration" affirmative defense.

### a. Plaintiffs Have Properly Alleged Defendants can Reasonably Accommodate the Requested Relief.

The elements essential to bring an integration mandate claim, as interpreted by *Olmstead*, are well settled.  States must provide services in the most integrated setting when (1) such placement is appropriate, (2) the person does not oppose the placement, and (3) the placement can be reasonably accommodated.  *See Olmstead*, 527 U.S. at 607 (articulating under what conditions states are obligated to provide community treatment in accordance with the integration mandate of Title II of the ADA), *see also Guggenberger*, 2016 WL 4098562, at *32 (citing *Olmstead*).  Defendants do not

19

challenge Plaintiffs' allegations as to the first two elements, but only posit that the requested relief is not authorized by the ADA and the Rehabilitation Act.  Defs' Mem. at 23-24.  Plaintiffs' Complaint makes clear, however, that Defendants can reasonably accommodate their requests while taking into account the needs of others within the service system.

As a starting point, Plaintiffs do not request a new service or other similar change that would adversely impact others in the residential service system, as Defendants are already providing person-centered planning and other types of Waiver services to ensure some individuals can live in individualized housing settings.  Compl. at ¶¶ 67-70. Instead, Plaintiffs assert that Defendant's overreliance on segregated settings can be reasonably modified by providing existing services in more integrated settings.  *Id.* at ¶¶ 3-4, 7, 13, 63-65, 124.

Plaintiffs argue this can occur through two types of modifications: (1) authorization and providing access to and payment for planning and transition services and (2) reasonable changes to the service system to ensure Plaintiffs have a chance to implement those plans and receive residential Waiver services in integrated settings.  Id. at Prayer for Relief ¶¶ 4(b), 4(c).  Under the first category, as one example, Defendants could require "specific, customized, written, and enforceable person housing transition plans" be developed for Plaintiffs with person-centered planning services already widely available in the state.  *Id.* at ¶ 90.  Under the second category, Plaintiffs ask Defendants to fulfill their role as the Statewide Medicaid agency by making some basic modifications to

the residential service system and enforcing the fair provision of individualized housing services in every county.  *Id.* at ¶ 91.

It is well settled that reasonable modification for purposes of complying with the integration mandate includes providing existing services in more integrated, rather than segregated, settings.  *Lane v. Kitzhaber*, 283 F.R.D. 587, 602 (D. Or. 2012) (explaining that states must follow the ADA's nondiscrimination requirement by ensuring services they do provide are delivered so in the most integrated setting); *see Steimel*, 823 F.3d at 911; *Guggenberger*, 2016 WL 4098562, at *31.  For example, the plaintiffs in *Lane* were receiving employment services in segregated workshop settings.  *Lane*, 283 F.R.D. at 591.  They argued the state was violating the integration mandate by over relying on this segregated model and that Defendants could make reasonable accommodations to their employment service system by providing existing employment services in integrated settings. *Id.* at 602 (finding that plaintiffs requested relief to seek the provision of existing services to qualified individuals in integrated settings properly alleged a reasonable modification).  Plaintiffs here seek similarly reasonable modifications so as to receive services in the most integrated residential setting and as such, they have sufficiently asserted facts to sustain their integration mandate claim.

### b.  Defendants' Fundamental Alteration Arguments are an Affirmative Defense and Cannot be Resolved by a Motion to Dismiss.

Defendants argue the ADA does not require them to provide person-centered planning services and theorize that if Plaintiffs are seeking "program funding", it would pose a fundamental alteration to Minnesota's healthcare program.  Defs' Mem. at 24.

Such alarmist objections, at this point, are mere speculation.   Nowhere do Plaintiffs ask for "program funding" or boundless relief so as to live where they want.[7]  They merely want to receive residential Waiver services in a more integrated setting.  *See, e.g.*, Compl. at ¶ 4.  They specifically request authorization and provision of Waiver services for the purposes of developing an individual transition plan and reasonable modifications that will allow for a realistic chance to implement it.  *Id.* at Prayer for Relief.  Whether it will cost more, less, or the same as the existing services is for another day.

Most importantly, however, is that a motion to dismiss is not the proper stage of litigation to evaluate these arguments.  *See Guggenberger*, 2016 WL 4098562, at *37-38. (holding that a resolution of Defendants' fundamental alteration defense would be improper during a motion to dismiss).  Like in *Guggenberger*, the complexity of the issues regarding the administration and management of Minnesota's Waiver service system requires fact-specific inquiries.  *Id.* (reasoning that a fact-specific inquiry is necessary to assess Defendant's affirmative defense).  Because a multitude of factual

---

[7] Even if Defendants can eventually demonstrate, after discovery, that Plaintiffs' requests would potentially have a corresponding cost, it is well settled that cost comparisons are not fixed and static over time.  U.S. Dep't of Justice Civil Rights Division, *Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C.* (June 22, 2011), http://www.ada.gov/olmstead/q&a_olmstead.htm.  "[I]f the cost of providing integrated services is likely to decrease over time, for instance due to enhanced independence or decreased support needs, this reduction should be incorporated [into the fundamental alteration analysis]."  *Id.*  Furthermore, the facts will show the average cost of services in corporate foster care facilities is higher than services provided in one's own home, which led in part to the corporate foster care moratorium.  *See* Minn. Stat. § 245A.03 subd. 7. *See also* Compl. at ¶ 69.

issues must be discovered for Defendants to prove such a defense, Defendants' motion must be denied.

### D.   PLAINTIFFS HAVE PLED AN ACTIONABLE REASONABLE PROMPTNESS CLAIM

Under 42 U.S.C. § 1396a(a)(8), a state plan for Medical Assistance must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  This basic Medicaid requirement, known as "reasonable promptness," is privately enforceable under 42 U.S.C. § 1983. *See Sabree v. Richman*, 367 F.3d 180, 193-94 (3d Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 88-89 (1st Cir. 2002).[8]

Plaintiffs properly allege all the elements of a reasonable promptness claim.  They allege that Defendants' management of the Waiver Program leads to the widespread and *ad hoc* denials of certain types of Waiver services, namely those that help individuals move into and remain in individualized settings.  Compl. at ¶¶ 2-3, 30, 60, 77.  Even more specifically, the named Plaintiffs have requested services to help them move out of corporate foster care facilities and have been waiting an unreasonable amount of time for Defendants to authorize payment for them and provide them.  *Id.* at ¶¶ 31(g), 32(k), 33(j)-

---

[8] Defendants note, but do not explain how, the Medicaid enforcement through 42 U.S.C. § 1983 might be precluded by *Armstrong*.  As this court analyzed in *Guggenberger*, such speculation is unfounded as *Armstrong* does not precluded private Medicaid enforcement across the board.  *Guggenberger*, 2016 WL 4098562, at *17-18.  "Under the standard outlined by the Eighth Circuit in *Lankford*, 451 F.3d at 508, … Plaintiffs may assert a § 1983 claim based on Defendants' purported failure to comply with § 1396a(a)(8)'s reasonable promptness requirement."  *Id.* at *18.

(l), 34(f).  Instead of answering these allegations, Defendants improperly question these assertions at this stage of the litigation.  They carry this delay tactic further by theorizing the 2014 rule, case law, and due process doctrine afford them permission to continue to deny services for several more years, or indefinitely.  Such legal theories do not absolve their continued violation of Medicaid's reasonable promptness requirements.

1.  **Defendants' Management of the Waiver Services Program Violates the Reasonable Promptness Requirement.**

There is no universal timeframe for what constitutes "reasonable promptness."  For applicants with disabilities, federal regulations require states to determine Medical Assistance eligibility within 90 days.  42 C.F.R. § 435.912(c)(3).  In the broader context of service authorizations, courts engage in a fact-specific inquiry to determine whether State Medicaid Agencies are furnishing Medical Assistance services "promptly to beneficiaries without any delay caused by the agency's administrative procedures."  42 C.F.R. § 435.930(a).

Here, Plaintiffs – who are already receiving some Waiver services – point to the Defendants' administrative procedures that cause delay, sometimes indefinitely, in the provision of other types of Waiver services.  Under state law, lead agencies must develop service plans that identify the services necessary for the health and welfare of an individual.  *See* Minn. Stat. § 256B.092, subd. 1b.  As the State Medicaid Agency, Defendants must ensure that lead agencies authorize payment for such services.  *See* Minn. Stat. § 256B.092, subd. 2(5).

24

Defendants have no system, policies, or procedures in place to ensure lead agencies properly authorize Waiver services that could help a Waiver recipient plan for and move into a more individualized integrated setting. Compl. at ¶¶ 29-30, 72-77, 88-94. Instead, when individuals are found to need residential services, Defendants will approve authorization of Waiver services in corporate foster care facilities, but do not require lead agencies to authorize individualized services. *Id.* at ¶¶ 72-73, 77.

Even when Waiver Recipients do ask to move or receive services outside and apart from a corporate foster care facility, there is no requirement that the lead agency must respond. *Id.* at ¶¶ 29-30. Defendants have no mechanisms to ensure there are policies or directives that require counties to offer or accept requests for such services. *Id.* The named Plaintiffs in the present case have all repeatedly requested to move or receive individualized services under the Waiver. Compl. at ¶¶ 31(g)-(h), 32(k)-(m), 33(i)-(k), 34(b). They have been waiting for responses or authorization of payment for such requests for varying periods of time. *Id.* This lack of response has the effect of denying them these vital services. *Id.*

Again, the recent holding in *Guggenberger* is instructive. In that case, plaintiffs had applied for and been deemed eligible for Waiver services, but remained on a waiting list. *Guggenberger*, 2016 WL 4098562, at *2. The *Guggenberger* Plaintiffs alleged that the maintenance of such a waitlist violated the reasonable promptness requirement because Defendants had funding available. *Id.* at *22-23. This Court held that such allegations, including Defendants' management of the unused funding, was enough to allege a violation of 1396a(a)(8). *Id.* at *22 (holding that "with respect to otherwise

25

eligible individuals below the cap or for whom funding is available, *a state's failure to fill available waiver slots or use funding appropriated for Waiver services* may violate the reasonable promptness requirement") (emphasis added).

Here, Plaintiffs are all eligible for and enrolled in the Waiver Program.  The Waiver Program funds and provides a variety of services, many of which are designed to help people live in settings other than corporate foster care facilities.  Defs' Mem. at 4.  Plaintiffs allege that Defendants could authorize such services for them.  *See* Compl. at Prayer for Relief.  In fact, some Waiver recipients in the residential system receive services that have allowed them to move into and remain in individualized and integrated settings.  *Id.* at ¶ 70.  Defendants' inconsistent management of the Program, however, prevents Plaintiffs from being authorized for receiving these services, let alone in a timely manner (and sometimes at all).  This *ad hoc* management of the statewide residential services system prevents many Waiver service recipients, including Plaintiffs, from being authorized for Waiver services for which they are eligible.  *Id.* at ¶¶ 2-3, 30, 60, 77.  Defendants, therefore, are causing an unreasonable, and in some cases indefinite, delay in both the payment and provision of such Waiver services.  Plaintiffs' reasonable promptness claim should be allowed to proceed.

## 2.  The Requirement of Reasonable Promptness Applies to Both Payment and Provision of Services.

As stated above, Plaintiffs have requested reasonably prompt authorization of individualized services, which includes payment for them.  They simply request that for individualized housing services such as person-centered planning, Defendants follow the

same or similar process as they do in promptly authorizing services for corporate foster care. They allege that Defendants' mismanagement of the Waiver Program, however, prevents such prompt authorization, sometimes indefinitely.

Defendants rely on *Bruggeman* and similar cases that arguably stand for the proposition that reasonable promptness claims only involve payment of services, not provision of services. Defs' Mem. at 16 (citing *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 910 (7th Cir. 2003)). But the Seventh Circuit, in conformity with other jurisdictions, has recently held that Congress specifically amended the payment-only definition of Medical Assistance articulated in *Bruggeman*. *O.B. v. Norwood*, No. 16-2049, ___ F.3d ___, 2016 WL 5335494, at *4 (7th Cir. Sept. 23, 2016); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1320-21 (W.D. Wash. 2015) (finding that the Affordable Care Act clarified that Medical Assistance "means payment of part or all of the cost of ... care and services *or the care and services themselves or both[.]*" (citing 42 U.S.C. § 1396d(a)) (emphasis original)). In *Dunakin,* Defendants failed to provide the plaintiffs with assessment services while they languished in nursing care facilities waiting for such services to help get them out of the nursing home. *Id*. at 1320-21 (holding that the State must provide payment and provision of services). Defendants' insistence that reasonable promptness only applies to payment, therefore, is incorrect. Here, where they are both denying authorization of payment and the provision of services, Plaintiffs' claim must be allowed to proceed.

3.  **Defendants Argument that it is Reasonably Prompt, as a Matter of Law, to Deny Services for Several Years, or Even Indefinitely, is Wholly Without Merit and Must be Rejected.**

Defendants cite to several cases to argue a several-year (or indefinite) wait for services would be reasonable and theorize that the 2014 rule provides them a safe-harbor until 2019 to provide services. Both arguments have no basis in law. They also require fact-specific inquiries that make entertaining them at this stage improper.

a.  **Plaintiffs are Not Legally Required to Wait Several Years for Services.**

While the reasonable promptness requirement does not specify a time-frame, several other state and federal statutes provide clear time requirements that agencies must adhere to in authorizing and providing services. *See* 42 C.F.R. § 435.912(c)(3) (setting 90 days as time period for determining Medical Assistance eligibility); Minn. Stat. § 256B.0911 subd. 3a(e) (requiring the development of a coordinated assessment plan within 40 days of the assessment identifying the needs and services to be authorized). Despite these statutory guidelines laying out clearly and relatively prompt legal timelines for the assessment and authorization of services, Defendants misconstrue a few cases to assert that reasonable promptness means Plaintiffs must show a wait time of up to several years. Defs' Mem. at 13-14 (citing *Lewis v. N.M. Dep't of Health*, 94 F. Supp. 2d 1217, 1235 (D.N.M. 2000); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 182 (3d Cir. 2004); *Wagner v. Dep't of Health Servs.*, 12-CV-463-WMC, 2013 WL 3776327, at *2 (W.D. Wis. Jul. 17, 2013)). None of these cases suggest that a certain timing threshold is

required to make a facial showing that individuals have been denied reasonably prompt

services.  Defendants' assertion to the contrary must be rejected.

### b. The HCBS 2014 Rule Does Not Provide a Safe-Harbor for Complying with Reasonable Promptness.

As an alternative theory, Defendants ask this Court to take the unprecedented step

of using the 2014 rule to inoculate them from other Medicaid requirements.  As discussed

above, the 2014 rule merely lays out the bare-minimum characteristics of settings where

HCBS services are to be provided.  The 2014 rule does not address states' obligations to

follow *other* Medicaid provisions, including the reasonable promptness requirement.  It

certainly does not allow States to avoid their other Medicaid responsibilities while

coming into compliance.  Nonetheless, Defendants propose this Court use the rule as a

pretext to freeze compliance with all other rules while states transition to meet its

requirements.

Moreover, Defendants' reliance on this legal authority is misplaced.  The analysis

of what constitutes reasonably prompt service must necessarily take into account the type

of service in question and the full context for how and why the delay is occurring.  As

one example in the present case, the 2014 rule, in addition to defining a "community-

based setting," also lays out current requirements for the delivery of person-centered

planning.  42 C.F.R. § 401.301(c)(1)-(3).  Yet throughout their argument, Defendants

suggest they do not have to provide such services for at least several more years or

perhaps at all.  Defs' Mem. at 13-16.  At the very least, Plaintiffs are entitled to further

discover a basis for this contradiction so as to prove Defendants' continued delay of

services is unreasonable and not prompt.  In all, neither case law not the 2014 rule abrogate a state's responsibility to provide timely services nor provide a reason to dismiss Plaintiffs' claims.

### 4. The Reasonable Promptness Requirement Applies to the Waiver Services at Issue Here.

Defendants argue that Plaintiffs are not entitled to the Waiver services and then wrongly assert that this means such services are not covered by the reasonable promptness statute.  Defs' Mem. at 14-15.  Courts have long held, however, that the reasonable promptness requirement applies to all Medicaid services, not just mandatory services contained in the state plan for Medical Assistance.  *See Doe v. Chiles,* 136 F.3d 709, 719 (11th Cir. 1998) (finding a federal right to reasonably prompt provision of optional ICF/DD services under Section 1396a(a)(8)).

Most federal courts have similarly held that the reasonable promptness requirement also applies to the provision of Waiver services.  In *Boulet v. Cellucci*, 107 F. Supp. 2d 61, 76-78 (D. Mass. 2000), the court addressed and rejected the precise argument made by Defendants, that individuals have no legal entitlement to Waiver services and therefore cannot demand that such services be furnished promptly. The *Boulet* court determined that persons who are otherwise eligible for Waiver services are protected by Medicaid's reasonable promptness requirement. *Id.* at 76-77; *see also Susan J. v. Riley*, 254 F.R.D. 439, 453-54 (M.D. Ala. 2008) (citing "vast weight" of authority that Section 1396a(a)(8) creates enforceable rights and a valid claim for eligible individuals seeking Waiver services).

30

Under Defendants' reasoning, Waiver Program participants, once enrolled, may be denied any or all Waiver services if Defendants characterize the request as needing services "at will". This argument ignores the Defendants' obligation to ensure the Waiver recipients health and welfare needs are met. *See* 42 U.S.C. § 1396n(c)(2)(A). Such an interpretation would effectively erase the distinction between those eligible but not enrolled in the Waiver Program and the Plaintiffs in this case who are enrolled. As it did in *Guggenberger* for persons not yet enrolled in the Waiver Program, the Court must reject this flawed reasoning. *Guggenberger*, 2016 WL 4098562, at *22-23 (holding that eligible individuals waiting for Waiver, while not an absolute entitlement, have a reasonable expectation of entitlement to Minnesota's Waiver services). Defendants' motion to dismiss this claim must be denied.

## E.   DEFENDANTS' ACTIONS HAVE PREVENTED PLAINTIFFS FROM DUE PROCESS PROTECTION

Defendants move to dismiss Plaintiffs' claim that the failure to provide them with written notice and a fair hearing violates their due process rights under the Fourteenth Amendment of the Constitution. Defendants argue that the services in question are not an entitlement and therefore Plaintiffs have no Constitutional due process rights.[9] Alternatively, they wrongly assert that Plaintiffs have had an opportunity to appeal. Both arguments lack merit and should be rejected.

---

[9] Plaintiffs also allege Defendants have violated their due process rights under federal Medicaid law, but Defendants do not challenge this specific claim.

**1. Plaintiffs Have Asserted a Constitutionally Protected Property Interest Under the Due Process Clause.**

Defendants argue that Plaintiffs have not properly defined the Waiver services they are requesting, thus preventing a determination of whether they have an "entitlement to such services."  Defs' Mem. 19.  But Defendants also admit that several of the services Plaintiffs have been waiting for are covered by the Waiver Program.  *Id.* at 4-5 (discussing various services that help an individual move into his or he own home and develop a person-centered plan).  Constitutional due process requirements apply to the state's grant or denial of public benefits and the Supreme Court has emphasized "that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."  *Board of Regents v. Roth*, 408 U.S. 564, 571-72 (1972).  *Roth* held that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Roth,* 408 U.S. at 577.  Plaintiffs are eligible for and enrolled in the Waiver Program.  Compl. at ¶¶ 2, 96.  Therefore they are M.A. "recipients" and have a property interest in Waiver services.  State law requires Defendants to provide notice and appeal rights to M.A. recipients, which they include in the MnCHOICES assessment process.  *See* Minn. Stat. § 256B.0911(h)(9).  Under *Roth*, such state law procedural rights are another "independent source" for the property interest asserted by Plaintiffs, entitling them to Constitutional due process protection.

**2.   Plaintiffs Need Not Show a Constitutionally Protected Interest to Establish a Violation of the Notice and Hearing Provisions of the Medicaid Statute.**

In addition to Constitutional due process protections, Plaintiffs also have federal statutory rights to notice and a fair hearing.  Under 42 U.S.C. § 1396a(a)(3), an applicant whose claim for medical assistance under the state plan is denied or is not acted upon with reasonable promptness is entitled to a fair hearing.  The state must notify applicants in writing of their right to a hearing at the time of application and whenever the agency takes "any action affecting [their] claims."  42 C.F.R. § 431.206(b), (c)(1) and (2).  Written notice must contain a statement of what action the State intends to take; the reasons for the intended action; the specific regulation or law that supports the change; an explanation of the right to a hearing; an explanation of the circumstances under which Medicaid is continued pending hearing.  42 C.F.R. § 431.210.  A hearing must be granted to "[a]ny applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness" and to "[a]ny beneficiary who requests it because he or she believes the agency has taken an action erroneously." 42 C.F.R. § 431.220.

Courts have consistently held that the due process requirements of notice and a fair hearing under the Medicaid statute and regulations are enforceable under 42 U.S.C. § 1983.  *See, e.g.*, *Shakhnes v. Berlin*, 689 F.3d 244, 253-56 (2d Cir. 2012).  For example, when the plaintiffs in *Guggenberger* alleged they had not received notice and an opportunity to be heard regarding their ongoing denial to become enrolled in the Waiver Program, this Court found they had made "a plausible claim that Defendants [were] violat[ing] the Medicaid Act's fair hearing requirements."  *Guggenberger*, 2016 WL

4098562, at *31.  Similarly, Defendants here have routinely failed to provide any written notices to Plaintiffs and others similarly situated.  Compl. at ¶¶ 31(h), 32(n), 33(l), 34(f), 77, 88, 115-16.  These allegations are sufficient for Plaintiffs to establish a violation of their procedural due process rights.

Defendants' other argument rests on a misleading statement that Plaintiffs "have" an opportunity to appeal a lead agency's determination and therefore should have exhausted such a remedy.[10]  Defs' Mem. at 20.  Merely having a legal right to appeal is not the same as being timely informed of that right and provided information about how to appeal.  While the specific form of a notice and the process for a hearing that affords an opportunity to be heard can vary, *see Bliek v. Palmer,* 102 F.3d 1472, 1475-79 (8th Cir. 1997), Defendants provide no support for their assertion that a mere existence of an appeals statute, without any form of notice given to Plaintiffs, let alone reasons or information about how to challenge the denial, complies with due process. Sufficient detail regarding the basis for the decision and the process for challenging it must be provided.

Defendants have failed to provide proper notice and an opportunity to be heard at a hearing on the merits to challenge the refusal to provide reasonably prompt

---

[10] As a matter of law, this Court held in *Guggenberger* that notwithstanding the existence of other administrative remedies, Plaintiffs could sustain a § 1983 action for Defendants' alleged violation of reasonable promptness.  *Guggenberger*, 2016 WL 4098562, at *18. Although Defendants cite *Wax 'n Works v. St. Paul*, 213 F.3d 1016 (8th Cir. 2000), for the proposition that Plaintiffs must exhaust available state remedies, that case does not address alleged due process violations stemming from a failure to provide reasonably prompt M.A. services.  *Id.* at 1020.

authorization of payment and delivery of requested Waiver services.  Compl. at ¶¶ 30, 88; *see id.* at ¶¶ 114-120.  Defendants' failures to provide actual written notice and an opportunity to be heard violates due process.  Plaintiffs have stated claims of Constitutional and statutory due process violations, enforceable under 42 U.S.C. § 1983.  Defendants' motion to dismiss these claims must be denied.

F.    **PLAINTIFFS' REQUESTED RELIEF IS APPROPRIATELY BROUGHT BEFORE THE COURT AND DOES NOT VIOLATE PRINCIPLES OF FEDERALISM OR SEPARATION OF POWERS**

Defendants argue that Plaintiffs' claims confer upon the Court too much budgetary and administrative control, and further that this should be reserved for the legislative and executive branches under principles of federalism and separation of powers.  Defs' Mem. at 25.  Instead of judicial review, Defendants assert that the Court should defer to the judgments of state officials in administering state programs.  *Id.* at 28-29.

Courts may, however, appropriately order and oversee the administration of state programs.  *See Bounds v. Smith,* 430 U.S. 817, 818 (1977).  Indeed, many courts have found similar relief appropriately within the judiciary's discretion. *See M.R. v. Dreyfus*, 697 F.3d 706, 734-35 (9th Cir. 2012) (granting injunction to plaintiffs opposing reduction in personal care hours as a violation of the ADA and indicating "the elimination of services that have enabled [a plaintiff] to remain in the community violates the ADA, regardless of whether it causes them to enter an institution immediately, or whether it causes them to decline in health over time and eventually enter an institution in order to seek necessary care"); *Fisher v. Okla. Health Care Auth*., 335 F.3d 1175, 1181-82 (10th Cir. 2003) (holding cap on prescription drug coverage for plaintiffs in community-based

Medicaid program did not require institutionalization as prerequisite for bringing ADA claim and claim was stated because plaintiffs would be denied service they could receive if they submitted to institutionalization); *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 205 (2d Cir. 2014).

Courts may appropriately grant relief without "'dictat[ing] precisely what course the State should follow'" in its administration of state programs. *Bounds,* 430 U.S. at 818. A court may charge a state department "with the task of devising a Constitutionally sound program" to assure that state department meets its obligations. *Id.* at 818–819. It is appropriate for a Court to grant such relief where the order "require[s] only that defendants supply the services that the court found to be required under federal law." *A.H.R. v. Washington State Health Care Auth.*, No. C15-5701JLR, 2016 WL 98513, at *19 (W.D. Wash. Jan. 7, 2016) (quoting *Katie A., ex rel. Ludin v. Los Angeles Cty.*, 481 F.3d 1150, 1157 (9th Cir. 2007)). The Supreme Court has "praised this procedure, observing that the court had 'scrupulously respected the limits on [its] role,' by 'not . . . thrust[ing] itself into [] administration' and instead permitting '[state officials] [to] exercis[e] wide discretion.'" *Lewis v. Casey*, 518 U.S. 343, 362–63 (1996) (quoting *Bounds*, 430 U.S. at 818); *see also Todaro v. Ward*, 565 F.2d 48, 54 n. 7 (2d Cir. 1977); *Disability Advocates, Inc. v. Paterson*, 653 F. Supp. 2d 184, 312 (E.D.N.Y. 2009); *Ass'n of Surrogates*, 966 F.2d 75, at 79. A remedial order must "'strike a balance' between the court's obligation to identify and take steps toward the elimination of the legal violations and the state's right to administer its own facilities or systems." *Disability Advocates, Inc.*, 653 F. Supp. 2d at 312 (quoting *Dean v. Coughlin*, 804 F.2d 207, 214 (2d Cir.

1986)). "[T]he state should be given responsibility to devise and carry out a plan to come into compliance in the manner directed by the court."  *Id.*

Moreover, it is particularly important to note that the purpose of the separation of powers doctrine under the Constitution, and the principles of federalism that are implicit in the structure of the Constitution and confirmed by the Tenth Amendment, are ultimately designed to protect individual liberty. *See New York v. United States*, 505 U.S. 144, 182 (1992) ("[T]he Constitution does not protect the sovereignty of States for the benefit of the States or state governments," but "for the protection of individuals.").  Plaintiffs' relief does not ask the Court to take unwarranted control over state administration and budgets; rather, Plaintiffs have requested the Court hold Defendants accountable to administer state programs as mandated under federal law for the benefit of Plaintiffs, individuals who have been injured by state actors.

Plaintiffs' claims, therefore, are appropriately brought before this Court, and do not encroach on notions of federalism or separation of power.  In arguing otherwise, Defendants grossly mischaracterize Plaintiffs' request for relief as nowhere do they ask the Court to exceed its power into that of the legislative or executive branches of government.  Contrary to Defendants' assertions, Plaintiffs are not pursuing "institutional reform litigation" because they are not asking the Court to micromanage and/or oversee the day-to-day minutiae of the State's operation of its Waiver Programs.  Rather, Plaintiffs request that the Court appropriately use its discretion to oversee the reasonable modification of the Waiver Program to conform with Federal Medicaid and Civil Rights laws.

To the extent Defendants rely on case law to support their argument, cases like *Horne* are factually and legally inapposite. *See Horne v. Flores*, 557 U.S. 433 (2009) (education reform for English Language-Learner students); *Rizzo v. Goode*, 423 U.S. 362 (1976) (criminal prosecution reform); *Stanley v. Darlington Cnty. Sch. Dist.*, 84 F.3d 707 (4th Cir. 1996) (school desegregation suit). Those cases are concerned with the court's ability to assess prior judgments and orders under Rule 60(b)(5), not general principles of judicial discretion in the first instance. Accordingly, Defendants' argument that Plaintiffs' requested relief would impermissibly replace the judgment of state officials with court oversight falls short.

*Olmstead* itself exemplifies that judicial intervention is appropriate to require state actors to meet affirmative obligations of the integration mandate, and does not overstep principles of federalism and separation of power. *Olmstead*, 527 U.S. at 607. Here, Plaintiffs have stated valid claims against state actors. The Court should deny Defendants' motion to dismiss accordingly.

## G. THE COUNTIES ARE NOT NECESSARY PARTIES

Defendants contend the lead agencies are necessary parties to this suit under Federal Rule of Civil Procedure 19 because they administer Minnesota's Waiver services program. Defs' Mem. at 33-34. Defendants are incorrect.

As a starting principle, the plaintiff is "the master of his complaint." *BP Chem. Ltd. v. Jiangsu Sopo*, 285 F.3d 677, 684 (8th Cir. 2002). "Inquiry under Rule 19(a) focuses on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." *U.S. Bank v. N. Trust*, 795 F. Supp. 2d

38

893, 897 (D. Minn. 2011) (internal quotations and citations omitted). The requirement of complete relief "does not mean that every type of relief sought must be available, only that meaningful relief be available." *Henne v. Wright*, 904 F.2d 1208, 1212 n.4 (8th Cir. 1990). Defendants' argument fails because the absence of the lead agencies in this matter does not prevent this Court from providing meaningful relief to Plaintiffs nor impair any interest the lead agency could claim.

The Defendants alone manage the Waiver Program. The Commissioner of DHS is charged with the responsibility to apply to the federal government for Waiver services. Minn. Stat. § 256B.49(11). The Commissioner must "supervise the administration of medical assistance for eligible recipients by the county agencies." Minn. Stat. § 256B.04(1). The counties may administer the programs on a day-to-day basis in the field, but they do so as local agencies of the Commissioner, who makes the rules "for carrying out and enforcing the provisions" of Minnesota's M.A. program. *Id.* § 256.04(2).

This Court has already determined, multiple times, that the Commissioner and DHS – not the lead agencies – "are ultimately responsible for the operation" of the Waiver Program. *Masterman v. Goodno*, No. 03-2939 (JRT/FLN), 2004 WL 51271, *3 (D. Minn. Jan. 8, 2004), *see also Guggenberger*, 2016 WL 4098562, at *41 (holding that notwithstanding the counties' role in the administration of Waiver services, the Commissioner's oversight authority and ultimate responsibility for administering the State's Medicaid plan would allow the Court to provide meaningful relief even absent the counties).

Here, Plaintiffs seek similar relief to those in *Guggenberger* – namely declaratory and injunctive relief related to Defendants' failure to ensure Plaintiffs receive reasonably prompt Waiver services in the most integrated setting.  Plaintiffs allege Defendants are independently liable for the claims, as the counties merely administer Waiver Programs under the policies, procedures, and requirements dictated by the Commissioner.  *Id.* (reasoning that third-parties such as Minnesota counties are not necessarily required parties under Rule 19 just because they may be involved with some of the conduct related to the Plaintiff's claim). This Court may conclude, therefore, that it can grant the requested relief to redress this liability without the joinder of such third-parties.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

**MID-MINNESOTA LEGAL AID**
**MINNESOTA DISABILITY**
**LAW CENTER**

Dated:  October 26, 2016          By:  s/ Justin H. Perl
                                       Justin H. Perl (# 151397)
                                       Sean Burke (# 0392115)
                                  430 First Avenue North, Suite 300
                                  Minneapolis, MN 55401
                                  (612) 746-3759 (Telephone and Fax)
                                  jperl@mylegalaid.org
                                  sburke@mylegalaid.org

**ANTHONY OSTLUND**
**BAER & LOUWAGIE P.A.**

Dated:  October 26, 2016          By:  s/ Joseph W. Anthony
                                       Joseph W. Anthony (#0002872)
                                       Steven M. Pincus (#0171414)
                                       Laura A. Farley (#0397455)
                                       Peter J. McElligott (#0397578)
                                  90 South 7th Street
                                  3600 Wells Fargo Center
                                  Minneapolis, MN 55402
                                  Telephone:  612-349-6969
                                  janthony@anthonyostlund.com
                                  spincus@anthonyostlund.com
                                  lfarley@anthonyostlund.com
                                  pmcelligott@anthonyostlund.com

**ATTORNEYS FOR PLAINTIFFS**