# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Tenner Murphy, by his guardians
Kay and Richard Murphy; Marrie
Bottelson; Dionne Swanson; and
on behalf of others similarly situated,

Civil No. 16-2623 (DWF/BRT)

Plaintiffs,

v.

**MEMORANDUM
OPINION AND ORDER**

Emily Johnson Piper in her capacity
as Commissioner of The Minnesota
Department of Human Services,

Defendant.

---

Joseph W. Anthony, Esq., Peter McElligott, Esq., and Steven M. Pincus, Esq., Anthony Ostlund Baer & Louwagie PA; Justin H. Perl, Esq., Mid-Minnesota Legal Aid; and Sean B. Burke, Esq., Mid-Minnesota Legal Aid, Minnesota Disability Law Center, counsel for Plaintiffs.

Janine Wetzel Kimble, Scott H. Ikeda, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Defendant.

---

# INTRODUCTION

This matter is before the Court upon Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2). (Doc. No. 35.) Defendant opposes the motion. (Doc. No. 45.) After considering the submissions of the parties, and for the reasons stated, the Court finds that certification of the proposed class is appropriate. Thus, Plaintiffs' Motion for Class Certification is granted.

# BACKGROUND

The Court previously detailed the background facts of this case in its May 18, 2017 Memorandum Opinion and Order, (Doc. No. 54), and the Court only briefly summarizes the facts here.[1]  In short, Plaintiffs are individuals with disabilities and Medicaid recipients who receive Home and Community Based Disability Waivers ("Disability Waivers") from the State of Minnesota under the direction of Defendant Emily Johnson Piper ("Defendant"), Commissioner of the Minnesota Department of Human Services ("DHS").  Plaintiffs reside in Community Residential Setting ("CRS") facilities—otherwise known as corporate adult foster care—and wish to access various individualized housing services available under the Disability Waivers to pursue more integrated housing options.  Plaintiffs assert that their current living situations isolate and segregate them from their communities in violation of federal law.  To access the services they seek in a timely manner and with proper due process, Plaintiffs seek declaratory and injunctive relief to reform Defendant's administration of the Disability Waiver programs. The Court supplements the relevant facts as needed, below.

Currently before the Court is Plaintiffs' motion to certify a class of:  "[I]ndividuals age 18 and older who are eligible for and have received a Disability Waiver, live in a licensed Community Residential Setting, and have not been given the choice and opportunity to reside in the most integrated residential setting appropriate to their needs."

---

[1]     The Court directs readers to its May 18, 2017 Memorandum Opinion and Order and otherwise assumes familiarity with the facts and law elaborated therein.  *See Murphy ex rel. Murphy v. Minn. Dep't of Human Servs.*, Civ. No. 16-2623, 2017 WL 2198133 (D. Minn. May 18, 2017).

(Doc. No. 37 at 2.)  Tenner Murphy ("Murphy"), Marrie Bottelson ("Bottelson"), and

Dionne Swanson ("Swanson") (collectively, the "Named Plaintiffs") assert their claims

on behalf of themselves and other similarly situated individuals (collectively, the

"Plaintiffs") and seek to represent the proposed class.

## DISCUSSION

### I.    Standard for Class Certification Under Rule 23

"A class action serves to conserve the resources of the court and the parties by

permitting an issue that may affect every class member to be litigated in an economical

fashion." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016).  To obtain class

certification, a party must first meet the requirements of Rule 23(a) by establishing that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).  In addition, plaintiffs seeking certification "must satisfy one of the

three subsections of Rule 23(b)." *Ebert*, 823 F.3d at 477 (quoting *In re St. Jude Med.,

Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005)).  The burden is on the plaintiffs to "show[] that

the class should be certified and that the requirements of Rule 23 are met." *Id.* (quoting

*Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013)).

District courts retain "broad discretion" in determining whether to certify a class.

*Id.* (citation omitted).  However, the court must conduct a "rigorous analysis" to ensure

"that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp. v. Behrend*,

569 U.S. 27, 33 (2013) (citation omitted); *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017). "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 783 (8th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). The Eighth Circuit has noted that "class certification is not the time to address the merits of the parties' claims and defenses." *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006). However, "the 'rigorous analysis' under Rule 23 must involve consideration of what the parties must prove." *Id.*

Plaintiffs argue that this case is particularly suited to Classwide resolution because it asserts an integration mandate claim under the Americans with Disabilities Act ("ADA") and the Supreme Court's landmark decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). Plaintiffs explain that "*Olmstead* claims are well suited for class treatment because, among other issues, a state's fundamental alteration defense necessarily involves inquiries into the needs of all persons served by the state's supportive services system." (Doc. No. 37 at 12-13.) Emphasizing the systemic nature of their claims, Plaintiffs assert that "[t]his case . . . attacks the Defendants'[2] lack of

---

[2]    When this motion was briefed by the parties, this case included multiple Defendants. Although the case has now been limited to a single Defendant, occasional references to "Defendants" remain in quoted material within this Order. The Court acknowledges that the only Defendant present in the case is Commissioner Emily Johnson Piper, Commissioner of The Minnesota Department of Human Services.

standardized conduct in planning, administering, and operating their Waiver service system." (Doc. No. 51 at 2.)

Defendant identifies four key issues with Plaintiffs' motion for class certification: (1) the Court cannot evaluate numerosity based on Plaintiffs' vague proposed class; (2) individual determinations prevent commonality among the proposed class; (3) the Named Plaintiffs do not have injuries typical of the class; and (4) Plaintiffs seek remedies that would be improper under Rule 23(b).

The Court considers each of the requirements for class certification in light of the parties' arguments, below.

## II.      Rule 23(a)

### A.      Numerosity

First, the proponent of class certification must prove that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Regarding numerosity, "[n]o arbitrary rules regarding the necessary size of classes have been established." *Paxton v. Union Nat'l Bank of Little Rock*, 688 F.2d 552, 559 (8th Cir. 1982). In general, however, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2017 Update). With respect to the practicability of joinder, relevant factors include not only "the size of the class," but "also . . . the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton*, 688 F.2d at 559-60. A court may also take into account factors such

as "the asserted disabilities of proposed class members, and geographic diversity." *See Kenneth R. ex rel. Tri-Cty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 265 (D.N.H. 2013).

The Eighth Circuit does not impose a separate ascertainability requirement for class certification but "adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (quotation marks omitted). "A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). Other Courts of Appeal have determined that ascertainability is not required in the context of a Rule 23(b)(2) class seeking declaratory and injunctive relief. *See, e.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 562-63 (3d Cir. 2015). Even in this Circuit, one court recently noted in evaluating a Rule 23(b)(2) class that "Plaintiffs are not required to specify an exact number or to prove the identity of each class member, rather, the plaintiffs must only show a reasonable estimate of the number of class members." *Postawko v. Mo. Dep't of Corr.*, Civ. No. 2:16-cv-04219-NKL, 2017 WL 3185155, at *6, 12 (W.D. Mo. July 26, 2017), *appeal filed*, No. 17-3029 (8th Cir. Sept. 19, 2017) (quotation marks and citation omitted).

Plaintiffs assert that approximately 13,800 individuals receiving Disability Waivers live in corporate foster care facilities in Minnesota. Acknowledging that not all of these individuals would fit within the proposed Class, Plaintiffs contend that Defendant's own actions "make[] it difficult to identify the precise number of potential Class Members and the full scope of unnecessary segregation of persons in corporate

6

foster care facilities." (Doc. No. 37 at 13-14.) However, Plaintiffs point to a 2016 DHS Lead Agency Review of Hennepin County which Plaintiffs suggest illustrates that approximately five percent of DD waiver recipients living in CRS facilities in the county "may be better served in more individualized housing options." (*Id.* at 14.) Thus, Plaintiffs estimate that the proposed Class would be made up of approximately 690 individuals (5% of 13,800).[3] Plaintiffs emphasize that they need not identify an exact number of Class Members and suggest that a class may be made up of as few as twenty individuals. Plaintiffs also assert that "the class is characterized by size, geographic diversity, and disabling limitations that make joinder of all member impracticable." (*Id.* at 15.)

Defendant argues that "the proposed class members are not ascertainable." (Doc. No. 45 at 10.) Specifically, Defendant identifies a number of questions that would be necessary for Plaintiffs to answer to evaluate whether an individual is a member of the class and suggests that Plaintiffs have offered no support to the Court to answer these questions. For example, such questions include "Does the person live in a CRS?" and "Does the person want to live in a place other than a CRS?" Defendant also suggests that ascertaining the Class would require determining whether a CRS is the most integrated setting for each person's needs, whether he or she could afford another setting, and how long each person has waited for services. Regarding Plaintiffs' proposed class size,

---

[3]     Plaintiffs further suggest that the proposed class would likely be even larger (approximately 800 individuals) taking into account individuals on other Disability Waivers or individuals with high needs not accounted for in the DHS report on which they rely.

Defendant argues that Plaintiffs mischaracterize the DHS report that they use to support their class estimate. Defendant asserts that "Plaintiffs may not rely on mere speculation about the size of the proposed class" and suggest that they "must at least provide a reasonable estimate." (*Id.* at 14-15.)

In response, Plaintiffs argue that ascertainability is merely an implied judicial requirement that applies with much less force in a Rule 23(b)(2) class. Even if the Court considers ascertainability, Plaintiffs suggest, the proposed Class would meet this requirement. Specifically, Plaintiffs emphasize that their proposed Class can be ascertained by objective criteria based on two components: (1) "persons who are 18 and older and eligible for and receiving a Waiver and live in corporate foster care," and (2) "persons who want the *choice* and *opportunity* to live in the most integrated setting appropriate to their needs." (Doc. No. 51 at 7.) The answers to these questions, Plaintiffs argue, could be determined based on objective data available in Waiver program records. With regard to numerosity, Plaintiffs also contend that their proposed Class would meet the numerosity requirement even if Plaintiffs relied on the figures in the DHS report that Defendant claims is relevant.

First, the Court considers the size of the proposed class. Plaintiffs cite their Amended Complaint for the proposition that 13,800 Disability Waiver recipients are served in CRS facilities in the state. (*See* Doc. No. 37 at 13 (citing Doc. No. 33 ("Am. Compl.") ¶ 65).) In her Answer, Defendant provides updated figures "affirmatively stat[ing] that as of May 22, 2017, there are approximately 3,598 corporate foster care licenses," and that "[t]hese facilities are licensed to serve up to a capacity of

approximately 13,500 Disability Waiver recipients." (Doc. No. 55 ("Answer") ¶ 65.) The Court will rely on the updated figures to support that there are approximately 13,500 individuals residing in CRS facilities throughout the State.

To narrow this large group of individuals to those who would fall within the proposed class of individuals who "have not been given the choice and opportunity to reside in the most integrated residential setting appropriate to their needs," Plaintiffs direct the Court to a March 2016 DHS Lead Agency Review report for Hennepin County. (Doc. No. 38 ("Burke Aff.") ¶ 6, Ex. 5.) This report states that 93.7% of individuals on the Developmental Disabilities ("DD") Waiver in Hennepin County qualified as having "high needs" in 2014. (*Id.* at 5-6.) The report also identifies a total of 3,175 DD Waiver Recipients in Hennepin County in 2014. (*Id.* at 5.) Thus, approximately 6.3%, or roughly 200 individuals, would be characterized as having low needs. (*See id.* at 5-6.)

Next, Plaintiffs' data in the Lead Agency Review report indicates that 38.0% of DD Waiver recipients in Hennepin County received services in their own homes in 2014. (*Id.* at 16.) The remainder, the report suggests, would be served in "provider controlled housing and residential settings." (*Id.*) Specifically, the report notes that Hennepin County "utilizes residential services for the DD program" for 61% of individuals. (*Id.*) Plaintiffs appear to rely on these figures to support that roughly 1,969 DD Waiver Recipients in Hennepin County (62% of 3,175) reside in provider-controlled housing. (*See id.* at 5, 16; *see also* Doc. No. 37 at 14.)

The Lead Agency Review report also states that "forty-nine percent of low need people in the DD program currently reside in local corporate foster care homes" and

notes that "[i]t is possible that many of these individuals could live independently with supports." (Burke Aff. ¶ 6, Ex. 5 at 22.) Accordingly, Plaintiffs argue that "nearly 100 of the approximately 1,969 people in Hennepin County receiving the DD waiver living in provider controlled residential settings could be considered 'low needs' and may not need or want to be in such a setting." (Doc. No. 37 at 14.) Plaintiffs propose that the Court can extrapolate this figure (approximately 5%) statewide to all individuals residing in CRS facilities to estimate the class size.

The Court agrees with Plaintiffs that the March 2016 Hennepin County Lead Agency Review provides a reasonable basis for identifying an estimated class size. DHS's own recommendation in this report indicates a possibility that "many of" the approximately one hundred individuals with low needs residing in CRS facilities "could live independently with supports." (Burke Aff. ¶ 6, Ex. 5 at 22.) The report also explains that "[w]hen people are served in their own homes, they have more choices and are able to make more decisions in how they live their life." (*Id.* at 16.) Thus, by DHS's own estimates, this report appears to suggest that nearly 100 individuals were not evaluated regarding or offered an opportunity to reside in the most integrated setting appropriate to their needs, consistent with Plaintiffs' proposed class definition.

Further, the Court finds that this estimate supports certification of a statewide class notwithstanding that the March 2016 report focused on Hennepin County alone. First, even if the Court relied on only the approximately 100 individuals in Hennepin County as the estimated class size, Defendant's role in overseeing the Disability Waivers statewide would support certification of a statewide class to remedy the alleged deficiencies in the

program for all Disability Waiver recipients. Second, the Court finds that the record suggests Hennepin County is not alone in failing to assure choice and opportunity for individuals seeking integrated housing alternatives to CRS facilities. The March 2016 Lead Agency Review for Hennepin County suggests that the county "has been deliberate" in addressing independent housing alternatives "to ensure people have choice and receive services in the least restrictive setting." (*Id.* at 21.) The report also notes that Hennepin County has "work[ed] regionally with [its] neighboring counties to share ideas and resources." (*Id.*) Regarding person-centered planning, one form of individualized housing services which Plaintiffs seek in this case, the report describes Hennepin County as "a leader in the state." (*Id.*) If even this county is failing to assure that individuals residing in CRS facilities have informed choice about integrated housing alternatives, it is reasonable to conclude that other counties statewide face similar challenges. Finally, a DHS Lead Agency Review Progress Report based on reviews of 37 lead agencies from August 2015 to September 2016 made the recommendation that 23 out 37 agencies (or 62.2%) should "[d]evelop services that support people in their own homes," including "[d]evelop[ing] service options for people wanting alternatives to foster care." (Burke Aff. ¶ 5, Ex. 4 at 5, 39.) This evidence further supports Plaintiffs' suggestion that extrapolating the 5% estimate from Hennepin County statewide would provide a conservative estimate of class size sufficient to establish numerosity.

The Court finds that Plaintiffs have adequately proposed a reasonable estimate for their proposed class to support numerosity. Although Plaintiff's numeric estimate based on the circumstances in one county is not without its limitations, taking into account the

additional factors of the proposed class members' disabilities and geographic dispersion throughout the state, the Court is satisfied that the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).[4]

Second, the Court addresses Defendant's arguments regarding ascertainability. The Court disagrees that the class is not sufficiently ascertainable. First, the Court notes that many of the questions Defendant identifies need not be answered at all to identify class membership. For example, the Court will not need to determine the individual living preferences or most integrated setting of individuals residing in CRS facilities to determine the scope of the class. As the Court discusses in more detail, below, Plaintiffs seek systemwide relief so that those determinations can be made in the context of Defendant's own administration of the Waiver Services programs statewide. As Plaintiffs suggest, the Court can ascertain class membership based simply on the objective criteria of (1) whether an individual is currently in a CRS facility and (2) whether he or she has received an opportunity to reside in the most integrated setting appropriate to his or her needs.[5] To be sure, the latter inquiry may be somewhat subjective in nature as Plaintiffs appear to contest what constitutes adequate informed

---

[4]     The Court declines to address the parties' dispute over the proper data on which to rely in the DHS Lead Agency Review Progress Report, (*see* Doc. No. 38 ("Burke Aff.") ¶ 5, Ex. 4), because the Court finds that numerosity is satisfied even in the absence of this data.

[5]     As Plaintiffs point out, information relevant to the latter question can be determined based on the results documented in the service plans of individual Waiver Services recipients created by lead agencies pursuant to requirements established by Defendant. (*See* Doc. No. 13 ("Welsh Aff.") ¶ 6, Ex. 6.)

choice.  However, the Court agrees with the courts that have rejected or applied a relaxed approach to ascertainability in the context of a Rule 23(b)(2) class and finds that the proposed class is sufficiently ascertainable to support certification.  *See Shelton*, 775 F.3d at 561 ("Because the focus in a[ ](b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a[ ](b)(2) action than in a[ ](b)(3) action."); *see also Postawko*, 2017 WL 3185155, at *6.

Thus, the Court finds that Rule 23(a)(1)'s numerosity requirement is satisfied.

## B.      Commonality

Second, a party seeking class certification must establish "that 'there are questions of law or fact common to the class.'"  *Wal-Mart Stores, Inc.*, 564 U.S. at 349 (quoting Fed. R. Civ. P. 23(a)(2)).  In *Wal-Mart*, the Supreme Court clarified the commonality requirement, explaining that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Id.* at 349-50 (citation omitted).  More specifically, "[t]heir claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor."  *Id.* at 350.  Further, "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Elaborating on this requirement, the Supreme Court explained that "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of

a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).

Plaintiffs argue that the commonality requirement is met because Defendant's policies and practices in operating the state's Waiver services program apply to the class as a whole and have contributed to the same harm of "unnecessary segregation" resulting from an overreliance on CRS facilities and the denial of individualized housing services. (Doc. No. 37 at 18.) The Plaintiffs identify the following "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), to establish commonality:

  i.   Whether the Defendants have failed to provide person-centered planning and other individualized Waiver services in a system-wide uniform manner and whether such failure is a violation of Medicaid's reasonable promptness requirement;

  ii.  Whether Plaintiffs are receiving written notice of adverse action and opportunity to challenge the failure to provide individualized housing services and whether such failure is a violation of the Due Process Clause of the United States Constitution and Plaintiffs' Medicaid rights;

  iii. Whether the Defendants are violating the integration mandates of the ADA and Rehabilitation Act by planning, administering, and operating a residential services system that:  unnecessarily segregates Plaintiffs in corporate foster care facilities and fails to provide informed choice of more integrated alternatives; discriminates against the Plaintiffs by providing residential services to them in settings that are not the most integrated settings appropriate to their needs; and fails to provide the Plaintiffs with individualized housing Waiver services to allow them to transition to and remain in the most integrated settings appropriate to their needs; and

  iv.  Whether the Defendants have a comprehensive and effectively working plan for providing integrated residential services to the Plaintiffs.

(Doc. No. 37 at 18-19.)  Plaintiffs argue that "commonality is not defeated by the presence of individual differences among class members" because the "putative class

members share a common legal theory and challenge a common pattern and practice of discrimination." (*Id.* at 19.) According to Plaintiffs, their rights to be free from needless segregation and to receive Waiver services in a reasonably prompt manner "can only be properly and fully vindicated in the context of a class action for declaratory and injunctive relief." (*Id.* at 21.)

Defendant asserts that numerous differences among the proposed Class Members defeat commonality. Such differences include "their individual circumstances, whether they have been injured, and the alleged cause of their injuries." (Doc. No. 45 at 15.) Defendant argues that Plaintiffs have failed to provide evidence of common questions of law or fact and emphasize that commonality is particularly important in classes certified under Rule 23(b)(2). With respect to all four common questions raised by the Plaintiffs, Defendant argues that each fails to satisfy commonality. First, Defendant argues that "a violation of Medicaid's reasonable promptness requirement is not an injury capable of classwide determination" because resolution of such a claim depends on the length of time an individual has waited for services. (*Id.* at 17.) Second, Defendant argues that Plaintiffs have failed to provide evidence to show that all counties are failing to provide written notice as required by Defendant or that Defendant's own policy or practice has resulted in the alleged denials of notice. Third, with regard to Plaintiffs' integration mandate claim, Defendant asserts that "Plaintiffs have no evidence that alleged overreliance on corporate foster care facilities has actually injured each putative class member, as for some putative class members such a setting may be 'the most integrated setting appropriate to their needs.'" (*Id.* at 18.) Defendant also notes that even if some

proposed Class Members are not in the most integrated setting, there is no evidence to suggest that this is a result of Defendant's actions as opposed to other factors. Fourth, Defendant asserts that Minnesota's *Olmstead* Plan has been deemed sufficient by this Court and reiterates that Plaintiffs have not tied the alleged injuries of the proposed Class Members to any alleged deficiency in the *Olmstead* Plan. In short, Defendant argues that "Plaintiffs have not met their burden to show that each putative class member was harmed, that those allegedly harmed suffered the same injury, or that any such injury was caused by the same generally applicable policy or action of Defendant such that the Court can provide a remedy." (*Id.* at 19.) Defendant emphasizes that individualized remedies consistently defeat class-certification post-*Wal-Mart*. Defendant also points out the individual county-level determinations underlying Plaintiffs' claims and assert that "Plaintiffs have not shown that some universally-applicable action of Defendant caused putative class members to suffer 'the same injury' such that determination of that actions' legality 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" (*Id.* at 21 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 348-50).)

Plaintiffs argue that *Wal-Mart* is distinguishable because in this case, "the challenge is directed to the public entity's failure to plan, administer, and operate a residential service system that allows persons with disabilities the choice and opportunity to live in integrated settings." (Doc. No. 51 at 8-9.) Plaintiffs argue that a single injunction could remedy this alleged failure for the Class as a whole. Plaintiffs suggest that their allegations focus not on individual county-level determinations but on Defendant's overall management and direction of the Waiver programs. Regarding

16

reasonable promptness, Plaintiffs assert that the "lack of system-wide assurance to provide the needed service that Plaintiffs allege is a central issue of Defendants' liability." (*Id.* at 10.) With respect to due process, Plaintiffs similarly contend that Defendant fails to ensure Wavier services recipients receive adequate notice relating to the denial of individualized housing services available under the Waivers. Finally, concerning Plaintiffs' integration mandate claims, Plaintiffs point to an alleged "systemic failure to provide proper direction and control over lead agencies" and emphasize Defendant's responsibility for the State's administration of the Waiver services program. Plaintiffs also dispute Defendant's reliance on Minnesota's *Olmstead* Plan and argue that the parties' disagreement over the adequacy of the *Olmstead* Plan in fact supports that there are common questions capable of Classwide resolution.

In *Wal-Mart*, the plaintiffs asserted Title VII employment discrimination claims based on gender against Wal-Mart. *Wal-Mart Stores, Inc.*, 564 U.S. at 342-45. The Supreme Court emphasized that "[t]he[] plaintiffs . . . [did] not allege that Wal-Mart has any express corporate policy against the advancement of women." *Id.* at 344. Instead, the plaintiffs alleged "that Wal-Mart engages in a *pattern or practice* of discrimination" based on the company's delegation of discretionary authority to local supervisors and an alleged "corporate culture" that resulted in biased employment decisions against women at Wal-Mart stores throughout the country. *Id.* at 344-45, 352. In evaluating commonality, the Supreme Court explained that, "[i]n this case, proof of commonality necessarily overlaps with respondents' merits contention that Wal-Mart engages in a *pattern or practice* of discrimination. That is so because, in resolving an individual's

Title VII claim, the crux of the inquiry is the reason for a particular employment decision." *Id.* at 352 (footnote, internal quotation marks, and citation omitted). The Supreme Court noted that the plaintiffs in *Wal-Mart* sought "to sue about literally millions of employment decisions at once." *Id.* It concluded that, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* The Supreme Court gave two examples of how commonality might be established in this context in an employment discrimination case—a discriminatory test administered by the employer or "[s]ignificant proof that an employer operated under a general policy of discrimination." *Id.* at 353 (citation omitted).

Unlike the plaintiffs in *Wal-Mart*, Plaintiffs here do not focus their claims on localized decisionmakers, so the Court does not need to identify evidence of specific policies or practices to support the commonality of the classwide claims.[6]

---

[6]  To the extent evidence of such policies is needed to support certification, the Court notes that the record includes examples of Defendant's statewide policies affecting the provision of individualized housing services under the Disability Waivers. For example, Defendant issued the Person-Centered, Informed Choice and Transition Protocol in February 2016, and this protocol is designed "to communicate expectations regarding person-centered practices with its lead agency partners." (Doc. No. 47 ("Bartolic Aff.") ¶ 9, Ex. 2 at 1.) The protocol includes, for example, an "Overarching Characteristic" that "Process results in the person living in the place of his or her own choice that matches his or her preferences, in the most integrated setting possible." (*Id.* at 8-9.) These protocols and Defendant's actions in enforcing them constitute a common policy or practice applicable to the statewide Waiver Services system that unites the classwide allegations against Defendant.

(Footnote Continued on Next Page)

Notwithstanding possible differences in the county-level decisions made with respect to the individual class members, those decisions are necessarily held together by the "glue" of the Defendant's oversight authority and responsibility for administering the state's Disability Waiver services system. Defendant is the state agency responsible for ensuring Minnesota's compliance with the Medicaid Act in its provision of services. *See* 42 C.F.R. §§ 431.10(b), 431.10(e); Minn. Stat. §§ 256B.04, subd. 1; 256B.02, subd. 5. In addition, as a public entity that receives federal funds, Defendant is obligated to comply with the integration mandates of the ADA and Section 504 of the Rehabilitation Act ("RA") in administering the Disability Waivers. *See generally Murphy ex rel. Murphy v. Minn. Dep't of Human Servs.*, Civ. No. 16-2623, 2017 WL 2198133, at *21 (D. Minn. May 18, 2017). Plaintiffs' classwide claims directed at Defendant are thus dissimilar to the classwide claims asserted against Wal-Mart. Because Defendant has ultimate authority and responsibility for the State's Disability Waivers, Defendant cannot simply abdicate that responsibility by pointing to the actions of county-level decisionmakers. *See Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 519 (N.D. Cal. 2011),

---

(Footnote Continued From Previous Page)

In addition, Defendant's Lead Agency Review process also illustrates Defendant's role in overseeing the provision of Waiver Services statewide. (Burke Aff. ¶ 5, Ex. 4 at 8-9.) Through this process, Defendant issues corrective actions and recommendations to lead agencies. (*See id.* at 37-40.) For example, during the Lead Agency Review covering August 2015 to September 2016, Defendant recommended that 23 counties (62.2%) "[d]evelop service options for people wanting alternatives to foster care." (*Id.* at 39.) Whether Defendant's practices in reviewing lead agencies effectively ensure the provision of reasonably prompt individualized housing services and opportunities to reside in the most integrated setting are critical common questions underlying Plaintiffs' classwide claims.

*reconsideration granted in part*, 866 F. Supp. 2d 1129 ("There is no dispute that overall governance of the GGNRA, including decisions affecting accessibility, is centrally controlled by the Park Superintendent. This is a very different situation than the nationwide, store-by-store, localized discretionary decision-making at issue in *Wal-Mart.*"). Thus, *Wal-Mart* is persuasive, but not dispositive regarding the Court's commonality analysis, below, evaluating whether each of Plaintiffs' claims "depend upon a common contention . . . that . . . is capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.

First, Plaintiffs assert that Defendant has violated the Medicaid Act's "reasonable promptness" requirement, 42 U.S.C. § 1396a(a)(8), by failing to ensure the timely provision of individualized housing services available under the Disability Waivers. The Court previously concluded that Plaintiffs stated a claim under this provision because they "adequately alleged that they are not being offered services in a reasonably prompt manner based on arbitrary or nonexistent assessment criteria." *Murphy ex rel. Murphy*, 2017 WL 2198133, at *16. In reaching this conclusion, the Court relied on guidance from the U.S. Department of Health and Human Services suggesting that "whether an individual has a right to receive a certain service 'is dependent on a finding that the individual needs the service, based on appropriate assessment criteria that the State develops and applies fairly to all waiver enrollees.'" *Id.* at *14-15 (citation omitted). Medicaid regulations also require that states "[f]urnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures." 42 C.F.R. § 435.930(a).

Plaintiffs' reasonable promptness claim challenges Defendant's statewide failure to appropriately oversee the provision of individualized housing services in all counties to ensure that these services are "furnished with reasonable promptness to all eligible individuals." *See* 42 U.S.C. § 1396a(a)(8). This challenge is common among all proposed class members and capable of resolution on a classwide basis because the Court's determination whether Defendant's oversight of the program violates this provision would resolve all of the individual class members' claims "in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *see also Steward ex rel. Minor v. Janek*, 315 F.R.D. 472, 481 (W.D. Tex. 2016) (identifying a question of law that would promote classwide resolution of a claim under 42 U.S.C. § 1396a(a)(8)'s reasonable promptness provision). If the Court determines that Defendant's management of the Disability Waivers statewide fails to ensure the reasonably prompt provision of individualized housing services to individuals living in CRS facilities, the Court could remedy that systemic challenge by requiring Defendant to establish appropriate criteria and procedures for fairly providing available services to eligible individuals. The individual differences of time that individuals may have been denied services do not defeat commonality. In fact, the fact that one Named Plaintiff has received some person-centered planning while the others have not supports Plaintiffs' overarching contention that these services are being offered in an ad-hoc manner that is not reasonably prompt. The Court concludes that this claim may properly be resolved on a classwide basis.

Second, Plaintiffs raise due process challenges under the Due Process Clause of the Fourteenth Amendment and the Medicaid Act. As the Court noted in its previous order on Defendant's Motion to Dismiss, "[t]o state a procedural due process claim, a plaintiff must demonstrate: (1) the existence of a constitutionally protected liberty or property interest; and (2) that the defendant deprived the plaintiff of that interest without constitutionally adequate process." *Murphy ex rel. Murphy*, 2017 WL 2198133, at *17. The Court previously concluded that Plaintiffs, Disability Waiver recipients, had a constitutionally protected interest in accessing individualized housing services. *Id.* at *18. This contention would plainly be applicable to the entire proposed class. The Court also determined "that Plaintiffs have plausibly alleged inadequate procedural protections" based on the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See id.* at *18-19. Plaintiffs have also asserted a challenge to Defendant's provision of notice under the Medicaid Act's fair hearing requirements. *See* 42 U.S.C. § 1396a(a)(3). Under these requirements, Defendant is responsible for the statewide provision of adequate due process in connection with the provision of Medicaid services.

Plaintiffs' due process claims are capable of Classwide resolution because the Court can determine with respect to the class as a whole whether Defendant is fulfilling her statutory obligation to ensure that adequate notice and opportunity for a hearing is being afforded to Disability Waiver recipients throughout the state. *See Susan J. v. Riley*, 254 F.R.D. 439, 460 (M.D. Ala. 2008) (rejecting the argument that individualized analysis precluded certification and noting that the relevant plaintiffs "seek to force the State to provide the notice and opportunity for a hearing to *all* applicants who are denied

eligibility, including all class members"). It is not necessary for class certification to establish that Defendant has caused any current failure on behalf of the counties to deliver adequate notice. Rather, if there is such a failure, the responsibility rests with Defendant as the administrator of the state's Disability Waiver services program.[7]

Third, Plaintiffs allege violations of the integration mandates of the ADA and Section 504 of the RA. Regulations implementing both the ADA and the RA include an "integration mandate" that requires states to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *See* 28 C.F.R § 35.130(d); *see also* 28 C.F.R. § 41.51(d). In *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), the Supreme Court considered the ADA's integration mandate and held that "[u]njustified isolation . . . is properly regarded as discrimination based on disability." *Id.* at 597. Under the ADA, "public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability,' but can avoid this obligation by 'demonstrat[ing] that making the modifications would fundamentally alter the nature of the service, program, or activity.'" *Guggenberger v.*

---

[7] The Court notes that questions regarding the adequacy of particular individual notices that may have been received are not the types of questions capable of classwide resolution given the fact-specific inquiry needed to evaluate such questions and claims. However, the Court finds that it can properly resolve Plaintiffs' claims on a classwide basis by answering the common question for all class members whether Defendant's policies and practices have failed to ensure the provision of adequate notice to individuals being denied individualized housing services available under the Waivers.

*Minnesota*, 198 F. Supp. 3d 973, 1023-24 (D. Minn. 2016) (quoting 28 C.F.R.

§ 35.130(b)(7)).

The Court previously determined that "Plaintiffs have adequately pled integration

mandate claims under the ADA and the RA based on their allegations of being unduly

segregated in CRS facilities and not receiving Disability Waiver services 'in the most

integrated setting appropriate to [their] needs.'" *Murphy ex rel. Murphy*, 2017 WL

2198133, at *23 (quoting 28 C.F.R. § 35.130(d) and citing 28 C.F.R. § 41.51(d)).  Similar

to their reasonable promptness claim, Plaintiffs' integration mandate claims focus on

Defendant's lack of oversight and failure to ensure the provision of available Disability

Waiver services throughout the state.  As the Court previously noted in considering the

plausibility of Plaintiffs' claims, Plaintiffs assert that "[r]ather than require statewide

access to individualized housing services, Defendants provide impermissible discretion to

each lead agency to choose whether to offer individualized housing services."  (Am.

Compl. ¶ 27.)  According to Plaintiffs, "[t]his abdication of DHS's responsibility to

provide and ensure choice prevents individuals receiving Disability Waiver services from

receiving an informed choice and opportunity to live in the most integrated setting."  (*Id.*)

Determining the validity of these contentions lodged against Defendant would resolve for

all class members whether their right to receive services in the most integrated setting

appropriate to their needs has been protected.  *See Kenneth R. ex rel. Tri-Cty. CAP,

Inc./GS*, 293 F.R.D. at 267 (identifying as common questions capable of classwide

resolution "whether there is a systemic deficiency in the availability of community-based

services, and whether that deficiency follows from the State's policies and practices").

The possibility that not all class members would ultimately move out of a CRS facility—and even the possibility that a CRS facility is in fact the most integrated setting for some individuals—does not defeat commonality. Plaintiffs seek to avoid the common injury of unjustified or unnecessary segregation through a system that offers a choice and opportunity to transition to the most integrated setting appropriate to their needs. These alleged injuries are thus capable of classwide resolution.

As one court has noted in discussing post-*Olmstead* integration mandate cases, "[w]here a private action raises systemic issues, courts have uniformly granted class certification to allow plaintiffs to pursue those claims, even after . . . *Wal-Mart* . . ., which arguably tightened the standard for class certification." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 126 (D.D.C. 2014) (citation omitted); *see also id.* at 126 n.11 (collecting cases). Specifically, in *Lane v. Kitzhaber*, 283 F.R.D. 587 (D. Or. 2012), an integration mandate case alleging systemic deficiencies in the state's provision of integrated employment opportunities, the court explained that "a class of disabled individuals seeking reasonable accommodation may be certified without the need for an individualized assessment of each class member's disability or the type of accommodation needed." *Id.* at 589-90, 594-95. The *Lane* court explained:

> [A]ll plaintiffs are qualified for, but not receiving the full benefit of, supported employment services; all lack regular contact with non-disabled peers (other than paid staff); and all want to work, but are not working, in an integrated setting. As a result, they and all similarly situated persons suffer the same injury of unnecessary segregation in the employment setting. It is not necessary, as defendants contend, for plaintiffs to prove at this stage that they and all putative class members are unnecessarily segregated and would benefit from employment services. That is, in effect, the answer to the common question and not the common question of

25

whether they are being denied supported employment services for which
they are qualified.

*Id.* at 598. Plaintiffs assert similar claims here and have adequately established that these

claims are capable of classwide resolution.

In short, Plaintiffs have identified multiple "questions of law or fact common to

the class" that are capable of classwide resolution. *See* Fed. R. Civ. P. 23(a)(2).

Therefore, Plaintiffs have satisfied Rule 23(a)(2).

### C.      Typicality

The third preliminary requirement for class certification is that "the claims or

defenses of the representative parties are typical of the claims or defenses of the class."

Fed. R. Civ. P. 23(a)(3). "This requirement is generally considered to be satisfied if the

claims or defenses of the representatives and the members of the class stem from a single

event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561-62

(quotation marks and citation omitted). However, "[t]he presence of a common legal

theory does not establish typicality when proof of a violation requires individualized

inquiry." *Elizabeth M.*, 458 F.3d at 787. Typicality and commonality "tend to merge"

because "[b]oth serve as guideposts for determining whether under the particular

circumstances maintenance of a class action is economical and whether the named

plaintiff's claim and the class claims are so interrelated that the interests of the class

members will be fairly and adequately protected in their absence." *Wal-Mart Stores,*

*Inc.*, 564 U.S. at 349, n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58,

n.13 (1982)).

Plaintiffs argue that the typicality requirement is met because the Named Plaintiffs' claims are based on the same conduct by Defendant and can be remedied in the same manner as the claims of the entire proposed Class. Plaintiffs emphasize that all proposed class members share the same "typical problem" of being "stuck in corporate foster care." (Doc. No. 51 at 17.) Plaintiffs also argue that the fact that some individuals may be prevented from implementing individualized housing options does not bar class certification. Finally, they contend that individual differences in Waiver type or geographic location do not defeat typicality or adequacy.

Defendant contends that Plaintiffs fail to establish typicality because the Named Plaintiffs' interests differ from those of the proposed Class. For example, Defendant argues that Plaintiffs have not established that the proposed class members all wish to move from their CRS facilities like the Named Plaintiffs. Defendant also points out that the three Named Plaintiffs reside in Hennepin County and that they do not represent all types of available waiver recipients.

The Court finds that the Named Plaintiffs' claims "are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Specifically, Bottelson, Swanson, and Murphy all assert that they presently reside in CRS facilities and experience various levels of isolation and segregation from their communities in these settings. (*See* Doc. No. 44 ("Bottelson Decl.") ¶¶ 6, 10; Doc. No. 42 ("Swanson Decl.") ¶¶ 4, 5-6; Doc. No. 43 ("Murphy Decl.") ¶¶ 7-8, 10.) In addition, like the proposed class, the Named Plaintiffs assert that they have been denied the choice and opportunity to access the most integrated setting appropriate to their needs by utilizing individualized housing services. (Bottelson

Decl. ¶¶ 8, 12-13; Swanson Decl. ¶¶ 5, 8-9; Murphy Decl. ¶¶ 14-16.)  Bottelson explains that despite asking to move to her own apartment multiple times since 2013, "I have not been given more individualized or independent alternative options to consider." (Bottelson Decl. ¶ 8.)  Swanson has made similar requests but asserts that "[m]y case managers . . . have told me I am not 'independent enough' for such individualized housing."  (Swanson Decl. ¶ 5.)  Murphy's co-guardian states that "[a]lthough I have asked several people at Hennepin County about accessing more individualized housing options, [Murphy] remains stuck in a segregated setting."  (Murphy Decl. ¶¶ 1, 14.)  The Named Plaintiffs' interests in this case are identical to those of the proposed class members as each seeks to require Defendant to implement the state's Disability Waiver programs in a manner that ensures access to available Disability Waiver services in a reasonably prompt manner, with adequate notice, and in the most integrated setting appropriate to their needs.

As the Court concluded with respect to commonality, individualized inquiries are not necessary to determine Defendant's liability for the alleged violations of federal law because Plaintiffs' challenges focus on Defendant's actions and inactions applied to the system as a whole.  Furthermore, the Named Plaintiffs' claims are typical even though proposed class members may be eligible for individualized housing services under different Disability Waivers administered in different counties.  *Cf. Susan J.*, 254 F.R.D. at 460 (rejecting the argument "that certification of a statewide class may be inappropriate because the [local county agency] may be doing a particularly bad job of serving people" and noting that "[t]his argument overlooks the fact that it is the State's

Medicaid plan that is required to comply with Federal Law"). It is also no bar to certification that some individuals in the proposed class may not want to move out of a CRS facility because the requested relief is aimed at providing opportunities to access more integrated alternatives, and it is immaterial whether all proposed class members will ultimately take advantage of those opportunities.

Because Plaintiffs' claims stem from the same legal theory and seek the same legal remedy as the proposed class, Plaintiffs satisfy Rule 23(a)(3).

## D. Adequacy

Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).[8] In evaluating this requirement, courts must "clearly inquire into whether the named representatives (1) 'have common interests with the members of the class [;]' and (2) 'will vigorously prosecute the interests of the class through qualified counsel.'" *In re Target Corp.*, 847 F.3d at 613 (quoting *Paxton*, 688 F.2d at 562-63). Furthermore, "the court must diligently aim to 'uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Plaintiffs assert that they are represented by competent counsel and "will fairly and adequately protect the interests of the class in this action." (Doc. No. 37 at 24.) Plaintiffs ask the Court to appoint as class counsel attorneys from the Minnesota

---

[8]      Rule 23(g)(4) also provides that "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Disability Law Center, a division of Mid-Minnesota Legal Aid and the law firm of Anthony Ostlund Baer & Louwagie, P.A.  The Named Plaintiffs also declare that their interests are "common and coextensive" with the proposed class.  (*Id.*)  They contend that "[b]ecause all Class Members seek to receive individualized transition plans and an opportunity to implement those plans by moving to the most integrated setting appropriate to their needs, they will all benefit from the prospective injunctive relief in this case." (*Id.* at 24-25.)  The Named Plaintiffs also attest that they will responsibly serve as class representatives in this matter.  (*See* Bottelson Decl. ¶ 14; Swanson Decl. ¶ 10; Murphy Decl. ¶ 17.)  Defendant does not assert a particular challenge to the competency of proposed class counsel and makes the same arguments against adequacy as those made with respect to typicality.

The Court finds that the Named Plaintiffs have met the requirements of Rule 23(a)(4).  Consistent with the Court's analysis of both the commonality and typicality requirements, above, the Court finds that the Named Plaintiffs assert injuries that are common to and typical of those alleged on behalf of the proposed class— unjustified isolation and segregation in CRS facilities and denial of available Disability Waiver services.  Thus, both the Named Plaintiffs and the proposed class members share the common goals of obtaining Disability Waiver services in a reasonably prompt manner and pursuing appropriate integration into their communities.  The Court acknowledges that the individualized housing services Plaintiffs seek may be drawn from a limited pool of available resources, suggesting a potential conflict of interest among those seeking to access these services.  However, the Named Plaintiffs and the proposed class would all

benefit from the remedies they seek in the form of a more consistent and equitable distribution of resources statewide. Thus, to the extent there is any conflict of interest, the Court determines that it is insufficient to preclude certification of this proposed class seeking systemic injunctive relief to improve Defendant's oversight of the state's Disability Waiver services system. The Court also finds that counsel for the Named Plaintiffs are qualified to assist the Named Plaintiffs in serving as class representatives and vigorously advancing the goals of the class. Along with detailing their qualifications to represent the class in declarations to the Court, (*see* Doc. Nos. 40, 41), counsel for the Named Plaintiffs have also vigorously represented the interests of the Named Plaintiffs and the proposed class in the months since this litigation began. *See Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 516 (D. Minn. 2015).

The Court finds that Plaintiffs have established adequacy under Rule 23(a)(4).

### III.    Rule 23(b)

Along with meeting the prerequisites of Rule 23(a), a party seeking class certification must also satisfy one or more of the conditions set forth under Rule 23(b). Fed. R. Civ. P. 23(b). In this case, Plaintiffs seek certification of a Rule 23(b)(2) class. Under this provision, certification is proper "if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[C]ohesiveness is the touchstone of a (b)(2) class, as a (b)(2) class 'share[s] the most traditional justification[ ] for class treatment,' in that 'the relief sought must

perforce affect the *entire class at once.*'" *Ebert*, 823 F.3d at 480 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 361-62). Since class members cannot opt out of a(b)(2) class and there is no requirement for the court to provide notice, "the cohesiveness requirement of Rule 23(b)(2) is more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)." *Id.* "Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender." *In re St. Jude Med., Inc.*, 425 F.3d at 1122 (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983)).

Plaintiffs argue that class certification is proper under Rule 23(b)(2) because "class-wide relief will address the two broad areas of Defendants' illegal conduct," including the failure to provide reasonably prompt waiver services with adequate due process and subjecting Plaintiffs to needless segregation. (Doc. No. 37 at 26.) By accessing individualized housing services, developing individualized transition plans, and having opportunities to implement these plans, Plaintiffs argue, "individuals would finally be able to plan for, look for, move into, and live in the most integrated setting appropriate to their needs." (Doc. No. 37 at 26-27.) Plaintiffs argue that all class members would benefit from the requested injunctive and declaratory relief.

Defendant argues that certification under Rule 23(b)(2) is improper where the plaintiffs seek individualized relief. According to Defendant, Plaintiffs seek "highly individualized relief" in the form of individualized person-centered planning,

individualized housing services, and opportunities to implement those individualized services.  (Doc. No. 45 at 25.)  Defendant points out that "some class members have received person-centered planning—including Ms. Bottelson—and some may not have," and "[s]ome are already in their most integrated setting, and Plaintiffs allege some are not."  (*Id.* at 26.)  Defendant argues that the Court could not issue an order in this case that affects the proposed Class at the same time, rendering certification improper under Rule 23(b)(2).  Finally, Defendant asserts that the relief Plaintiffs seek violates principles of federalism and the separation of powers.

Plaintiffs contend that they do not ask the Court to impose individualized relief such as "deciding the support plan for each class member" or "issuing individualized injunctions detailing the treatment needs of each class member, displacing Minnesota's assessment and planning process, or mandating that Plaintiffs receiving housing of their choice."  (Doc. No. 51 at 18.)  Plaintiffs also dispute Defendant's argument that their requested relief violates federalism or the separation of powers.

The Court finds that the proposed class may be properly certified under Rule 23(b)(2) because this case centers on Defendant's conduct in administering the Disability Waivers statewide.  In particular, Plaintiffs allege that Defendant fails to ensure the reasonably prompt provision of individualized housing services, fails to ensure that services are provided in the most integrated setting appropriate to individuals' needs, and fails to ensure that Disability Waiver recipients receive adequate procedural due process protections.  As the Court has previously explained in a separate case, "the Commissioner has ultimate responsibility for the State's provision of Waiver Services

under both federal Medicaid law and Minnesota statutes." *Guggenberger*, 198 F. Supp. 3d at 1034 (citing 42 C.F.R. §§ 431.10(b), 431.10(e), 435.903; Minn. Stat. §§ 256.01, subd. 2(a); 256B.04, subd. 1; 256B.05, subd. 1). Thus, the class comprises a cohesive group of similarly situated individuals receiving Disability Waivers and residing in CRS facilities whose circumstances are impacted by Defendant's actions and inactions with respect to the class as a whole.

Further, if Plaintiffs' claims are ultimately successful, the Court finds "that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court acknowledges that Plaintiffs seek individualized services in order to obtain individualized housing options. However, Plaintiffs do not seek individualized injunctive relief for each class member. Rather, Plaintiffs seek final relief that would enable them to access individualized housing services and integrated residential settings through improvements to Defendant's administration of the Disability Waivers.

Finally, the Court addresses Defendant's arguments regarding federalism and the separation of powers. The Eighth Circuit has acknowledged the importance of carefully evaluating class certification and jurisdiction "before certifying a class seeking broad injunctive relief against a state agency." *Elizabeth M.*, 458 F.3d at 784. The Court incorporates its previous analysis regarding the important federalism and separation of powers considerations at issue in this matter, *see Murphy ex rel. Murphy*, 2017 WL 2198133, at *25-27, and determines that these considerations do not justify denying certification of the proposed class.

34

As a result of the foregoing considerations, the Court finds that this class is properly certified under Rule 23(b)(2).

## CONCLUSION

Resolving Plaintiffs' claims in the context of a class action will fairly promote the interests of the class and will ensure judicial economy.  In addition, because this matter seeks to reform Defendant's statewide administration of Disability Waiver services to all individuals over age 18 residing in CRS facilities, a class action will permit the parties to litigate issues common to the class in an economical manner while avoiding duplicative litigation.  The Court finds that Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(2), and the Court certifies the proposed class.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.     Plaintiffs' Motion for Class Certification (Doc. No. [35]) is **GRANTED**.

2.     The following class is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:  All individuals age 18 and older who are eligible for and have received a Disability Waiver, live in a licensed Community Residential Setting, and have not been given the choice and opportunity to reside in the most integrated residential setting appropriate to their needs.

3.     Having considered the requirements of Rule 23(a)(4), the Court appoints Tenner Murphy, by his guardians Kay and Richard Murphy; Marrie Bottelson; and Dionne Swanson as class representatives.

4.      Having considered the requirements of Rule 23(g) of the Federal Rules of

Civil Procedure, the Court appoints Sean B. Burke, Justin H. Perl, Joseph W. Anthony,

Steven M. Pincus, and Peter J. McElligott as class counsel.

Dated:  September 29, 2017                    s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge