UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---------------------------------------------------------

| | |
|---|---|
| Tenner Murphy, by his guardians Kay and Richard Murphy; Marrie Bottelson; Dionne Swanson; and on behalf of others similarly situated, | Civ. No. 16-2623 (DWF/BRT) |
| | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |
| Plaintiffs, | |
| vs. | |
| Emily Johnson Piper in her Capacity as Commissioner of The Minnesota Department of Human Services, | |
| Defendant. | |

----------------------------------------------------------

1

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................3

II.  LEGAL STANDARD....................................................................................................5

III.  ARGUMENT................................................................................................................6

  A.  Defendant Must Obtain and Provide the Specific and Limited Class Member Related Information from Her Lead Agencies as Requested in Interrogatory ...............6

    1.  The information requested is reasonably available to Defendant and answering this interrogatory would not cause Defendant undue burden. ...............................7

    2.  Interrogatory No. 33 is specifically aimed at information referenced in particular reports, proportional to the needs of the case, and relevant to Plaintiffs' claims and requested relief…………………………………………………………………11

  B.  Defendant Must Produce Documents Responsive to Revised Document  Request No. 43 Because Defendant has Possession, Custody, or Control Over  Documents Held at Lead Agencies and This Request is not Unduly  Burdensome. .................................14

    1.  Defendant has possession, custody, or control over documents held by lead agencies...........................................................................................................16

    2.  Defendant must produce all documents that are responsive to...........................22 subsection (a). ...................................................................................................22

    3.  Defendant must produce all documents responsive to subsection (e). ...............25

    4.  Defendant must produce all documents responsive to subsection (f).................27

  C.  Defendant has Failed to Properly and Adequately Raise the Deliberative Process Privilege, and, to the Extent Defendant has Sufficiently Raised the  Deliberative Process Privilege the Balancing of Factors Weigh in Favor of  Disclosure. ................28

    1.  Defendant has failed to properly invoke the deliberative process privilege and establish its application. ...................................................................................29

      a.  Defendant has failed to properly invoke the deliberative process privilege........................................................................................................31

      b.  Defendant's privilege and redaction logs fail to provide adequate descriptive and evidentiary support for her assertion of the deliberative process privilege……………………………………………...............................33

    2.  The balancing of factors weighs in favor of disclosure. ....................................35

  D.  Defendant's Failure to Identify Individual Custodians for a Large Portion of Documents Produced Demonstrates that Defendant has Failed to Produce  Documents as They are Kept in the Usual Course of Business. ......................................................38

IV.  CONCLUSION ...........................................................................................................41

## I.    INTRODUCTION

Plaintiffs' certified class action against Defendant, commissioner of the Department of Human Services (DHS), aims to end the unjustified isolation and unnecessary segregation of Plaintiffs in corporate foster care facilities by remedying Defendant's systemic violations of the law. The certified class consists of "[a]ll individuals age 18 and older who are eligible for and have received a Disability Waiver, live in a licensed Community Residential Setting, and have not been given the choice and opportunity to reside in the most integrated residential setting appropriate to their needs." (Doc. 99, Class Cert. Order, at 35.) Plaintiffs allege that Defendant is violating the integration mandates of the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act (Section 504), the reasonable promptness and due process requirement of the Medicaid Act, and the Due Process clause under the Fourteenth Amendment of the United States Constitution. Part of Plaintiffs' requested relief includes an order directing Defendant to end the needless segregation of the class in corporate foster care facilities, also known as Community Residential Settings (CRS), by making reasonable modifications to the Defendant's Waiver system. The discovery disputes at issue in this Motion to Compel Discovery go to the heart of Plaintiffs' claims and requested relief.

On January 30, 2018, Plaintiffs served Defendant with Plaintiffs' Fourth Set of Interrogatories and Fifth Set of Documents Requests. (Doc 97, Exhibits C (Pls.' Fourth Set of Interrogatories) & D (Pls.' Fifth Set of Requests for Documents) to Doc. 187.) Defendant served Plaintiffs with her responses on March 5, 2018. (Doc. 200, Exhibit E (Def.'s Resp.

to Pls.' Fourth Set of Interrogatories) to Doc. 187; Doc. 201, Exhibit F (Def.'s Resp. to Pls.' Fifth Set of Requests for Documents) to Doc. 187.) On March 9, 2018, Plaintiffs sent Defendant written correspondence informing Defendant of the deficiencies in her discovery responses. Affidavit of Christen Chapman (hereinafter, "Chapman Aff."), Ex. 1. The parties met and conferred on March 13, 2018 regarding discovery disputes, but were not able to reach a resolution of all the discovery disputes at issue. Additional written correspondence followed after the parties met and conferred. *See* Chapman Aff., Ex. 2–4.

Plaintiffs are moving this Court to compel Defendant to provide the identities of individuals who remain stuck in corporate foster care despite expressing a desire to move, and individuals who have successfully transitioned out of corporate foster care facilities to alternative, more integrated residential settings. Plaintiffs also seek individual case documents for this group of people. The information from these individuals and contained in their case documents is significant to each of Plaintiffs' claims and requested relief. Specifically, at issue are Plaintiffs' Interrogatory No. 33 and Revised Document Request No. 43.

Additionally, Plaintiffs raise two other critical discovery issues in this motion— Defendant's improper use of the deliberative process privilege to withhold documents and portions of documents, and Defendant's failure to produce documents as they are kept in the regular course of business. Defendant has failed to follow proper procedure to invoke the deliberative process privilege, has failed to provide sufficient information in her privilege and redaction logs to establish the application of the privilege, and has improperly

4

withheld documents under this qualified privilege. In addition, Defendant has produced documents in manner that prevents Plaintiffs from reasonably determining what documents are responsive to their requests. These actions impermissibly thwart Plaintiffs' ability to obtain and locate documents to support their claims and requested relief.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In evaluating the proper scope of permissible discovery under this rule, the court should "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Information that meets these requirements is discoverable even if it would not be admissible in evidence. *Id.* The party seeking discovery must make a threshold showing of relevance. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). The burden then shifts to the objecting party to show that the requested information or documents are not relevant or pose an undue burden. *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

## III.    ARGUMENT

**A.    Defendant Must Obtain and Provide the Specific and Limited Class Member Related Information from Her Lead Agencies as Requested in Interrogatory No. 33.**

> **INTERROGATORY NO. 33:** Identify the Waiver recipients who have been identified as wanting to move from corporate foster care facilities in the Local Planning Grant Reports that have been produced, DHSGOR0032379-DHSGOR0032636, and any other related grant reports.

> **DEFENDANT'S OBJECTION**: Defendant objects to this Interrogatory because it is overbroad, unduly burdensome and disproportionate, seeks irrelevant information, is vague to the extent it refers to "related grant reports," and to the extent it seeks information protected by the attorney-client or work product privileges.

> **DEFENDANT'S ANSWER**: Subject to and without waiving the general objections above and these specific objections, Defendant states individuals are not "identified" in grant reports. To the extent Defendant has responsive information in its possession, custody, or control, it has already been produced in the form of grant reports. See DHSGOR0032379-DHSGOR0032636; DHSGOR0467249-DHSGOR0468779.

As this Court has previously recognized, "when answering interrogatories, a party does have an obligation to 'make efforts to obtain the desired information.'" (Doc. 78, Aug. 21, 2017 Order, at 13–14 (quoting 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure and Procedure* § 2163 (3d ed. 2010)).) "The party objecting to interrogatories bears the burden of showing that the information sought is not reasonably available to it." (*Id.* (quoting *Lindholm v. BMW*, No. 3:15-CV-03003-RAL, 2016 WL 452315, *5 (D.S.D. Feb. 5, 2016)).) Here, Defendant has failed to articulate why the specific information requested in Interrogatory No. 33 is not reasonably available to her or would be unduly burdensome, other than to provide conclusory statements. Furthermore, the information is specifically requested, relevant, and proportional to the needs of the case.

6

### *1.   The information requested is reasonably available to Defendant and answering this interrogatory would not cause Defendant undue burden.*

DHS has offered opportunities for lead agencies to apply for grants aimed at developing alternatives to corporate foster care for people with disabilities. As part of their obligations under these grants, the grantees (lead agencies) must submit periodic reports on their progress to DHS. As part of discovery, Defendant has produced these Local Planning Grant Reports to Plaintiffs. While these reports do not provide names of individuals, the reports clearly reference specific individuals who have expressed interest in moving out of corporate foster care facilities into alternatives and individuals who have received assistance to move out of corporate foster care facilities. *See, e.g.*, Chapman Aff., Ex. 5–6 (examples of Local Planning Grant Reports). From the documents produced by Defendant, it appears that there are eleven lead agencies that have been the recipients of local planning grants aimed at developing alternatives to corporate foster care for people with disabilities. These lead agencies have submitted reports to DHS that reference individuals who want to move out of corporate foster care facilities into alternatives. This means that Defendant would need to reach out to only eleven lead agencies to gather the critical information responsive to Interrogatory No. 33. Specifically, Defendant would need to contact only Blue Earth, Brown, Nicollet, Hennepin, Ramsey, Dakota, Anoka, Stearns, Washington, Brown, and St. Louis Counties.

In affirming a prior order from this Court, which granted, in part, an earlier motion of Plaintiffs to compel, Judge Frank held:

> The Court declines to conclude that requiring Defendant to reach out to lead agencies to answer interrogatories would in all circumstances be unreasonable or beyond the scope of what is permitted under the relevant discovery rules. If Defendant determines that information from lead agencies is not reasonably available to her, she must articulate why that is the case with respect to the particular information being requested.

(Doc. 151, J. Frank Order Affirming Mag. J.'s Aug. 21, 2017 Order, at 9–10.)

Moreover, in granting Plaintiffs' motion to compel an answer to a prior interrogatory, this Court held that "Defendant may not already have the 'data' sought by this request; however, Defendant must make efforts to obtain the desired information and answer the question about the number of people disclosed in Interrogatory No. 4(d) who are living in the most integrated setting." (Doc. 78, Aug. 21, 2017 Order, at 19–20.) This Order was affirmed by Judge Frank. (Doc. 151, at 10.) Despite these rulings, Defendant has refused to make any attempts to seek the requested information from lead agencies and has failed to articulate why this particular information is not reasonably available to her. *See* Chapman Aff., Ex. 3 (Def.'s March 16, 2018 Letter to Pls.), at 2. Defendant relies on the fact that Hennepin County requested Defendant to provide signed releases from Named Plaintiffs in order to obtain Named Plaintiffs' lead agency documents as support for her claim that information from lead agencies is not reasonably available. *Id.* Defendant argues that her "ability to obtain lead agency documents is no different than Plaintiffs' ability to do so." *Id.*

Defendant's argument that both parties have the same ability to obtain lead agencies documents is incorrect. On the contrary, the provider agreements between Defendant and lead agencies who administer Home and Community Based Waivers specifically state that

8

lead agencies must "maintain records which fully disclose the process and data used in authorizing and monitoring services and *to furnish the Department of Human Services with such records upon request.*" *See* Chapman Aff., Ex. 7. These provider agreements clearly give Defendant the authority to request records and information from lead agencies without an Authorization for Disclosure of Information or subpoena, a right that Plaintiffs do not have.

Moreover, both state and federal law specifically allow lead agencies and DHS to share individuals' information with each other without an Authorization for Release of Information. The Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule provides that one government agency that provides public benefits may disclose protected health information to another government agency that provides public benefits if the disclosure "is necessary to coordinate the covered functions of such programs or to improve administration and management relating to the covered functions of such programs." 45 C.F.R. § 164.512(k)(6)(ii). Similarly, the Minnesota Government Data Practices Act (MGDPA) provides that "personnel of the welfare system" may share data with each other in order to "evaluate the effectiveness of programs." *See* Minn. Stat. § 13.46, subd.(2)(a)(5). The definition of "the welfare system" includes both DHS and the lead agencies. *See* Minn. Stat. § 13.46, subd. 1(c). One of the main purposes of Plaintiffs' lawsuit and this discovery request is to evaluate the effectiveness of Defendant's Waiver system in order to improve administration and management of the system. Consequently,

these laws enable the free sharing of information between DHS and the lead agencies for the purposes of responding to the request.

DHS itself recognizes that they may share and receive information from lead agencies without a release and does so routinely in their work. DHS has created a guide titled *DHS Data Sharing Framework for Human Services Integration*, which provides a framework for sharing individuals' data across program areas and between DHS and lead agencies without individual releases. *See* Chapman Aff., Ex. 8 (*DHS Data Sharing Framework for Human Services Integration*), at 3. In addition, DHS's Tennessen warning[1] informs program participants that an individual's information may be shared with, among others, employees with other state, county, local, federal, and partner nonprofit and private agencies. *See* Chapman Aff., Ex. 9 (DHS Medical Assistance Application for Long-Term-Care Services), at 15. Moreover, when DHS conducts lead agency reviews, in which DHS reviews individual case files that are held by lead agencies, DHS does not require that lead agencies obtain releases from individuals in order to review those individuals' case files. Chapman Aff., Ex. 10 (Stacey Twite Dec. 14, 2017 Dep. Tr. Excerpts, 18:16–19:13; 34:7–35:4 (testifying that "in the case of Lead Agency Review we do not have a release of information from the individual file we're looking at."). Defendant's own operations and

---

[1] A Tennessen warning is an element of the MGDPA that requires government agencies to inform individuals about how their data will be used. *See* Minn. Stat. § 13.04, subd. 2

practices undermine any claim that she must have releases of information to obtain individuals' information from lead agencies.[2]

Not only is the requested information reasonably available to Defendant, but it would not be unduly burdensome to gather the requested information. Defendant would need to reach out to only eleven lead agencies and request the identifying information for the specific individuals referenced in the particular Local Planning Grant Reports at issue. Defendant's boilerplate objection that this Interrogatory is unduly burdensome is insufficient to carry her burden. (*See* Doc. 78, Aug. 21, 2017 Order, at 18 ("The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden—that party must make a specific showing of reasons *why* the particular discovery should not be had.") (quoting *Gowan v. Mid Centiry Ins. Co.*, 309 F.R.D. 503, 509 (D.S.D. 2015)).)

### 2.    *Interrogatory No. 33 is specifically aimed at information referenced in particular reports, proportional to the needs of the case, and relevant to Plaintiffs' claims and requested relief.*

In addition to being reasonably available to Defendant and not causing her an undue burden, Plaintiffs' request is specific, proportional to the needs of the case, and relevant to Plaintiffs' claims and requested relief. First, Plaintiffs' request is specific as it seeks the identities of select individuals who have been identified in particular reports that were produced by the respective named lead agencies to DHS. Second, the requests for the

---

[2] Moreover, information and documents held by lead agencies are within Defendant's possession, custody, or control as Defendant has ultimate authority and responsibility for the statewide disability waiver service system. *See* discussion *infra* Part III.B.1.

identity of these individuals, who have specific information about living in and trying to move out of corporate foster care, are proportional to the needs of this case, which is ending the unjustified isolation and unnecessary segregation of Plaintiffs by remedying Defendant's systemic violations of the law. These needs are of fundamental importance to the certified class and society. *See Olmstead v. L.C.*, 527 U.S. 581, 600–601 (1999) (acknowledging that unjustified isolation "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life[,]" and "diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment.").

In addition, the requested information is critical to the merits of this case, as it requests the identities of individuals who want to move out of corporate foster care facilities to alternatives. Individuals who have been identified as wanting to move out of corporate foster care facilities into alternatives are most likely members of the Plaintiffs' class and should have information regarding Defendant's failure to provide services with reasonable promptness, Defendant's failure to provide Due Process, and the unnecessary segregation in corporate foster care facilities. This information goes directly to Plaintiffs' claims. (*See* Doc. 33, Pls.' Amend. Compl. ¶¶ 102–132.) As this Court previously held, "information regarding individuals who wish to transfer into an alternative to foster care is relevant and proportional pursuant to Rule 26." (Doc. 78, Aug. 21, 2017 Order, at 18.)

Moreover, as this Court and Judge Frank previously held, information about individuals who have already transitioned from corporate foster care facilities to alternatives are still relevant to Plaintiffs' claims and requested relief. (*See* Doc. 151, J. Frank's Order Affirming Mag. J.'s Aug. 21, 2018 Order, at 9–10 (holding that this Court properly granted Plaintiffs' motion to compel, which included a request for information about individuals' transitions from corporate foster care facilities to alternatives).) For example, the individual may have information about being unnecessarily segregated in a corporate foster care facility despite requesting to move to an alternative. The individual could also provide information regarding whether he or she received the services necessary to move with reasonable promptness, or whether he or she received Due Process. This fairly basic information from these individuals, which DHS should have in order to properly run its system, will likely illustrate whether their "success stories" were a result of the current policy or *ad hoc* accommodations to those who had more influence over the system. Such information may also reveal Defendant's ongoing unlawful conduct, and, thus, the need for the permanent injunction Plaintiffs have requested. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (recognizing that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury[]" when determining whether a permanent injunction is necessary to prevent the recurrence of unlawful conduct). Furthermore, information about how the individual was able to successfully move out of a corporate foster care facility will demonstrate what service models have been effective and, thus, may inform what reasonable changes Defendant could make to the

system. Finally, this information will also rebut Defendant's fundamental alteration defense because it will provide insight into the tools, costs, and feasibility of Plaintiffs' requested reasonable changes, such as providing person-centered planning transition services to Plaintiffs, so that Plaintiffs can show these changes will not fundamentally alter to the system.

The information requested in Interrogatory No. 33 is specific, not unduly burdensome, proportional to the needs of the case, relevant (if not critical), and reasonably available to Defendant. This Court should order Defendant to provide a response to Interrogatory No. 33.

**B.** **Defendant Must Produce Documents Responsive to Revised Document Request No. 43 Because Defendant has Possession, Custody, or Control Over Documents Held at Lead Agencies and This Request is not Unduly Burdensome.**

**REVISED DOCUMENT REQUEST NO. 43[3]:** Provide the MnCHOICES assessment, Case Support Plan, Community Services and Support Plan, My Move Form, transition plan, person-centered plan, correspondence between the Waiver recipient and case manager, lead agency and/or DHS, and case notes since January 1, 2015 for the following individuals:

    a.    Waiver recipients identified through providing responsive documents to Plaintiffs' document request numbers 35 and 44;

    e.    The 42 individuals that Defendant identified as having expressed that they wanted to move from corporate foster care facilities to alternatives during their 2016 MnCHOICES assessment; and

    f.    Waiver recipients identified as wanting to move out of corporate foster care facilities through the DHS Local Planning Grants.

---

[3] In response to Defendant's alleged undue burden, Plaintiffs narrowed the scope of Document Request No. 43. However, Defendant refused to provide all responsive documents to the narrowed request.

14

**DEFENDANT'S RESPONSE TO DOCUMENT REQUEST NO. 43**: Defendant objects that this Request is overly broad, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of the case. In particular, this Request seeks irrelevant information to the extent it seeks information about individuals who are not class members. Defendant further states that it understands "Case Support Plan" refers to "Consumer Support Plan."

Defendant further states that Defendant has MnCHOICES assessments, Consumer Support Plans, and Community Services and Support Plans in its possession, custody, or control. Defendant states that "My Move Form, transition plan, person-centered plan, correspondence between the Waiver recipient and case manager, lead agency" and complete case notes are not in DHS's possession, custody, or control. Defendant objects that this Request is unduly burdensome because DHS estimates that to gather all responsive information for the 752 individuals referred to in (c), (d), and (e), would take over 500 hours. Specifically, DHS estimates it would take approximately 142 hours to pull MnChoices Assessments, Consumer Support Plans, and Community Services and Support Plans, and DHS estimates it would take approximately ten minutes to two hours to pull extraneous and miscellaneous documents (including potentially portions of case notes) out of SSIS for each of the 752 files at issue, because each file would have to be reviewed manually and contain differing quantities of data.

As to (f), Defendant does not have those identities, because the data provided to DHS regarding individuals who want to move are numerical and aggregate; they do not contain identifying information.   See, e.g., DHSGOR0032379.

As to (a), Defendant incorporates its objections to Request No. 29, 30, 32-35, and 44, and states that these requests do not ask Defendant to "identifly]" anyone, so (a) is non-sensical.

After serving Defendant with a letter that contained Revised Document Request No. 43, Defendant maintained that she would not be providing any documents responsive to subsections (a) and (f) of the request. Defendant did agree to produce the Consumer Support Plans (CSP) and the Community Services and Support Plans (CSSP) for the waiver

recipients identified in subsection (e) of Revised Document Request No. 43, which requests these documents for the 42 individuals that Defendant identified as having expressed that they wanted to move from corporate foster care facilities to alternatives during their 2016 MnCHOICES assessment.[4] However, Defendant indicated that she would not be producing the additional documents requested for these 42 individuals.

Defendant should be ordered to produce all documents responsive to Revised Document Request No. 43 because the requested documents are within Defendant's possession, custody, and control. Furthermore, the request is specific, relevant, not unduly burdensome, and proportional to the needs of the case.

### 1.    Defendant has possession, custody, or control over documents held by lead agencies.

Defendant maintains the position that individual-level case documents held by lead agencies are not within Defendant's possession, custody, or control. Specifically, as it relates to Revised Document Request No. 43, Defendant asserts that the following documents are not within Defendant's possession, custody, or control: the My Move Form, transition plan, person-centered plan, correspondence between the Waiver recipient and case manager, lead agency[5], and case notes.[6]

---

[4] Defendant already produced the MnCHOICES assessment for these 42 individuals as part of her response to a prior interrogatory.

[5] Defendant does not assert that correspondence, which involves DHS is not within her possession, custody, or control, but still does not agree to produce the requested correspondence.

[6] Defendant's response does appear to admit that at least some of these documents are available in the SSIS database, and thus would not require them to contact lead agencies.

Defendant's response displays a fundamental misunderstanding of DHS's legal responsibility and authority under state and federal law to administer and manage the statewide disability waiver system. As Judge Frank concluded in granting Plaintiffs' class certification motion, "[b]ecause Defendant has ultimate authority and responsibility for the State's Disability Waivers, Defendant cannot simply abdicate that responsibility by pointing to the actions of county-level decisionmakers." (*See* Doc. 99, Class Cert. Order, at 19 (citation omitted).)

A party is required to produce documents within its "actual possession, custody or control" or over which it "has the legal right to obtain the documents on demand." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000) (quoting *In Re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)); *see also Select Comfort Corp. v. Sleep Better Store*, LLC, No. 11-cv-621, 2012 WL 11946958, at *1 (D. Minn. Apr. 5, 2012) (requiring production of all electronically stored information from defendant's stores, vendors, and agents because documents were within party's possession, custody or control). Federal courts have interpreted "control" broadly, finding that it "does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Private Bank Minn. v. Anderson*, No. A13-1570, 2014 WL 1344386, at *4 (Minn. Ct. App.

---

Defendant appears to object to these documents solely on burdensome grounds, which is unfounded. *See* discussion *supra* Part III.B.3.

Apr. 7, 2014) (quoting *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997)). Defendant agrees that she is responsible to produce documents if she has a "legal right to obtain them."  (*See* Doc 125, Def.'s Memo in Opp. to Pls.' Mot. to Compel, at 9.)

DHS is required to manage and administer the Medicaid program, which specifically includes supervision of the lead agencies. *See* Minn. Stat. § 256B.04, Subd. 1. DHS recognizes this requirement in its waiver applications with Centers for Medicare & Medical Services (CMS).  In these applications, DHS admits that Home and Community Based Waivers are "administered by the Minnesota Department of Human Services (department), the State's Medicaid agency." *See* Chapman Aff., Ex. 11 (Waiver Application Excerpt), at 4. DHS's waiver applications to CMS further assert that there is an "interagency agreement or memorandum of understanding" between DHS and the lead agencies "that sets forth responsibilities and performance requirements…." *Id.* at 19. The waiver applications also confirm that DHS has access to data and information at the lead agency level, or at the very least can request it, and that Defendant is required to maintain such data. (Doc. 70-18, Ex. R (Waiver Application, Appendix A) (confirming that Defendant established and oversees the data infrastructure for the Waiver program).)

The provider agreements between DHS and the lead agencies reveal that the documents that Plaintiffs have requested are within her possession, custody or control.  The provider agreements set forth various requirements that the lead agenices must abide by when administering Home and Community Based service programs.  *See* Chapman Aff.,

18

Ex. 7. As noted above, one of these requirements is to "furnish the Department of Human Services with such records upon request." *Id.* Defendant cannot claim that documents possessed by lead agencies are not within her possession, custody or control for purposes of discovery requests because DHS is the state agency that is responsible for ensuring Minnesota's compliance with the Medicaid Act and its provision of services, as well as complying with the integration mandate.

Furthermore, the individual-level case documents requested in Revised Document Request No. 43 that Defendant claims are not within her possession, custody, or control are documents that DHS *requires* lead agencies to maintain as part of a waiver recipients' file. DHS conducts lead agency reviews for the stated reason of "assuring compliance by counties and tribes in the administration of HCBS programs[.]" Chapman Aff., Ex. 12 (Lead Agency Review webpage). As part of the lead agency review process, DHS reviews individual case files to assess whether required documents and information are contained in those files. Chapman Aff., Ex. 13 (Lead Agency Review *Data Collection Sources & Methods*). In particular, DHS requires that the following items, among others, be generated by the lead agency for individual waiver recipients: a support plan (ISP, CSSP, etc.),[7] the current assessment (which may be a MnCHOICES summary report), and documentation that face-to-face visits with the individual has occurred. (Doc.127-1, *Lead Agency Review List of Items Reviewed*, at 2–3.)

---

[7] The lead agency review checklist does not specify what form the individual's support plan must take, but list items that must be in the support plan such as the individual's goals and aspirations, and what is important to the person. *Id.* at 3.

During the December 14, 2017 30(b)(6) document retention deposition of DHS, Ms. Twite testified that the lead agency review team checks the case notes in individual files to determine whether case managers are conducting the required face-to-face visits. Chapman Aff., Ex. 14 (Twite Dec. 14, 2017 Dep. Tr. Excerpt 15:17–16:6). DHS also requires that certain information must be found in an individual's file, such as preferred living environment or preferred work activities, but permits that information to be kept in any of the following types of documents: the person's support plan, CSSP addendum, CL tool, MnCHOICES assessment report, a separate person-centered plan, case notes, or other lead agency generated documents. (Doc.127-1, at 4.)

DHS also requires that transition summary and follow-up items be located in an individual's file where a transition occurred. (*Id.* at 8.) The necessary transition information may be in the form of the "My Move Plan Summary," or located in different types of documents, including other lead agency generated documents, depending on when the person's transition occurred. (*See id.*) In sum, the documents requested in Revised Document Request No. 43 are either documents that DHS expressly requires to be in an individual's file or documents that will likely contain the information that DHS requires to be documented in an individual's file. Defendant has clear possession, custody and control over these documents.

Other courts have recognized that state Medicaid agencies must produce documents that they have a legal right to control.  In another Medicaid rights case, defendants refused to produce information held by third-party private agencies hired to administer part of the

Massachusetts' Medicaid program. *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 118 (D. Mass. 2003). The state officials argued that they did not have possession, custody, or control over the data held by third-party agencies, but the court disagreed. *Id.* The court reasoned that because defendants had the right to control and obtain information about clients in the Medicaid program from these agencies, defendant had to produce discoverable documents that were in the agencies' possession. *Id.* at 118–19. Here, lead agencies are more than third-party private companies, like the agencies at issue in *Rosie D.* Rather, they are statutorily required to carry out the directives of Defendant in relation to the statewide disability waiver program. S*ee* Minn. Stat. § 256B.04. Like the contracts at issue in *Roise D.*, the provider agreement between DHS and the lead agency make clear that Defendant has the legal right to obtain the documents that Plaintiffs have requested. Accordingly, because Defendant has ultimate authority and responsibility for the waiver system, documents possessed by its statutorily mandated agents—lead agencies—in fulfilling that responsibility are, *a fortiori*, within Defendant's possession, custody, or control.

It is illogical for Defendant to argue that she does not have possession, custody, control over documents that she *requires* lead agencies to generate and maintain for individual waiver recipients, and that she has a legal right to possess.  For these reasons and those argued in prior pleadings,[8] this Court should order Defendant to produce

---

[8] Plaintiffs incorporate by reference their previous arguments made in prior discovery motions. (*See* Doc. 68, at 14–20; Doc. 91, at 2–4; 6–7; Doc. 122, at 4–7.)

documents held by lead agencies that are responsive to this narrow and extremely relevant request.

### 2.    *Defendant must produce all documents that are responsive to subsection (a).*

The documents requested in Revised Document Request No. 43 subsection (a) are specifically requested, relevant, not unduly burdensome, and proportional to the needs of this case. First, subsection (a), which requests documents for individuals who have provided the specified responses to particular questions in the MnCHOICES assessment as identified by responding to Document Request Nos. 35 (Revised) and 44, is specific and the plain intent of the request is clear. Revised Document Requests No. 35 and 44 request MnCHOICES assessments for individuals who have either expressed dissatisfaction with living in corporate foster care and/or have expressed a desire to move out of corporate foster care.[9] On March 23, 2018, Defendant agreed to produce MnCHOICES assessments responsive to these two requests.

---

[9] Revised Document Request No. 35 (which was narrowed based on Defendant's alleged burden in responding) and Document Request No. 44 are as follows:

> **REVISED DOCUMENT REQUEST NO. 35:** Provide the complete MnCHOICES assessment for Waiver recipients residing in corporate foster care facilities where the following answers were provided to any of these questions, which are part of the Housing and Environment Domain portion of the assessment (see Exhibit 6):
>
> d.    The assessor checked either "Yes – would like to begin process for finding an alternative living environment and needs assistance," "Yes – would like to begin process for finding an alternative living environment," or "Yes willing to learn more about options or process before they decide about moving.";

22

Nevertheless, Defendant argues that she does not have to provide responsive documents to Revised Document Request No. 43 subsection (a) because Document Request Nos. 35 (Revised) and 44 do not require Defendant to identify anyone. Defendant's reading of subsection (a) ignores common sense and defies the spirit of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Document Request Nos. 35 (Revised) and 44 both request the complete MnCHOICES assessments for individuals who have provided the designated answers to the specific questions listed in those requests. Defendant will inevitably identify individuals when she provides these responsive

---

 h. The assessor checked that either "Yes – relocation goal with assistance is in current plan," Yes – relocation goal with assistance is in current plan and alternative supports are needed to address concerns/barriers," "Yes – relocation goal with assistance is needed/preferred," or "Yes – relocation goal without assistance is preferred";

 i. The person responded "(1) dissatisfied" in response to the topic – "Access to community activities they prefer";

 j. The person responded "(1) dissatisfied" in response to the topic – "Meeting their personal needs and preferences"; and

 k. The person responded "(1) dissatisfied" in response to the topic – "Supporting the level of social engagement they prefer."

**DOCUMENT REQUEST NO. 44**: Provide all MnCHOICES assessments for waiver recipients residing in corporate foster care facilities who answered no to the MnCHOICES question "Do you like where you live?" and/or yes to the MnCHOICES question, "Would you prefer to live somewhere else?" These questions are located in the Quality of Life Assessment Domain of the MnCHOICES Assessment. (See Exhibit 7.)

documents. The plain language of subsection (a) is clear, yet Defendant insists on an erroneous hyper-technical reading of the request as a means of stonewalling Plaintiffs' attempts to gather relevant evidence.

Second, Revised Document Request No. 43(a) is a narrowly tailored request designed to gather relevant individual-level case documents for specific individuals that have indicated they are not satisfied with living in corporate foster care facilities and are interested in moving out. These individuals are likely members of the Plaintiffs' class. The case documents for these individuals will contain information that goes directly to each of Plaintiffs' claims and requested relief. *See* discussion *supra* Part III.A.2. For example, if an individual indicates that she would like to begin the process for finding an alternative living environment in her MnCHOICES assessment, the individual-level case documents will show what was done, if anything, in response to that request. This information goes directly to Defendant's failure to provide services to an individual with reasonable promptness and failure to provide Due Process. (*See* Doc. 33, Pls.' Am. Compl. ¶¶ 102–117.) The individual-level case documents for residents of corporate foster care facilities who responded that they did not like where they live or were dissatisfied with their access to community activities or social engagement support Plaintiffs' assertions regarding the segregating nature of corporate foster care facilities. (*See* Doc. 33, Pls.' Am. Compl. at ¶¶ 68–79.) Moreover, to the extent the individual-level case documents show that a person's request to begin finding an alternative living environment was promptly addressed and the individual ultimately transitioned to an alternative to corporate foster care, that information

is still relevant to Plaintiffs' theories of liability and scope of possible relief. *See* discussion *infra* Part III.A.2.

Third, Defendant has failed to carry her burden in demonstrating that it would be unduly burdensome to produce the requested documents. Defendant's boilerplate burdensome objection is insufficient to carry her burden (*see* Doc. 78, Aug. 21, 2017 Order, at 18), and her particularized burdensome analysis does not expressly address subsection (a).[10] Defendant's particularized burden analysis is limited to the documents that Defendant concedes are within her possession—MnCHOICES assessments, Consumer Support Plans, Community Services and Support Plans, and miscellaneous documents in Defendant's SSIS database. Even if this Court finds that Defendant has adequately asserted a burdensome objection, which she has not, any burden is proportional to the needs of the case and outweighed by the importance of the documents requested. Further, Defendant's burden analysis overlooks the fact that instead of searching Defendant's databases, Defendant may also gather the requested documents for the specified individuals directly from lead agencies. Accordingly, this Court should order Defendant to produce all documents responsive to subsection (a).

### 3.    *Defendant must produce all documents responsive to subsection (e).*

The request in subsection (e) is not unduly burdensome, and it is proportional to the needs of the case, specific, and relevant. Defendant has agreed to produce the Consumer

---

[10] Defendant has not yet produced documents in response to Document Requests Nos. 35 (Revised) and 44, nor has she indicated how many individuals were identified by searching for the specific queries in Document Request Nos. 35 (Revised) and 44.

Support Plans and Community Services and Support Plans for the 42 individuals as requested in subsection (e). However, Defendant impermissibly refuses to produce the documents for these 42 individuals that are held by lead agencies, as well as the miscellaneous notes and documents that are in the SSIS database, which Defendant concedes are within her possession. Defendant's basis for not producing the miscellaneous notes and documents from the SSIS database for these individuals is grounded in Defendant's undue burden objection. Defendant alleges that it would take 10–120 minutes to pull this information per individual; in other words, it would take from seven hours to eighty-four hours to pull this information. Given it could possibly take as little as seven hours to pull the requested documents, Defendant cannot credibly assert that producing the notes and documents from the SSIS database would be unduly burdensome. Additionally, Defendant's burdensome analysis, again overlooks the fact that Defendant can produce the requested documents for all subsections of Revised Document Request No. 43 by gathering the requested documents for the specified individuals directly from lead agencies.

The request in subsection (e) is specific and, thus, not overly broad; Defendant has already identified the 42 individuals who have expressed a desire to move, and Plaintiffs seek specific documents about those individuals. Furthermore, this request is relevant to Plaintiffs' claims and requested relief as these 42 individuals were identified by Defendant as wanting to move out of corporate foster care facilities to alternatives. *See* discussion *supra* Part III.A.2. Accordingly, this Court should order Defendant to produce all documents responsive to subsection (e).

### 4. *Defendant must produce all documents responsive to subsection (f).*

The documents requested in subsection (f) are specifically requested, relevant, not unduly burdensome, and proportional to the needs of this case. Defendant's main grounds for not producing documents responsive to subsection (f), which requests documents for individuals identified as wanting to move out of corporate foster care facilities through the DHS Local Planning Grants, is that Defendant does not have the identities of the individuals who want to move. However, as explained above, this information is reasonably available to Defendant. *See* discussion *supra* Part III.A. For the same reasons, that the identity of these individuals is relevant to the needs of the case, so are their individual-level case documents that are requested in Revised Document Request No. 43. *See id.*

Again, Defendant does not provide a specific burden or proportionality argument to subsection (f), only the boilerplate conclusory objections which are not sufficient to carry Defendant's burden. (*See* Doc. 78, Aug. 21, 2017 Order, at 18.) Further, any alleged burden is outweighed by the fundamental importance of the issues this case—ending the unjustified isolation and unnecessary segregation of Plaintiffs by remedying Defendant's systemic violations of the law—and relevance of the requested documents. Accordingly, this Court should order Defendant to produce all documents responsive to subsection (f).

C.    **Defendant has Failed to Properly and Adequately Raise the Deliberative Process Privilege, and, to the Extent Defendant has Sufficiently Raised the Deliberative Process Privilege the Balancing of Factors Weigh in Favor of Disclosure.**

Defendant has failed to properly invoke the deliberative process privilege and sufficiently establish its application.[11] As a result, this Court should order that Defendant produce the withheld documents and portions of documents. However, even if this Court finds that Defendant has properly established the deliberative process privilege's application, the evidentiary need greatly outweighs any harm of disclosure, and the documents and portions of documents must be disclosed to Plaintiffs.

"It is universally recognized that the deliberative process privilege is qualified and not absolute[.]" *Williams v. City of Boston*, 213 F.R.D. 99, 100 (D. Mass. 2003); *see also Xcel Energy, Inc. v. United States*, 237 F.R.D. 416, 420 (D. Minn. 2006) ("Of course, the deliberative process privilege is qualified, and not absolute."). Courts engage in a two-step analysis when evaluating claims that documents or testimony are subject to the deliberative process privilege. First, the court must find that the government has met its burden in establishing that the deliberative process privilege applies to the requested information. *Confidential Informant 59-05071 v. United States*, 108 Fed. Cl. 121, 131 (2012); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995). Second, once

---

[11] Defendant's logs also contain multiple entries where Defendant asserts the attorney-client privilege but fails to provide what attorney—if any—is involved in a communication. Defendant has indicated that she will review the entries that Plaintiffs identified as containing these deficiencies and will respond as appropriate. Accordingly, Plaintiffs are not including this issue in their motion to compel at this time.

28

the government makes a *prima facie* case that the privilege applies, the court must then balance the competing interests of the parties to determine whether the evidentiary need outweighs the harm that may result from disclosure. *Confidential Informant 59-05071*, 108 Fed. Cl. at 132; *Redland Soccer Club*, 55 F.3d at 854; *see also Xcel Energy, Inc.*, 237 F.R.D. at 420.

### 1.    *Defendant has failed to properly invoke the deliberative process privilege and establish its application.*

Defendant has not met her burden as the moving party because she has failed to satisfy both the procedural and substantive requirements to establish that the deliberative process privilege applies.  Procedurally, the moving party must do the following to invoke the deliberative process privilege: (1) the privilege must be formally invoked by the department head, or a delegate, who has authority over the information at issue and has reviewed the specific information over which the privilege is being asserted; (2) the department head or delegate must state with particularity the information that is subject to the privilege; and (3) and the department head or delegate must provide specific reasons for keeping the information confidential. *Confidential Informant 59-05071*, 108 Fed. Cl. at 13; *Illinois League of Advocates for the Developmentally, Disabled v. Quinn*, No. 13-cv-1300, 2013 WL 4734007, at *3 (N.D. Ill. Sept. 3, 2013) (hereinafter, *Illinois League*); *Unknown Parties v. Johnson*, No. 15-cv-00250, 2016 WL 8199308, at *3–4 (D. Ariz. July 21, 2016).  This invocation is usually done by affidavit or declaration by the department head or delegate. *Confidential Informant 59-05071*, 108 Fed. Cl. at 131; *Illinois League*, 2013 WL 4734007, at *3; *see also Missouri Coal. for Env't Found. v. U.S. Army Corps of*

*Engineers*, 542 F.3d 1204, 1210 (8th Cir. 2008) (noting that an agency carries its burden by providing affidavits to explain why documents are subject to an exemption in evaluating the claim of deliberative process privilege claim in response to a Freedom of Information Act (FOIA) request) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1387 (8th Cir.1985)); *Nielsen v. U.S. Bureau of Land Mgmt.*, 252 F.R.D. 499, 517 (D. Minn. 2008) ("An agency may meet its burden by submitting affidavits and other evidence to the court to show that the documents are properly classified and thus clearly exempt from disclosure.") (internal quotation marks and citations omitted).

Substantively, the moving party must show that the information it seeks to withhold is "both predecisional and deliberative." *Xcel Energy, Inc.,* 237 F.R.D. at 420 (quoting *State of Mo. ex rel. Shorr v. U.S. Army Corps of Engineers*, 147 F.3d 708, 710 (8th Cir. 1998)); *Illinois League*, 2013 WL 4734007, at *4 ("deliberative in the sense that it is actually related to the process by which policies are formulated."); *Confidential Informant 5905071*, 108 Fed. Cl. at 131 (explaining the deliberative element as documents that "contain decisional information, meaning that they make[ ] recommendations or express[ ] opinions on legal or policy matters.") (internal quotation marks and citations omitted).

### a.    Defendant has failed to properly invoke the deliberative process privilege.

Defendant has not provided an affidavit or declaration from the department head or appropriate delegate that invokes the deliberative process privilege. An assertion by Defendant's counsel through the privilege and redaction logs that the deliberative process privilege applies is not sufficient on its own.  *See Kaufman v. City of New York*, No. 98-

cv-2648, 1999 WL 239698, at *3 (S.D.N.Y. Apr. 22, 1999) ("The governmental deliberative process privilege may not be asserted by government counsel."); *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (noting that "it has been suggested that it is inappropriate for the privilege to be invoked by attorneys instead of by the department head."). While a privilege log may be used to assist the moving party in avoiding *in camera* review of the documents at issue, it is not a substitute for the affidavit or declaration from the department head or appropriate delegate. *See City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 CIV. 9173, 2017 WL 4155410, at *6 (S.D.N.Y. Sept. 19, 2017) (holding that while a privilege log or index may allow a moving party to avoid *in camera* review, it does not relieve the moving party of its obligation to submit an affidavit to assert the deliberative process privilege).

The United States Court of Federal Claims provides the following persuasive rationale for not allowing government counsel's assertion of the deliberative process privilege to stand on its own:

> The rationale for requiring an agency head or official to whom authority has been carefully delegated, rather than government counsel, to "invoke[ ] the privilege during an exhaustive examination of the voluminous documents at issue," *Marriott*, 437 F.3d at 1304, is to allow those "official[s] with expertise in the nature of the privilege claim and documents at issue," *id.* at 1307, to determine whether the public interest in confidentiality outweighs the public interest in disclosure. Indeed, the purpose of the deliberative process privilege "is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government," *Klamath*, 532 U.S. at 8-9, (quoting *Sears, Roebuck*, 421 U.S. at 151), not to further the litigation strategy of counsel who apparently, as in this case, decide when it will be asserted.

*Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 144, *modified on reconsideration* 71 Fed. Cl. 205 (2006) (on reconsideration the court expressly declined to reconsider this portion of its original decision).

Defendant has failed to carry her burden in making a *prima facie* case that the withheld documents and portions of documents are subject to the deliberative process privilege by failing to follow the proper procedures necessary to invoke the privilege. Accordingly, this Court should order Defendant to produce all documents and portions of documents that she has withheld on the basis of the deliberative process privilege

> **b.    Defendant's privilege and redaction logs fail to provide adequate descriptive and evidentiary support for her assertion of the deliberative process privilege.**

Even if this Court finds that the privilege and redaction logs on their own are sufficient for Defendant to properly invoke the deliberative process privilege, Defendant must still provide clear reasons why that information should remain confidential and explain the specific information that is subject to the privilege. Defendant's privilege and redaction logs completely fail to provide any reasons why the documents and portions of documents withheld, even if predecisional and deliberative, should remain confidential. *See* Chapman Aff., Ex. 15–17 (Defendant's privilege and redaction logs). Defendant "must provide 'precise and certain' reasons for preserving the confidentiality of designated material." *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000) (quoting *Mobil Oil Corp. v. Dept. of Energy*, 520 F. Supp. 414, 416 (N.D.N.Y. 1981)). Defendant's failure to include why the documents and portions of documents

withheld should remain confidential makes her logs deficient and this Court should order Defendant to produce the withheld documents and portions of documents.

Further, in addition to failing to include any reasons why the document and portions of documents withheld should remain confidential, Defendant's log entries fail to describe the information that is subject to privilege with sufficient particularity to evaluate whether the information qualifies as both predecisional and deliberative. For example, one entry in Defendant's redaction log lists a document as a chart and describes the document as "Policy topic areas." Chapman Aff., Ex. 17, at 3 (DHSGOR00331391–31397). It is unclear what this chart contains, what policy or policies are referenced in the chart, or whether this chart was used as part of the deliberative process. Another log entry lists the document type as chart, provides no author, and describes the document as "potential approaches regarding persons with disabilities obtaining and maintaining stable housing that supports quality of life." *See* Chapman Aff., Ex. 17, at 9 (DHSGOR0163083–0163087). The lack of information regarding the author of the document, recipient of the document, and for what purpose this document was used prevents an assessment of whether this document was properly withheld under the deliberative process privilege. Further, to the extent this document was provided to persons outside of DHS, the document may no longer be subject to the deliberative process privilege. *See Nielsen*, 252 F.R.D. at 519 (discussing that an agency's assertion of deliberative process privilege may be less credible or waived if that information has already been disclosed to a third party).

Another example is a log entry that describes a chart as "Draft for website regarding Olmstead Plan." Chapman Aff., Ex. 17, at 6 (Document DHSGOR0031565). Defendant fails to provide any detail about what information is included in this chart, or any additional information that could be used to assess whether this chart is predecisional and deliberative. Additionally, there is a log entry where the document is described as "Identification of known 'other residential' settings that may have the effect of isolating." Chapman Aff., Ex. 17, at 23 (Document DHSGOR0163791).[12] This entry corresponds with a portion of a redacted document. The document itself does not provide any additional context as to what purpose this document served and how the author's factual observations about residential settings could conceivably qualify as predecisional and deliberative. By failing to provide essential information, Defendant has shielded her decision to withhold documents under the deliberative process privilege from review.

Defendant has failed to carry her burden in making a *prima facie* case that the withheld documents and portions of documents are subject to the deliberative process privilege by failing to provide the requisite information necessary to assert the privilege. Accordingly, this Court should order Defendant to produce the withheld documents and portions of documents.

---

[12] Document DHSGOR0163791 has two entries on the log for what appears to be the same redaction, but with slightly different descriptions. However, neither description provides sufficient information.

2.      *The balancing of factors weighs in favor of disclosure.*

This Court does not need to reach the second step of the analysis—the balancing of factors—because Defendant has failed to make a *prima facie* case that the deliberative process privilege applies to the documents and portions of documents withheld. However, even if this Court finds the second step of the analysis is necessary, the evidentiary need of the documents and portions of documents withheld greatly outweighs any harm of disclosure.

"After the government has shown that both the procedural and substantive requirements of the deliberative process privilege have been met, the court must balance the competing interests of the parties to determine whether the plaintiff has overcome the privilege by a showing of compelling need." *Confidential Informant 59-05071*, 108 Fed. Cl. at 132.  In balancing the parties' competing interests, courts consider the following factors: the relevance of the evidence; the availability of other evidence; the government's role in the litigation; and the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *In re Prempro Products Liability Litigation*, No. 403-cv-1507, 2006 WL 751299, at *2 (E.D. Ark. Mar. 20, 2006). These factors clearly weigh in favor of disclosure of the withheld documents.

While Defendant's failure to provide adequate descriptions makes it difficult to ascertain the precise nature of the documents being withheld, these documents appear to relate to Plaintiffs' claims and requested relief. *See Murphy v. Kmart Corp.*, 255 F.R.D. 497, 501 (D.S.D. 2009) ("Relevancy is to be broadly construed for discovery issues and is

not limited to the precise issues set out in the pleadings. Relevancy…encompass[es] any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (internal quotation marks and citations omitted). For example, DHSGOR0163791 is a chart that is described as "Identification of known 'other residential' settings that may have the effect of isolating." Chapman Aff., Ex. 17, at 23. This chart may very well include corporate foster care facilities or similar residential settings as "other residential" settings that may have the effect of isolating persons. Such information would be vital to Plaintiffs' integration mandate claims. In addition, DHSGOR0031512–31514 is described as "Draft and edits to 'Requirements for a person's own home' for website," which seems to be relevant to Plaintiffs' claims regarding transition to and living in alternatives to corporate foster care facilities. Chapman Aff., Ex. 17, at 4. Or, DHSGOR0031733–31736, which is a "Draft regarding elements of a PCP/transition plan," which goes towards Plaintiffs' requested relief, which includes providing person-centered transition plans to individuals who want to move out of corporate foster care facilities. Chapman Aff., Ex. 17, at 7.

Second, the documents and information contained therein are not otherwise available to Plaintiffs. Defendant has the "ultimate authority and responsibility for the State's Disability Waivers," (Doc. No. 99, Class Cert. Order, at 19), and is legally responsible for development and implementation of Waiver program policies. The aim of Plaintiffs' discovery requests is to gather information about what DHS has (and has not) done to make the system more responsive when people want alternatives to corporate foster

care and how such efforts actually function. The same is true for discovery requests aimed at reasonably prompt services and due process protections. Defendant is the one with access to the relevant documents that contain such information. *See Illinois League*, 2013 WL 4734007, at *7 (in finding that the unavailability of the information from other sources weighed in favor of disclosure, the court noted that "[e]ven if Defendants provided some information from this category, nothing is as likely to reveal their underlying intent as their own internal discussions on this most critical topic.").

Third, the government's role in the litigation weighs in favor of disclosure. In *Illinois League*, plaintiffs sought a preliminary injunction preventing the closure of a residential center for persons with developmental disabilities. 2013 WL 4734007, at *1. During discovery, the government defendants raised the deliberative process privilege. *Id.* In finding that the third factor weighed in favor of disclosure, the court noted that "[t]he government is not only a defendant and the pertinent decisionmaker in this case, it is also the provider of the essential public services at the heart of the dispute." *Id.* at *7. Similarly, here, Defendant's agency is the pertinent decisionmaker and also funds the public services that are at issue.

Finally, disclosure of the requested information would not hinder frank and independent discussion regarding contemplated policies and decisions. Because DHS is constantly looking for input about Waiver services and publicly declaring its support for informed choice in the system, it is difficult to imagine how revealing any of this information to the public would chill deliberations on pending or future policies. (*See* Doc.

37

No. 74-2, *DHS Person-Centered, Informed Choice and Transition Protocol* (January 2017), at 4–6 (discussing the purpose of the Protocol).) *See Illinois League*, 2013 WL 4734007, at *7 (holding that this factor weighed in favor of disclosure and noting that "we do not expect any initial chill spread by disclosure to deter Defendants from engaging in thorough, honest deliberations on future policies and decisions.").

Not only do the balancing of these factors weigh in favor of disclosure, but the deliberative process privilege is not applicable where the decision-making process itself is the subject of the litigation. *See Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) (finding that the deliberative process privilege did not bar disclosure of information related to the process for requiring employees to submit to drug tests where that process was the subject of the litigation); *accord Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, No. 5:12-cv-00114, 2014 WL 1908818, at *2 (E.D. Ky. May 13, 2014) (citing *Burka* with approval); *Brock v. Weiser*, No. 86-cv-2129, 1987 WL 12686, at *3 (N.D. Ill. June 15, 1987) (concluding that where the department's decision-making process had become an issue in the case, the deliberative process privilege could not be raised as a bar to discovery).

Therefore, even if this Court finds that Defendant properly asserted the deliberative process privilege and sufficiently established its application to make a *prima facie* case that the documents and portions of documents in the privilege and redaction logs were properly withheld under the privilege, the balancing of factors weighs strongly in favor of

disclosure. This Court should order that Defendant produce all documents or portions of documents that have been withheld under the deliberative process privilege.

**D.    Defendant's Failure to Identify Individual Custodians for a Large Portion of Documents Produced Demonstrates that Defendant has Failed to Produce Documents as They are Kept in the Usual Course of Business.**

Federal Rule of Civil of Procedure 34(b)(2)(E)(i) sets forth that "a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."   "[T]he producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought under Rule 34." *Farmers Ins. Exch. v. West*, No. CV 11-2297 (PAM/JJK), 2012 WL 12894845, at *11 (D. Minn. Sept. 21, 2012) (citing 8B James A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2213 (3d ed. 2010)). "The purpose and spirit of the Rule permitting a party to select between the two alternatives provided is to prevent a party from making documents responsive to requests difficult to find." *Id.*

With a few exceptions,[13] Defendant has not organized and labeled documents to correspond to the categories of Plaintiffs' document requests. Nor has Defendant identified an individual custodian or author for approximately 21,384 of the 38,500 documents produced.  Rather, 21,334 of these documents simply identify "Minnesota Department of

---

[13] Plaintiffs recognize that Defendant has provided identifying Bates numbers for some of the later-produced documents that are responsive to Plaintiffs' Document Requests No. 31, 36, 39, 41, 42, 43.  Plaintiffs' motion to compel does not apply to these specific documents that have already been identified by Bates number.

Human Services" as the custodian, while 42 of the documents identify "MnCHOICES" as the custodian.

The question for the Court is whether Defendant has produced these 38,500 documents "as they are kept in the usual course of business." Under Rule 34's "usual course of business" requirement, "documents should be produced, organized and labeled and, if appropriate, indexed just as they are maintained by the producing party." *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 336 (N.D.N.Y. 2008). The producing party "bears the burden of showing that the documents were in fact produced in" the ordinary course of business, and a "mere assertion that they were so produced is not sufficient to carry that burden." *Cardenas v. Dorel Juvenile Grp., Inc.,* 230 F.R.D. 611, 618 (D. Kan. 2005). "Courts have recognized that organizing a production to reflect how the information is kept 'in the usual course of business' may require the producing party to include different identifying information according to the type of document or file produced." *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011). To comply with Rule 34's "usual course of business" requirement, a producing party must provide "any index identifying the categories of documents produced, where they were maintained or who maintained them, whether documents within a category come from multiple sources or files, or other information that shows what [the producing party's] usual course of business is." *Farmers Ins. Exch.*, 2012 WL 12894845, at *11 (citing *GP Indus., LLC v. Bachman*, No. 8:06CV50, 2008 WL 1733606, at *2–*3 (D. Neb. Apr. 10, 2008)).

In this instance, Defendant has not produced documents as they are kept in the usual course of business. Defendant has not provided any type of organization or indexing in her document production. Rather, Defendant has provided large batches of documents that Plaintiffs are required to sort through, without any proper indexing or identifying information. Defendant's method of document production does not allow Plaintiffs "to reasonably determine what documents are responsive to its requests," and thus does not comply with Rule 34(b)(2)(E)(i)." *See City of Colton*, 277 F.R.D. at 585. To remedy these deficiencies, Defendant must either provide information that shows what her usual course of business is, including who maintained the documents, or she must indicate a Bates range where documents responsive to each request will be located.

## IV.    CONCLUSION

Plaintiffs respectfully request this Court grant their Motion to Compel Discovery regarding the issues raised above.

**MID-MINNESOTA LEGAL AID**
**MINNESOTA DISABILITY**
**LAW CENTER**

Dated:  March 23, 2018

By:  */s/Justin H. Perl*
    Justin H. Perl (#151397)
    Steven Schmidt (#0392442)
    Christen Chapman (#0398974)
    430 First Avenue North, Suite 300
    Minneapolis, MN 55401
    Phone and Fax:  (612) 746-3759
    jperl@mylegalaid.org
    sschmidt@mylegalaid.org
    cchapman@mylegalaid.org

41

**ANTHONY OSTLUND**
**BAER & LOUWAGIE P.A.**

Dated:  March 23, 2018                By: _/s/Steven M. Pincus_____
                                             Joseph W. Anthony (#0002872)
                                             Steven M. Pincus (#0171414)
                                             Peter J. McElligott (#0397578)
                                             90 South Seventh Street, Suite 3600
                                             Minneapolis, MN 55402
                                             Telephone:  (612) 349-6969
                                             janthony@anthonyostlund.com
                                             spincus@anthonyostlund.com
                                             pmcelligott@anthonyostlund.com

                                       **ATTORNEYS FOR PLAINTIFFS**