# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Tenner Murphy, by his guardians
Kay and Richard Murphy; Marrie
Bottelson; Dionne Swanson; and
on behalf of others similarly situated,

Civil No. 16-2623 (DWF/BRT)

Plaintiffs,

v.

**MEMORANDUM
OPINION AND ORDER**

Emily Johnson Piper in her Capacity
as Commissioner of the Minnesota
Department of Human Services,

Defendant.

---

Joseph W. Anthony, Esq., Peter McElligott, Esq., and Steven M. Pincus, Esq., Anthony Ostlund Baer & Louwagie PA; Justin H. Perl, Esq., Mid-Minnesota Legal Aid; and Christen Leigh Chapman, Esq., and Steven C. Schmidt, Esq., Mid-Minnesota Legal Aid, Minnesota Disability Law Center, counsel for Plaintiffs.

Janine Wetzel Kimble, Scott H. Ikeda, and Aaron Winter, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Defendant.

Pari I. McGarraugh, Esq., and Samuel D. Orbovich, Esq., Fredrikson & Byron, P.A., counsel for Movant ARRM.

---

## INTRODUCTION

This matter is before the Court upon ARRM's motion to intervene pursuant to Federal Rule of Civil Procedure 24(a) or 24(b) or, in the alternative, for leave to serve as amicus curiae.  (Doc. No. 138.)  Defendant opposes intervention.  (Doc. No. 156.)

Plaintiffs support intervention.  (Doc. No. 157.)  For the reasons set forth below, the Court grants ARRM leave to serve as amicus curiae and denies intervention.

## BACKGROUND

The background of this case is fully detailed in the Court's May 18, 2017 Memorandum Opinion and Order, (Doc. No. 54), and the Court only briefly summarizes the pertinent facts here.  For a more complete summary of Plaintiffs' Amended Class Action Complaint and the law underlying Plaintiffs' claims, the Court directs readers to its prior order and otherwise incorporates the relevant background here.  *See Murphy ex rel. Murphy v. Minn. Dep't of Human Servs.*, 260 F. Supp. 3d 1084 (D. Minn. 2017).

## I.      Plaintiffs' Claims and Requested Relief

The Plaintiffs in this case are individuals with disabilities who reside in Community Residential Setting ("CRS") facilities—also known as group homes or corporate adult foster care—and who receive Home and Community Based Disability Waivers ("Disability Waivers") through the State of Minnesota's Medicaid program.  The Defendant, Emily Johnson Piper, Commissioner of the Minnesota Department of Human Services ("DHS") is responsible for overseeing Minnesota's Disability Waiver services system under a federally-approved Medicaid State Plan.  Disability Waivers enable individuals with disabilities to access a variety of services that permit them to reside in the community in lieu of an institutional setting.  This case centers on Plaintiffs' desire to access individualized housing services available under the Disability Waivers that would allow them to reside in more integrated residential settings.

Plaintiffs allege that Defendant operates the Disability Waiver services system in a manner that fails to ensure the reasonably prompt provision of individualized housing services.  Plaintiffs also contend that Defendant fails to provide adequate notice about available individualized housing services or the denial of such services.  According to Plaintiffs, Defendant's overreliance on CRS facilities, mismanagement of the State's Disability Waivers, and improper delegation of discretion to local lead agencies has resulted in Plaintiffs' segregation from their communities in residential settings that are not the most integrated settings appropriate to their needs.  Based on this alleged conduct, Plaintiffs assert claims against Defendant under the Medicaid Act, the Due Process Clause, Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("RA").  (*See generally* Doc. No. 33 ("Am. Compl.").)

Plaintiffs seek declaratory relief as well as preliminary and permanent injunctions obligating Defendants to:  (1) "[p]romptly ensure every Disability Waiver recipient living in a CRS facility receives notice about eligibility for and access to individualized housing services, including person-centered planning"; (2) "[s]pecifically provide access and take prompt steps to make individualized housing services, including person-centered planning, available to Plaintiffs in a reasonable amount of time . . ."; and (3) "[t]ake such other steps as necessary to enable Plaintiffs to receive residential services in the most integrated setting appropriate to their needs . . . ."  (*Id.* at Prayer for Relief ¶ 4.)

Corresponding to items (2) and (3), Plaintiffs detail the relief they seek to modify the state's residential service system.  (*Id.* ¶¶ 4(b)-4(c).)  Under item (2), Plaintiffs seek:

> Access to person-centered planning services that ensure an individual receives a comprehensive personal transition plan with enforceable timelines, identifiable tasks, persons responsible for such tasks, descriptions of the integrated housing options from which to choose, and any other information necessary to facilitate a transition and subsequent life in the most integrated setting.

(*Id.* ¶ 4(b)(i).)  They also seek "[a]ccess to services that ensure creation of and facilitate implementation of the comprehensive moving plan."  (*Id.* ¶ 4(b)(ii).)  Under item (3), Plaintiffs detail the relief they seek, "including, but not limited to" a list of multiple proposed modifications to the state's residential service system.  (*See id.* at ¶ 4(c).)

## II.    ARRM's Complaint in Intervention

On November 16, 2017, ARRM filed a Motion to Intervene or, in the Alternative, for Leave to Serve as Amicus Curiae ("Motion to Intervene").  (Doc. No. 138.)  ARRM also filed a Complaint in Intervention as an attachment to this motion.  (Doc. No. 138-1 ("Compl. Int.").)  ARRM seeks to intervene in this litigation based on its role as "a nonprofit association of more than 200 providers, businesses and interested stakeholders . . . dedicated to leading the advancement of Minnesota's home and community-based service programs that support people living with disabilities in their pursuit of meaningful lives."  (*Id.* ¶ 1.)  ARRM members provide services to Disability Waiver recipients throughout the state, both in CRS facilities and individualized housing settings.  (*See id.* ¶¶ 2-4.)  ARRM alleges that "[a]ny order or settlement in this action will impact both the scope and site of services that ARRM members will be allowed to provide to members of the Plaintiff Class."  (*Id.* ¶ 8.)

ARRM alleges that its members have protectable rights in the licenses granted to them by Defendant to provide Disability Waiver services, (*see id.* ¶ 12), protectable property and contract rights in the CRS facilities they own and operate as well as leases they have co-signed on behalf of individual Disability Waiver recipients residing in their own homes, (*see id.* ¶¶ 18, 54, 147-48, 152), and contract rights resulting from their employment relationships with the support professionals who provide direct services to Disability Waiver recipients, (*see id.* ¶¶ 13, 54).  According to ARRM, Defendant's administration of the Disability Waiver services system and delegation of uncoordinated discretion to county lead agencies unlawfully infringes these rights.  (*See id.* ¶¶ 36, 53-54, 152, 162, 180, 184-91, 193-96.)  ARRM also contends that its "members have the enforceable right to provide services to the Plaintiff Class in a manner and form that complies with the ADA and Section 504" and alleges that Defendant's conduct has inhibited its members from doing so.  (Doc. No. 140 at 15; *see also* Compl. Int. ¶¶ 197-203.)  ARRM seeks to assert three claims against Defendant:  (1) Denial of Equal Protection of Laws (Count I); (2) Violation of Due Process of Laws (Count II); (3) Violation of Title II of the ADA and Section 504 of the RA (Count III).  (Compl. Int. ¶¶ 85-203.)  ARRM's request for declaratory and injunctive relief includes specific measures aimed at remedying Defendant's alleged unlawful conduct with respect to the administration of the state's Disability Waiver services system.  (*See generally id.* at Prayer for Relief.)

Based on the Court's decision to certify the Plaintiff Class, ARRM contends that "[t]he statewide impact of this injunctive relief and declaratory judgment action is now

assured to impact the license and property rights of ARRM members." (Doc. No. 140 at 5.) Specifically, ARRM points to its allegations regarding Defendant's claimed authorization under Minn. Stat. § 245A.03 to reduce or eliminate the number of licensed beds in a CRS facility after an individual Disability Waiver recipient moves out of the home. (*See id.* at 6 (citing Compl. Int. ¶¶ 184, 190).) ARRM also suggests "that the same arbitrary and capricious conduct by county lead agencies" alleged by Plaintiffs has resulted in arbitrary and unlawful distinctions in the manner by which counties approve and bill for Disability Waiver services provided by ARRM members. (*See id.* (citing Compl. Int. ¶¶ 85-177).) In addition, ARRM describes "a serious and ongoing workforce crisis" that amplifies their alleged harms. (*See id.* at 6-7 (citing Compl. Int. ¶¶ 80-84, 121, 136, 139).) ARRM seeks to intervene in this litigation "to eliminate specific perverse incentives and inconsistent practices of county lead agencies, and instill greater uniformity by enjoining excessive and unnecessary county interference in what is supposed to be a statewide system." (*Id.* at 7.) ARRM suggests that the Court can order relief in this action to remedy both the service denials pled by the Plaintiff class and the infringement of its members' protectable rights.

## III.    Relevant Procedural History

Plaintiffs initiated this lawsuit on August 3, 2016. (Doc. No. 1.) The original Defendants, including Commissioner Johnson Piper and DHS, moved to dismiss Plaintiffs' complaint, and the parties submitted briefing on this motion. (Doc. Nos. 10, 12, 22, 24.) After the hearing on Defendants' motion, the parties stipulated to the filing of an amended complaint and agreed that Defendants' original Motion to Dismiss would

serve as the response to Plaintiffs' amended pleading.  (*See* Doc. Nos. 29, 31.)  On

February 23, 2017, Plaintiffs filed their First Amended Class Action Complaint and

Request for Injunctive Declaratory Relief.  (Doc. No. 33.)  On May 18, 2017, the Court

granted Defendants' Motion to Dismiss in part, dismissing DHS as a party and otherwise

denying the motion.  (*See* Doc. No. 54.)

On September 29, 2017, the Court granted Plaintiffs' Motion for Class

Certification, certifying the following class:  "All individuals age 18 and older who are

eligible for and have received a Disability Waiver, live in a licensed Community

Residential Setting, and have not been given the choice and opportunity to reside in the

most integrated residential setting appropriate to their needs."  (Doc. No. 99 at 35.)

As noted above, ARRM filed the pending Motion to Intervene on November 16,

2017.  (Doc. No. 138.)  Defendant opposes intervention and does not take a position on

ARRM's alternative request for leave to serve as amicus curiae.  (*See* Doc. No. 156.)

Plaintiffs support intervention, emphasizing the similarity between ARRM and Plaintiffs'

claims.  (*See* Doc. No. 157.)  While acknowledging that their interests are not entirely the

same, Plaintiffs explain that they "support intervention in this case because ARRM's

interests will not only be directly affected by the disposition of this case, but Plaintiffs

will also likely need ARRM's members to help implement any ultimate rulings of the

Court or agreements reached by the parties."  (*Id.* at 2.)  Plaintiffs contend that "[b]oth

Plaintiffs and ARRM seek changes that would require DHS to better centralize its

management of the Waiver system and properly oversee and direct lead agencies."  (*Id.*

at 5.)  In essence, Plaintiffs suggest that permitting intervention brings "the third major

stakeholder in the system" into this litigation, allowing the Court to "be fully informed of the various interests when it resolves the matter." (*See id.* at 5-6.) The Court considers the parties' arguments and the propriety of intervention, below.

## DISCUSSION

### I. Intervention Under Federal Rule of Civil Procedure 24

Federal Rule of Civil Procedure 24 provides two avenues for a movant to intervene in an ongoing case. Rule 24(a) governs intervention of right—also referred to as mandatory intervention—and provides the following:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007).[1] Rule 24(b), governing permissive intervention, gives the court discretion to permit intervention as follows: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).[2] The Eighth

---

[1]    Rule 24(a)(1) provides for intervention of right to anyone "who . . . is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). This provision is not at issue in the Court's consideration of the pending motion.

[2]    Other rules governing permissive intervention in Rule 24(b)(1)(A) and Rule 24(b)(2) are not material here.

Circuit requires that movants have standing in order to intervene in an action.[3] *United States v. Geranis*, 808 F.3d 723, 727 (8th Cir. 2015). "[I]n analyzing both Article III standing and Rule 24, the court should . . . focus[] on the [plaintiffs'] complaint and the allegations in [the movant's] motion to intervene." *See Nat'l Parks Conservation Ass'n v. U.S. EPA,* 759 F.3d 969, 973 (8th Cir. 2014). Courts in this Circuit construe Rule 24 "liberally" and "with all doubts resolved in favor of the proposed intervenor." *Id.* at 975 (quotation marks and citation omitted). Below, the Court considers the threshold issues of standing and timeliness before turning to an application of the particular Rule 24 requirements.

## II. Standing

Defendant argues that the Court should deny intervention because ARRM lacks the requisite Article III standing. "When a party opposes a motion to intervene on the basis of standing, the prospective intervenor must allege facts showing the familiar elements of Article III standing." *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011). This requires an intervenor to demonstrate "(1) injury, (2) causation, and (3) redressability." *Geranis*, 808 F.3d at 727 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The "injury in fact" element refers to "an

---

[3]     There appears to be some uncertainty over whether the Eighth Circuit requires intervenors to establish standing for both Rule 24(a) and Rule 24(b) intervention. Because it is not necessary to resolve this issue to dispose of the pending motion, the Court declines to do so and simply assumes standing is required for intervention under either provision. *See Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 266 (D. Minn. 2017) ("[A]lthough the Eighth Circuit has not explicitly required that parties intervening under Rule 24(b)(1)(B) establish Article III standing, most district courts in this circuit to have considered the matter have done so.").

invasion of a 'legally cognizable right.'" *Tarek ibn Ziyad Acad.*, 643 F.3d at 1092

(citation omitted). "[T]he injury must be 'concrete, particularized, and either actual or

imminent.'" *Geranis*, 808 F.3d at 727 (quoting *Curry v. Regents of the Univ. of Minn.*,

167 F.3d 420, 422 (8th Cir. 1999)). In addition, "the injury or threat of injury must be

both real and immediate, not conjectural or hypothetical." *FTC v. Johnson*, 800 F.3d

448, 451 (8th Cir. 2015) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 101-02 (1983)).

Threatened harms dependent upon multiple contingencies are unlikely to meet this

standard. *See id*; *see also Mo. Coal. for the Env't Found. v. Mccarthy*,

Civ. No. 2:16-cv-04069-NKL, 2016 WL 3566253, at *3-4 (W.D. Mo. June 27, 2016)

(finding no standing to intervene under Rule 24(a) where "a specific chain of events must

[have] occur[ed] for [the plaintiff's] desired relief to cause the Intervenors' claimed

injury"). However, allegations of certain injury if an existing party prevails establishes

an imminent injury to support intervention. *Tarek ibn Ziyad Acad.*, 643 F.3d at 1092-93;

*see also South Dakota v. Ubbelohde*, 330 F.3d 1014, 1024-25 (8th Cir. 2003) ("When we

consider the effect that an ultimate ruling for South Dakota might have, we think the

proposed intervenors presented sufficient evidence of a threatened injury to give them

standing."). A court should thus consider "[t]he link between [the] plaintiffs' requested

relief and the possibility of harm to [the movant]" to determine whether the threatened

harms are sufficiently direct to support standing. *See United States v. Metro. St. Louis

Sewer Dist.*, 569 F.3d 829, 836 (8th Cir. 2009). It is irrelevant whether the plaintiffs are

in fact legally entitled to prevail "unless their allegations and requests for relief . . . 'are

frivolous on their face.'" *See Nat'l Parks Conservation Ass'n*, 759 F.3d at 974 (quoting

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir.1999)).  At
this stage, the court "must construe the motion to intervene in favor of the prospective
intervenor, accepting all material allegations as true."  *Tarek ibn Ziyad Acad.*, 643 F.3d at
1092.

Here, ARRM asserts associational standing on behalf of its membership.  "Even in
the absence of injury to itself, an association may have standing solely as the
representative of its members."  *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  "The
association must allege that its members, or any one of them, are suffering immediate or
threatened injury as a result of the challenged action of the sort that would make out a
justiciable case had the members themselves brought suit."  *Id.*  For an organization to
establish standing to sue on behalf of its membership, it must establish that "(a) its
members would otherwise have standing to sue in their own right; (b) the interests it
seeks to protect are germane to the organization's purpose; and (c) neither the claim
asserted nor the relief requested requires the participation of individual members in the
lawsuit."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Typically, an organization seeking to establish standing on behalf of its
membership must demonstrate that one or more of its members have personally suffered
or will face harm through specific averments or proof.  *See Summers v. Earth Island Inst.*,
555 U.S. 488, 498-99 (2009); *cf. Franconia Minerals (US) LLC v. United States*, 319
F.R.D. 261, 267 (D. Minn. 2017) (finding that an organization had standing to intervene
where it had "submitted the declarations of several members" describing their claimed
injuries).  However, an organization need not identify a specific member who will suffer

harm "where *all* the members of the organization are affected by the challenged activity." *See Summers*, 555 U.S. at 498-99 (citing *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 459 (1958)); *see also Ouachita Watch League v. U.S. Forest Serv.*, 858 F.3d 539, 543-44 (8th Cir. 2017). Where the members' "status and interests are . . . diverse and the possibilities of conflict . . . obvious," the organization may not be "an appropriate vehicle to litigate the claims of its members." *See Associated Gen. Contractors of N.D. v. Otter Tail Power Co.*, 611 F.2d 684, 691 (8th Cir. 1979).

According to Defendant, ARRM has failed to demonstrate associational standing because "ARRM does not claim that all of its members have standing and did not submit an affidavit to establish that any identified individual member has standing." (Doc. No. 156 at 10.) According to Defendant, the sparse allegations in ARRM's Complaint in Intervention are inadequate. Defendant also emphasizes that ARRM is required to establish standing "based on the suit as it exists, not based on potential new claims that it would like to raise." (*Id.*) Given the distinct injuries alleged by Plaintiffs and ARRM members, Defendants argue, ARRM fails to establish standing on this basis. In addition, Defendant contends that ARRM's alleged injury resulting from the potential "systematic reduction or emptying of CRS facilities" is speculative. (*Id.* at 11.) Finally, Defendant suggests that conflicts of interest between ARRM's members should preclude organizational standing because some members only offer services in CRS facilities while others provide services to individuals residing in community homes.

ARRM contends it has standing to intervene. Citing the Complaint in Intervention, ARRM asserts that its "purpose is dedicated to leading the advancement of

Minnesota's home and community-based service programs that support people living with disabilities in their pursuit of meaningful lives." (Doc. No. 140 at 8 (citing Compl. Int. ¶¶ 1-6).) ARRM contends that "the outcome of this action will be statewide, and will directly impact the license and property rights of ARRM members, as well as their existing duty under Minn. Stat. § 245D.04, subd. 3(a)(4) to provide waiver services in the least restrictive manner that is appropriate for each waiver recipient." (*Id.* at 5-6.) ARRM argues that it has associational standing on behalf of its members because its "mission is directly related to the rights it seeks to enforce in this lawsuit," (*id.* at 8), and all of its "members have a stake in the pending litigation," (Doc. No. 162 at 4). In particular, ARRM notes that its members are all licensed to provide Disability Waiver services which are funded and authorized by DHS and Minnesota counties. ARRM asserts that its members must all comply with the ADA and the RA in delivering services and contends that its members "have an interest in ensuring that the Commissioner does not prevent ARRM members from fulfilling these federal responsibilities." (*Id.*) According to ARRM, any new claims raised in the Complaint in Intervention "spring from the Plaintiff Class's allegations concerning Defendant's failure to direct or guide lead agencies to provide services in the most integrated setting." (*Id.* at 5.) Finally, ARRM disputes that its injuries are speculative or that conflicts among ARRM members require participation of all members. ARRM argues that its "members would [all] benefit from the uniform administration of the waiver system across the state." (*Id.* at 7.)

After careful consideration, the Court concludes that ARRM lacks standing to intervene in this matter. Even assuming that ARRM has properly established

associational standing on behalf of its membership, ARRM has failed to identify an injury that is sufficiently concrete and immediate to support standing. Specifically, ARRM identifies the potential harm to its members' property and license rights if CRS facility beds are emptied, reduced, or ultimately closed. A review of Plaintiffs' Amended Class Action Complaint reveals that this result is not plainly sought by Plaintiffs. Construing the allegations in the Complaint in Intervention to be true, the Court acknowledges that ARRM's members' license and property rights may eventually be impacted if (1) Plaintiffs are successful in their claims, (2) changes to Defendant's service system results in Plaintiffs accessing individualized housing services, (3) Plaintiffs choose to move out of CRS facilities, and (4) Defendant eliminates CRS facility capacity consistent with DHS's alleged interpretation of Minn. Stat. § 245A.03. Such threatened harms dependent on a sequence of contingencies, however, are insufficient to support intervenor standing. *See id.* Simply put, ARRM "has not shown that the harm to it and its members would be the inevitable result of judgment in the Plaintiffs' favor." *See Pettet v. May*, Civ. No. 2:11-CV-04049-NKL, 2011 WL 3354089, at *2 (W.D. Mo. Aug. 3, 2011).

Although there is arguably a more direct connection between Plaintiffs' lawsuit and ARRM's alleged harms under the ADA and the Section 504 of the RA (Count III), the Court also finds that ARRM has failed to establish standing on this basis. ARRM analogizes its position to that of a school district which "joins in an action by students to sue a state to enjoin laws or actions that prevents the students from receiving, and the district from providing, services in a manner that comports with equal protection of the

14

laws." (Doc. No. 140 at 15 (citing *Cincinnati City Sch. Dist. v. State Bd. of Educ.*, 680 N.E.2d 1061, 1066 (Ohio App. 1996)).) ARRM alleges that "[a]s an express obligation of their licenses issued under Minnesota Statutes 245D, Defendant mandates that ARRM members must provide supports and services that are the least intrusive and most normalized, given the level of supervision and protection required for the person." (Compl. Int. ¶ 199.) Thus, ARRM contends that Defendant has delegated her federal obligations to ARRM members. (*Id.* ¶ 200.) ARRM further asserts "that its members hold indirect rights that require the Defendant to administer a fair and uniform waiver service system that enables, and does not frustrate, their ability, obligation and right to provide supports and services in the least intrusive setting." (*Id.* ¶ 203.)

Even if ARRM's members have such enforceable rights, however, ARRM has failed to establish how the resolution of Plaintiffs' lawsuit will result in "concrete, particularized, and . . . actual or imminent" injury to these rights. *Geranis*, 808 F.3d at 727 (citation omitted). ARRM alleges no facts to demonstrate concrete, particularized, or imminent harm to ARRM's membership relating to their alleged "enforceable right to provide services to the Plaintiff Class in a manner and form that complies with the ADA and Section 504." (Doc. No. 140 at 15.) In particular, ARRM has not alleged that its membership has been threatened with any legal claims under these provisions or that its members' license rights have been threatened by Defendant based on any alleged failure to provide services consistent with the ADA and the RA's requirements. Although the allegations in Count III of the Complaint in Intervention are certainly similar to the

claims raised by the Plaintiff Class, that alone is not enough to establish standing to

intervene.[4]   The Court concludes that ARRM lacks standing.

The Court alternatively concludes, below, that even though ARRM's motion was

filed in a timely manner, the Court would ultimately deny both mandatory and permissive

intervention under Rule 24(a) and (b).  Thus, even if ARRM properly had standing to

intervene, the Court would deny intervention in this case.

## III.    Timeliness of ARRM's Motion

Intervention under either Rule 24(a) or 24(b) must be timely.  *See Planned*

*Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011).

Timeliness is therefore a "threshold issue" to be determined by the court before

addressing the relevant considerations for mandatory or permissive intervention.  *See id.*

(citation omitted).  A court's timeliness determination should involve specific

consideration of the following factors:  "(1) the extent the litigation has progressed at the

time of the motion to intervene; (2) the prospective intervenor's knowledge of the

litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay

in seeking intervention may prejudice the existing parties."  *In re Wholesale Grocery*

*Prods. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017) (quoting *Tarek ibn Ziyad Acad.*,

643 F.3d at 1094).  Notwithstanding these enumerated factors, a court's timeliness

---

[4]       Furthermore, to the extent ARRM challenges Defendant's alleged failure to
ensure that Plaintiffs are provided services in the most integrated setting appropriate to
their needs under the integration mandates of the ADA and the RA, the Court concludes
that Plaintiffs adequately represent this interest, making intervention under Rule 24(a)
unwarranted in any case.

determination is discretionary and "based on all of the circumstances" at issue.  *Tarek ibn Ziyad Acad.*, 643 F.3d at 1094; *see also Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993) ("Whether a motion to intervene is timely is determined by considering all the circumstances of the case.  No ironclad rules govern this determination." (citation omitted)).

A party's delay in seeking to intervene may be excusable where the threatened harm to its interests was not apparent at an earlier stage of the litigation.  *See Linton ex rel. Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1313-18 (6th Cir. 1992).  Seeking to intervene in a putative class action prior to certification may be deemed premature because "class certification is not a 'forgone conclusion,'" and the litigation may ultimately have no effect on the intervenor's interests.  *See George v. Uponor, Inc.*, 290 F.R.D. 574, 577-78 (D. Minn. 2013).  With respect to the fourth factor, a court should focus on the potential prejudice caused by the movant's delay rather than by their potential presence in the litigation.  *See United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995).  However, the court may find prejudice due to delay where intervention would result in "[t]he introduction of a new legal theory" because this "could change the parties' respective strategies or framing of the issues during preliminary motion practice."  *See Tarek ibn Ziyad Acad.*, 643 F.3d at 1094-95.

Defendant argues that ARRM's motion should be denied because it is untimely.  Specifically, Defendant contends that ARRM has failed to provide a sufficient reason to support its delay in seeking intervention.  Further, Defendant asserts that "the litigation has already progressed to an advanced stage," and "substantial discovery" has already

taken place.  (Doc. No. 156 at 15.)  Finally, Defendant argues that "ARRM's motion will prejudice the parties by causing further delay and expanding the scope of the litigation at this late stage."  (*Id.*)

ARRM argues that its motion was filed in a timely manner shortly after the Court certified this case as a Class Action.  According to ARRM, "[i]ntervention would not have been warranted or appropriate if this Court had denied Class certification."  (Doc. No. 140 at 14.)  ARRM acknowledges that this case began in August 2016, but argues that it moved to intervene once it became aware that its statewide interests may be impacted by this litigation.  ARRM argues that "[i]ntervening prior to the certification of the class would have been premature because, prior to the certification of the class, the contours of the lawsuit were unclear."  (Doc. No. 162 at 8.)  ARRM points out that Defendant's concern over potential delay is unfounded because it appears that Defendant "has not embraced a litigation strategy designed to achieve a quick resolution of the case."  (*Id.* at 9.)

Considering the particular circumstances of this case, the Court determines that ARRM's Motion to Intervene was timely.  ARRM persuasively explains its reason for delay in seeking to intervene, and the Court finds that any delay was justified.  Although the record does not establish when ARRM first became aware of this litigation, ARRM argues that it had no basis on which to intervene until after the Court granted Plaintiffs' Motion for Class Certification.  The Court agrees.  Considering the change in this litigation's potential scope following Class Certification, ARRM reasonably waited until after that time to meet and confer with the parties about its desire to intervene.  Finally,

18

the Court concludes that the parties would not be prejudiced by ARRM's delay.  In

particular, the Court discerns no prejudice to Plaintiffs as they are amenable to

intervention at this late stage.  In addition, Defendants have not clearly identified any

potential prejudice caused by ARRM's delay in seeking to intervene.  In sum, the

relevant factors and the unique circumstances of this case support the conclusion that

ARRM's Motion to Intervene was timely.

## IV.    Intervention of Right

A party shall be permitted to intervene as a matter of right in an action if it

demonstrates "that it:  (1) has a recognized interest in the subject matter of the litigation

that (2) might be impaired by the disposition of the case and that (3) will not be

adequately protected by the existing parties."  *Johnson*, 800 F.3d at 452 (quoting

*N. Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir.2015)); *see also*

Fed R. Civ. P. 24(a)(2).  "An interest is cognizable under Rule 24(a)(2) only where it is

'direct, substantial, and legally protectable.'"  *Med. Liab. Mut. Ins. Co.*, 485 F.3d at 1008

(quoting *Union Elec. Co.,* 64 F.3d at 1161).  "The interest test should be construed

broadly, so as to include as many parties as practicable and . . . the interest may be

contingent on the outcome of litigation."  *Animal Prot. Inst. v. Merriam*, 242 F.R.D. 524,

527 (D. Minn. 2006); *see also Union Elec. Co.*, 64 F.3d at 1162 ("Although the

intervenor cannot rely on an interest that is wholly remote and speculative, the

intervention may be based on an interest that is contingent upon the outcome of the

litigation.").  However, the movant's asserted interest must not be "contingent upon the

occurrence of a sequence of events before it becomes colorable."  *Med. Liab. Mut. Ins.*

*Co.*, 485 F.3d at 1008 (quoting *Standard Heating & Air Conditioning Co. v. City of Minneapolis,* 137 F.3d 567, 571 (8th Cir. 1998)).  A movant "must . . . demonstrate that the subject matter of the action affects its interests in a direct rather than tangential way." *Metro. St. Louis Sewer Dist.*, 569 F.3d at 839.  Therefore, "[a] court must carefully analyze whether the proposed intervenor's asserted interest really is bound up with the subject matter of the litigation."  *Id.* at 840.

With respect to the second element, the movant must establish "a 'sufficient stake' in the litigation" by demonstrating that its interests may be impaired absent intervention. *Union Elec. Co.,* 64 F.3d at 1161 (citation omitted).  "When a third party files suit to compel governmental agency action that would directly harm a regulated company, the company's economic interests in the lawsuit satisfy Rule 24(a)(2)'s recognized-interest requirement."  *Nat'l Parks Conservation Ass'n*, 759 F.3d at 976 (finding an interest sufficient to support Rule 24(a) intervention where a group of plaintiffs sought to compel environmental regulation affecting the movant's property and financial interests and noting that "[the movant's] interests are the ultimate target" of the litigation).

The adequacy-of-representation element poses only a "minimal burden" for potential intervenors.  *Animal Prot. Inst.*, 242 F.R.D. at 528 (citation omitted).  To evaluate this element, the court should "compar[e] the interests of the proposed intervenor with interests of the current parties to the action."  *Id.*  "[I]ntervention is appropriate if the interests are disparate, even if they share the same legal goal."  *Id.* Under the *parens patriae* doctrine, a government party is presumed to be an adequate representative of the public interest, but an intervenor may overcome this presumption by

"show[ing] that its interests are distinct" and "not shared by the general citizenry."  *See*

*Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004).

Defendant argues that ARRM has failed to identify a recognized interest in the outcome of this litigation that is directly related to the relief Plaintiffs seek to obtain—more autonomy over their individual housing choices.  Rather, Defendant suggests, ARRM merely asserts an interest "in the collateral issue of how its members are treated by counties that administer Disability Waiver services."  (Doc. No. 156 at 16.) According to Defendant, "[t]his tangential interest is not sufficient to support intervention as of right."  (*Id.* at 17.)  Further, Defendant argues that ARRM's claimed interest will not actually be impaired by the outcome of this litigation because Plaintiffs do not seek "the systematic emptying or reduction in occupancy of CRS facilities."  (*Id.*)  Finally, Defendant argues that to the extent ARRM asserts a recognized interest that may actually be impaired by this litigation, Plaintiffs adequately represent this interest.  Specifically, Defendant contends, both ARRM and Plaintiffs seek to "limit[] the discretion provided to county lead agencies."  (*Id.* at 18.)  Defendant also argues that much of the relief ARRM identifies as posing a threat to its interests is beyond the scope of what the Court could actually order in this case.

In contrast, ARRM argues that it meets the requirements for intervention of right. First, ARRM suggests that its members have a recognized interest in this case "[a]s the current and future licensed providers of home and community based services to members of the Plaintiff Class."  (Doc. No. 140 at 8.)  ARRM highlights how the allegations in its Complaint in Intervention build upon what it describes as "the crux of the subject matter

21

of this litigation" as outlined in Plaintiffs' Amended Complaint—"Defendant's lack of supervision of lead agencies." (*Id.* at 8-9.) ARRM contends that "[i]f the outcome of this litigation tweaks Defendant's current policies and practices yet preserves the underlying status quo of county lead agency decision-making and unbridled control, then ARRM members' licensure and property rights will continue to be redefined, diminished, and ultimately impaired." (*Id.* at 10.) In addition, ARRM asserts that both its members and the Plaintiff Class suffer from the same "county-by-county budgetary considerations" and resulting "lack of uniformity" throughout the State's Waiver Services system. (*Id.*) ARRM also points out that both it and the Plaintiffs assert claims under the ADA and the Rehabilitation Act relating to the same conduct by Defendant.

Second, ARRM argues that its recognized interests may be impaired by this litigation. Specifically, ARRM points to the possibility that "the disposition of this case results in a mandate to reduce or empty Minnesota's Community Residential Settings by a set and established schedule, without enforcing a prudent method for selecting Community Residential Settings or addressing how those changes impact the property and licensing rights held by ARRM members." (*Id.* at 11.) This outcome, ARRM suggests, "could easily result in a body blow to the industry, resulting in a greater denial of access to services." (*Id.* at 11-12.) ARRM also argues that "if the Plaintiffs are successful in their claims, any resolution fashioned by the Court would impact ARRM members." (Doc. No. 162 at 11.) ARRM points out that the Plaintiffs' requested relief all relates to the "ultimate goal of moving individuals who desire to do so out of licensed settings into their own homes." (*Id.*) According to ARRM, "[i]t is near inconceivable

that these actions will not impact ARRM members' protectable [sic] interests,"

particularly due to Defendant's alleged interpretation of state law that permits the closure

or consolidation of licensed beds once an individual moves out of a CRS facility.  (*Id.*)

And further, ARRM contends, if Plaintiffs' requested relief is denied in all respects,

ARRM will continue to be affected by Defendant's alleged mismanagement of the

Disability Waiver services system across the state.

Third, ARRM argues that its interests would not be adequately represented by

Plaintiffs or Defendants.  ARRM asserts that its "interests are commensurate with, but

not identical to" the interests of the Plaintiff Class.  (*Id.* at 12.)  ARRM also argues that

"[i]f taken to their extreme, some of the remedies sought by the Plaintiffs would injure

ARRM members."  (*Id.*)  For example, ARRM contends that its members' license and

property rights may be undermined if Defendant responds to Plaintiffs' allegations by

strictly defining what constitutes a community-based residence under federal Medicaid

regulations.  Because its interests are admittedly distinct from those of the existing

parties, ARRM contends that it has met the minimal burden of establishing inadequate

representation.

The Court concludes that ARRM has failed to establish that it is entitled to

intervention of right.  First, for many of the same reasons outlined above with respect to

standing, ARRM has not articulated "a recognized interest in the subject matter of the

litigation" that is "direct, substantial, and legally protectable."  *See Johnson*, 800 F.3d at

452; *Med. Liab. Mut. Ins. Co.*, 485 F.3d at 1008 (citation omitted).  The Court

acknowledges that the interest test is to be broadly construed.  Even so, the Court

23

concludes that ARRM's asserted interests in this litigation are too "remote and speculative" or "contingent upon the occurrence of a sequence of events" to support Rule 24(a) intervention.  *See Union Elec. Co.*, 64 F.3d at 1162; *Med. Liab. Mut. Ins. Co.*, 485 F.3d at 1008 (citation omitted).  ARRM's claimed interests, although tangentially related to Plaintiffs' lawsuit, are not directly bound up with the particular claims Plaintiffs assert or the relief they seek.  Second, and relatedly, ARRM has failed to demonstrate that its claimed interests may actually be impaired by this litigation.  This is not the sort of case where the plaintiffs' lawsuit directly targets the potential intervenors' conduct or rights.  *See Nat'l Parks Conservation Ass'n*, 759 F.3d at 976.  Rather, it is only upon a sequence of speculative contingencies that ARRM's protectable interests may be impaired.

Finally, the Court concludes that at least one of ARRM's claimed interests will be adequately protected by the Plaintiff Class in this case.  Specifically, ARRM's alleged interest in providing services consistent with the requirements of the ADA and the RA is the central thrust of Plaintiffs' entire case.  As even ARRM acknowledges, Plaintiffs themselves are the parties with directly enforceable rights under these federal provisions. (*See* Compl. Int. ¶ 51.)  Any claimed rights asserted by ARRM are merely derivative of the rights Plaintiffs are already vigorously pursuing in this action.  And to the extent ARRM has obligations to fulfill the requirements of these federal statutes in order to maintain their licenses under state law, the outcome of Plaintiffs' claims will resolve what is required of Defendant, her agents, or licensed providers such as ARRM's members to ensure Plaintiffs are residing in the most integrated setting appropriate to

24

their needs.[5]  With respect to ARRM's other asserted rights such as their license and
property rights in the residential facilities they own and operate, neither of the existing
parties adequately represents that interest.  However, as previously explained, the Court
concludes that these interests are not plainly threatened by the potential disposition of this
case.  Based on the foregoing considerations, the Court therefore concludes that even if
ARRM adequately established standing in this matter, it would not be entitled to
intervention of right under Federal Rule of Civil Procedure 24(a).

## V.      Permissive Intervention

A party unable to meet the requirements for intervention as a matter of right may
still be permitted to intervene upon timely application when an applicant's claim or
defense and the main action have a question of law or fact in common.  *See*
Fed. R. Civ. P. 24(b).  In these circumstances, the court should consider "whether the
proposed intervention would unduly delay or prejudice the adjudication of the parties'
rights."  *S. Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir.
2003); *see also* Fed. R. Civ. P. 24(b)(3).  The court may exercise its discretion to decline
intervention if the proposed intervenor's "presence in the case would interject collateral
issues."  *Curry*, 167 F.3d at 423; *see also Mo. Coal. for the Env't Found.*, 2016 WL
3566253, at *5-6 (denying Rule 24(b) intervention where the intervenors' participation
would be "more likely to delay and sidetrack" the litigation).  This is consistent with the

---

[5]      To the extent ARRM asserts a distinct interest under the ADA and the RA with
respect to services its members provide to individuals outside of the Plaintiff Class, such
an interest would not be within the scope of this litigation or potentially impaired by the
outcome of this case.

proposition that "as a general rule, intervenors are limited to the claims already at issue in a case in which they are allowed to intervene." *See White Earth Nation v. Kerry*, Civ. No. 14-4726, 2015 WL 12778751, at *6 (D. Minn. Jan. 23, 2015) (collecting cases).

Defendant contends that the Court should deny permissive intervention because it would cause undue delay and prejudice to the existing parties.  In particular, Defendant asserts that "[a]llowing ARRM to intervene would expand the scope and cost of litigation by introducing new and collateral issues."  (Doc. No. 156 at 20.)  ARRM argues that it should be permitted to intervene under Rule 24(b) if the Court concludes that mandatory intervention is not warranted.  Although it raises distinct claims from the Plaintiff Class, ARRM contends that its claims are all built upon "the same facts concerning Defendant's oversight of her county agents."  (Doc. No. 140 at 15.)  In particular, ARRM points to "the alleged root cause that Defendant delegates too much unfettered authority to county lead agencies," resulting in inconsistencies throughout the state's Disability Waiver system.  (*Id.* at 14.)  ARRM also argues that its asserted rights under the ADA and Section 504 are analogous to those asserted by Plaintiffs.  Finally, ARRM argues that granting permissive intervention would not result in any undue delay or prejudice to the parties because ARRM does not seek to alter the existing schedule for this litigation, Plaintiffs support intervention, and "permitting intervention here will actually serve to promote efficiency."  (Doc. No. 162 at 13.)  ARRM recognizes that its participation could "expand the scope of the litigation," but suggests that efficiency favors intervention in this case.  (*Id.*)

The Court concludes that ARRM's Complaint in Intervention raises common questions of law and fact with Plaintiffs' case.  For example, both causes of action raise common factual questions regarding the nature of Defendant's oversight over county lead agencies with respect to the provision of Waiver Services.  In addition, both ARRM and the Plaintiff Class assert related claims under the ADA and the RA, suggesting that common questions of law would arise in resolving both matters.  *Cf. Ball v. Kasich*, Civ. No. 2:16-cv-282, 2017 WL 3172778, at *10 (S.D. Ohio July 25, 2017) ("Here, the common question of law argued by Plaintiffs, Defendants, and [the potential intervenors] is:  What does *Olmstead* require of Defendants to comply with the ADA?").

However, in its discretion, the Court declines to grant permissive intervention in this matter based on the significantly expanded nature and scope of litigation contemplated by ARRM's presence in the litigation.  Aside from the commonalities noted above, ARMM's Complaint in Intervention bears little relationship to the actual factual allegations and legal claims asserted by the Plaintiff Class.  Instead, ARRM alleges a number of additional and distinct legal claims relating to its members' license and property rights as providers of Waiver Services.  It also challenges a number of aspects of Defendant's administration of the Waiver Services system that are unrelated to the conduct that Plaintiffs challenge.  For example, ARRM points to alleged disparities in Defendants' statewide administration of the Waiver Services system based on specific funding mechanisms and coordination of county authority over Waiver Services.  These specific disparities are not the focus of Plaintiffs' case.  Rather, these allegations and ARRM's related Equal Protection and Due Process claims "would interject collateral

27

issues" and needlessly complicate this already complex Class Action litigation.  *See Curry*, 167 F.3d at 423.  ARRM is certainly within its rights to pursue a separate action against Defendant, but the Court concludes that permitting the addition of these wholly separate claims in this matter would not promote the interests of efficiency or timely resolution of this case.  Thus, notwithstanding Plaintiffs' support for intervention, the Court determines that it is appropriate to deny ARRM's request for permissive intervention.

## VI.    Leave to Serve as Amicus Curiae

As an alternative to intervention, ARRM seeks leave to serve as amicus curiae in this action.  "Although a party fails to meet the standard for intervention under Rule 24, a court may nonetheless allow a party to participate in litigation as an amicus curiae where although short of a right to intervene, the amicus has a special interest that justifies his having a say." *Pettet*, 2011 WL 3354089, at *4 (quotation marks and citation omitted).  A determination on a request to participate as amicus curiae is discretionary, and "the court . . . may grant or refuse leave according as it deems the proffered information timely, useful, or otherwise." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 38 F. Supp. 3d 1043, 1055 (D. Minn. 2014) (quoting *Mausolf v. Babbitt*, 158 F.R.D. 143, 148 (D. Minn.1994), *rev'd on other grounds*, 85 F.3d 1295 (8th Cir. 1996)).

ARRM indicates "that its members are witness to inconsistent, confusing and arbitrary decisions and actions taken by counties that directly impact ARRM members" and ultimately the Plaintiff Class.  (Doc. No. 140 at 17.)  ARRM specifically requests to participate in an amicus capacity by submitting an amicus memorandum, "appear[ing] at

28

any hearing or in-chamber discussion as invited and requested by the Court," and by providing comment on a potential Class Action Settlement prior to Court approval. (*Id.*) Defendant does not take a position on ARRM's request to participate as amicus curiae.

The Court grants ARRM's request to participate as amicus curiae. As both ARRM and Plaintiffs have persuasively suggested, ARRM offers useful information for the Court in this matter because its provider members represent "the third major stakeholder" in the state's Waiver Services system. (*See* Doc. No. 157 at 5; *see also* Doc. No. 162 at 1 (identifying these key stakeholders as "persons with disabilities, the state, and service providers").) ARRM's participation will aid the Court in resolving Plaintiffs' claims against Defendant with the most thoroughly informed understanding of how the Waiver Services system operates in practice. Although the Court concludes that ARRM's claimed interests in this litigation do not rise to the level to support mandatory or permissive intervention, the Court welcomes ARRM's participation as amicus curiae to assist the Court in considering the merits of Plaintiffs' claims. Should ARRM wish to participate in a particular capacity with respect to a pending motion or matter before the Court, ARRM shall notify the Court by filing a letter on the docket detailing its request.

## CONCLUSION

ARRM's asserted interests in this litigation are insufficient as a matter of law to support standing to intervene. Furthermore, even if ARRM had standing, ARRM has failed to establish the requirements for mandatory intervention under Rule 24(a), and the Court declines to grant permissive intervention under Rule 24(b). Thus, the Court denies ARRM's motion to intervene. Instead, the Court shall permit ARRM to participate as

amicus curiae to provide an important perspective that will be useful to the Court as it resolves the complex claims alleged in Plaintiffs' Amended Class Action Complaint.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.       ARRM's Motion to Intervene or, in the Alternative, for Leave to Serve as Amicus Curiae (Doc. No. [138)]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.       ARRM's Motion to Intervene pursuant to Federal Rule of Civil Procedure 24(a) or 24(b) is **DENIED**.

   b.       ARRM's request to participate as amicus curiae is **GRANTED**.  Should ARRM wish to participate in a particular capacity with respect to a pending motion or matter before the Court, ARRM shall notify the Court by filing a letter on the docket detailing its request.

Dated:  May 4, 2018                s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge