# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Tenner Murphy, by his guardians Kay and Richard Murphy; Marrie Bottelson; and Dionne Swanson; and on behalf of others similarly situated, | Civ. No. 16-2623 (DWF/BRT) |
| Plaintiffs, | |
| v. | **ORDER ON MOTIONS TO COMPEL AND ESI PROTOCOL** |
| Emily Johnson Piper, in her capacity as Commissioner of the Minnesota Department of Human Services, | |
| Defendant. | |

Joseph W. Anthony, Esq., Peter McElligott, Esq., and Steven M. Pincus, Esq., Anthony Ostlund Baer & Louwagie PA; and Justin H. Perl, Esq., Christen Leigh Chapman, Esq., and Steven C. Schmidt, Esq., Mid-Minnesota Legal Aid, counsel for Plaintiffs.

Janine Wetzel Kimble, Esq., Scott H. Ikeda, Esq., and Aaron Winter, Esq., Minnesota Attorney General's Office, counsel for Defendant.

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (Doc. No. 207), and Defendant's Motion to Compel Discovery (Doc. No. 213). Plaintiffs seek to compel an answer to Interrogatory No. 33 and responses to Document Request No. 43(a) (e) and (f) held by DHS or Lead Agencies. Defendant seeks to compel answers to Interrogatory Nos. 20, 21, 22, 24, 25, and 26, and responses to Document Request Nos. 18 and 19.[1] In addition, Defendant seeks to compel supplementation of Plaintiffs'

---

[1]    In Defendant's conclusion in her brief, she references seeking responses to Interrogatory Nos. 20–28 and Document Request Nos. 13, 18, and 19.  However, Defendant did not make any argument in her brief as to Interrogatory Nos. 23, 27, or 28,

(Footnote Continued on Next Page)

discovery answers to indicate the relevance of their 100 additional individuals listed in

Plaintiffs' Second Amended Initial Disclosures. Also before the Court are the parties'

ESI proposals. (Doc. No. 187.) The Court held a hearing on the motions on April 6, 2018,

at which the parties were represented by counsel.[2]

## DISCUSSION

### I.    Applicable Law

Federal Rule of Civil Procedure 26 governs discovery in federal court. Fed. R.

Civ. P. 26(b)(1). Discovery under the Federal Rules of Civil Procedure, however, is not

without bounds even if relevance is shown. Federal Rule of Civil Procedure 26(b)(2)(C)

provides:

> On motion or on its own, the court must limit the frequency or extent of
> discovery otherwise allowed by these rules or by local rule if it determines
> that:

---

(Footnote Continued from Previous Page)
nor did she make any argument as to Document Request No. 13. Therefore, the Court
does not consider or make any ruling as to those requests.

[2]    This is one of many orders relating to discovery disputes in this case. (*See* Doc.
No. 78, 8/21/17 Order and Opinion (addressing Plaintiff's motion to compel answers to
interrogatories and one document request seeking documents that were relied upon in
responding to interrogatories), affirmed by Doc. No. 151, 11/22/17 Order by District
Court Judge; Doc. No. 116, 10/30/17 Order (addressing Defendant's Motion for a
Protective Order), affirmed by Doc. No. 188, 2/16/18 Order by District Court Judge; Doc.
No. 102, 10/4/17, Order and Opinion (addressing Plaintiffs' Motion to Compel Regarding
Temporal Scope and Terms for Searching Electronically Stored Information (ESI)),
affirmed by Doc. No. 160, 12/14/17 Order by District Court Judge; Doc. No. 148,
11/20/17 Order (addressing Plaintiffs' Motion to Compel Regarding Plaintiffs' Third Set
of Request for Documents), affirmed by Doc. No. 188, 2/16/18 Order by District Court
Judge; Doc. No. 189, 2/21/18 Order (addressing Plaintiffs' Motion for Sanctions related
to Interrogatory No. 6(c)), affirmed by Doc. No. 235, 5/18/18 Order by District Court
Judge.

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(b)(1) provides that:

[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

## A. Rule 33 Interrogatories

Rule 33 explains that a party answering interrogatories "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Specifically—and importantly— it must "provide information that is available to it and can be produced without undue labor and expense." *Lindholm v. BMW of N. Am., LLC*, Civ. No. 3:15-CV-03003-RAL, 2016 WL 452315, at *5 (D.S.D. Feb. 5, 2016) (quoting *Miller v. Pruneda*, 236 F.R.D. 277, 282 (N.D. W. Va. 2004)). An individual defendant named in her official capacity must answer interrogatories directed at the government entity "using all reasonably obtainable information within [her] possession, custody or control, including records maintained by [the relevant government entity]." *See Tyler v. Suffolk Cty.*, 256 F.R.D. 34, 37–38 (D. Mass. 2009).

3

In raising an objection to an interrogatory, the objecting party has the burden to demonstrate "that the information sought is not reasonably available to it." *Lindholm*, 2016 WL 452315, at *5 (citing 8B Charles A. Wright et al., *Federal Practice and Procedure* § 2174 (3d ed. 2010)). When answering interrogatories, a party has an obligation to make efforts to obtain the desired information. *See id.* "If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information." *Id.* (quoting *Essex Builders Grp., Inc. v. Amerisure Ins.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005)); *see also* Wright, *supra*, § 2177 & n.5 ("If a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available.").

### B.  Rule 34 Document Requests

Document requests must "describe with reasonable particularity" the documents sought. Fed. R. Civ. P. 34(b). If a document request comports with Rule 34 and the scope and limits of Rule 26, the responding party must produce documents within its "possession, custody, or control." Fed. R. Civ. P. 34(a). "The concept of 'control' . . . is often highly fact-specific." *Benson v. Rosenthal*, No. 15-782, 2016 WL 1046126, *4 (E.D. La. Mar. 16, 2016) (quoting Wright, *supra*, § 2210). "[U]nder some circumstances courts interpret the control concept to go beyond whether the litigant has a legal right to obtain materials and focus on <u>practical ability to obtain them</u>." *Id.* (quotations omitted; emphasis added in *Benson*). The Court has not yet ordered the Defendant to obtain

documents from third party agencies.[3]

## I.    Plaintiffs' Motion to Compel Discovery

### a.    Interrogatory No. 33

Plaintiffs argue that Defendant must obtain and provide class member related

information from lead agencies as requested in Interrogatory No. 33. This interrogatory

states as follows:

> Identify the Waiver recipients who have been identified as wanting to move
> from corporate foster care facilities in the Local Planning Grant Reports
> that have been produced DHSGOR0032379-DHSGOR0032636, and any
> other related grant reports.

(Doc. No. 210, Pls.' Mem. in Supp. of Mot to Compel Discovery 6.) As explained by

Plaintiffs,

> DHS has offered opportunities for lead agencies to apply for grants aimed
> at developing alternatives to corporate foster care for people with
> disabilities. As part of their obligations under these grants, the grantees
> (lead agencies) must submit periodic reports on their progress to DHS. As
> part of discovery, Defendant has produced these Local Planning Grant
> Reports to Plaintiffs. While these reports do not provide names of
> individuals, the reports clearly reference specific individuals who have
> expressed interest in moving out of corporate foster care facilities into

---

[3]    On November 20, 2017, this Court advised: "If Plaintiffs intend to discover
documents from the lead agency files through written document requests to Defendant:
(1) the document requests must be more narrowly tailored; and (2) Plaintiffs must offer
more support to establish that the documents *requested* are in Defendant's control." (Doc.
No. 148, 11/20/17 Order 7.) This Court also noted that nothing in the November 20, 2017
Order precluded Plaintiffs from serving more targeted document requests after they had
support for their position that Defendant has control of responsive documents that are in
the lead agencies' custody or possession. (*Id.* at 8.) Plaintiffs did not appeal this Order.
And the Court has thus far "decline[d] to conclude that requiring Defendant to reach out
to lead agencies to answer interrogatories would in all circumstances be unreasonable or
beyond the scope of what is permitted under the relevant discovery rules." (Doc. No. 151,
11/22/17 Order affirming 8/21/17 Order at 9-10.)

alternatives and individuals who have received assistance to move out of corporate foster care facilities.

(*Id.* at 7.) Plaintiffs contend that Interrogatory No. 33 is specific, proportional, and relevant. Plaintiffs also contend that Defendant has not articulated why this information is not reasonably available to her or why obtaining the information would be unduly burdensome when the provider agreements with lead agencies allow for them to provide DHS with records upon request.

Defendant objects to Interrogatory No. 33 "because it is overbroad, unduly burdensome and disproportionate, seeks irrelevant information, is vague to the extent it refers to 'related grant reports,' and to the extent it seeks information protected by the attorney-client or work product privileges." (Doc. No. 210 at 6.) Subject to its objections, Defendant states that "individuals are not 'identified' in grant reports," and "[t]o the extent Defendant has responsive information in its possession, custody, or control, it has already been produced in the form of grant reports." (*Id.*) If Plaintiffs seek further information that is in the possession, custody, or control of lead agencies, Defendant argues Federal Rule of Civil Procedure 45 governing subpoenas is the proper vehicle.

Defendant further represents that she does not know the identity of the Waiver recipients sought in Interrogatory No. 33, and that the identities are not in her possession, custody, or control. Plaintiffs argue that the reports Defendant received from certain lead agencies "clearly reference specific individuals who have expressed interest in moving out of corporate foster care facilities into alternatives and individuals who have received

assistance to move out of corporate foster care facilities" and that Defendant can request the identities of the individuals from the lead agencies. (*Id.* at 7, 11.)

Although "[a] party . . . must provide by way of answers to interrogatories the relevant facts readily available to it[,] . . . it should not be required to enter upon extensive independent research in order to acquire such information." *La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 171 (D. Del. 1973); *see also Miller*, 236 F.R.D. at 282 (stating that an interrogatory may not demand "extensive investigations or . . . complex research"); *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534, 537 (D. Del. 1962) ("[A] party is not required to make research or compilation of data *except that within its own knowledge*.") (quotations omitted). If the circumstances were different and the reports at issue were prepared by DHS, the outcome on a motion to compel might be different.[4] However, based on the information before the Court, Plaintiff's motion with respect to Interrogatory No. 33 is denied.

### b. Revised Document Request No. 43

Revised Document Request No. 43 states as follows:

Provide the MnCHOICES assessment, Case Support Plan, Community Services and Support Plan, My Move Form, transition plan, person-centered plan, correspondence between the Waiver recipient and case manager, lead agency and/or DHS, and case notes since January 1, 2015 for the following individuals:

 a. Waiver recipients identified through providing responsive documents to Plaintiffs' document request numbers 35 and 44;

---

[4] This Order makes no ruling regarding what information might be subject to third party discovery pursuant to a properly issued subpoena under Rule 45.

e.   The 42 individuals that Defendant identified as having expressed that they wanted to move from corporate foster care facilities to alternatives during their 2016 MnCHOICES assessment; and

f.    Waiver recipients identified as wanting to move out of corporate foster care facilities through the DHS Local Planning Grants.

(Doc. No. 210 at 14.) Plaintiffs argue that Defendant must produce documents responsive to revised Document Request No. 43(a), (e), and (f) because Defendant has possession, custody, or control over documents held at lead agencies and this request is not unduly burdensome. Defendant responded to Revised Document Request No. 43 as follows:

Defendant objects that this Request is overly broad, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of the case. In particular, this Request seeks irrelevant information to the extent it seeks information about individuals who are not class members. Defendant further states that it understands "Case Support Plan" refers to "Consumer Support Plan."

Defendant further states that Defendant has MnCHOICES assessments, Consumer Support Plans, and Community Services and Support Plans in its possession, custody, or control. Defendant states that "My Move Form, transition plan, person-centered plan, correspondence between the Waiver recipient and case manager, lead agency" and complete case notes are not in DHS's possession, custody, or control. Defendant objects that this Request is unduly burdensome because DHS estimates that to gather all responsive information for the 752 individuals referred to in (c), (d), and (e), would take over 500 hours. Specifically, DHS estimates it would take approximately 142 hours to pull MnChoices Assessments, Consumer Support Plans, and Community Services and Support Plans, and DHS estimates it would take approximately ten minutes to two hours to pull extraneous and miscellaneous documents (including potentially portions of case notes) out of SSIS for each of the 752 files at issue, because each file would have to be reviewed manually and contain differing quantities of data.

As to (f), Defendant does not have those identities, because the data provided to DHS regarding individuals who want to move are numerical and aggregate; they do not contain identifying information. See, e.g., DHSGOR0032379.

8

> As to (a), Defendant incorporates its objections to Request No. 29, 30, 32-
> 35, and 44, and states that these requests do not ask Defendant to
> "identif[y]" anyone, so (a) is non-sensical.

(*Id.* at 15.) Plaintiffs' motion with respect to Document Request No. 43 is granted in part

and denied in part as follows.

With respect to paragraph (a), Plaintiffs' motion is denied. This portion of the

request is flawed in that it would require Defendant (or presumably her lawyers) to

(1) segregate documents produced in response to Document Request Nos. 35 and 44;

(2) re-review those documents to identify "Waiver recipients" listed in the documents;

and then (3) go back to source document archives to look for more documents (i.e.,

"MnCHOICES assessment, Case Support Plan, Community Services and Support Plan,

My Move Form, transition plan, person-centered plan, correspondence between the

Waiver recipient and cases manager, lead agency and/or DHS, and case notes since

January 1, 2015") for all Waiver recipients that Defendant (or her lawyers) identify. In

other words, it combines what would otherwise be an interrogatory request with a

document request. The Court finds this hybrid request beyond the scope of Rule 34.

Document Request No. 43(a) is not sufficiently particular about what should be produced

because it requires *Defendant or her attorneys* to take several burdensome steps to

determine its scope.[5] And, at this point in the case, requiring Defendant to take these

---

[5]    This Court acknowledges that written discovery requests are sometimes dependent
on responses to other discovery. For example, this Court previously ordered that
Defendant identify individuals known to Defendant who are receiving Disability Waivers
and living in a corporate foster care facility who want to move into an alternative to foster

(Footnote Continued on Next Page)

steps in order to fully frame the request puts an undue burden on Defendant. Because

Document Request No. 43(a) is fundamentally flawed, this Court need not address

whether Defendant has control over any potentially responsive documents to this request

held by lead agencies.

With respect to paragraph (e), Plaintiffs' motion is granted in part and denied in

part. Paragraph (e) seeks "MnCHOICES assessment, Case Support Plan, Community

Services and Support Plan, My Move Form, transition plan, person-centered plan,

correspondence between the Waiver recipient and cases manager, lead agency and/or

DHS, and case notes since January 1, 2015" for the "42 individuals that Defendant

identified as having expressed that they wanted to move from corporate foster care

facilities to alternatives during their 2016 MnCHOICES assessment." Defendant agreed

to produce the MnCHOICES assessments, Consumer Support Plans, and the Community

Services and Support Plans for the waiver recipients identified in paragraph (e).

However, Defendant asserts that the "My Move Form, transition plan, person-centered

plan, correspondence between the Waiver recipient and case manager [and/or] lead

agency" and complete case notes are not in DHS's possession, custody, or control.

First, Plaintiffs' request for "correspondence between the Waiver recipient and

---

(Footnote Continued from Previous Page)
care setting. (Doc. No. 78, 8/21/17 Order and Opinion 17.) Seeking documents about
these identified individuals through document requests is permissible as long as the
requests otherwise satisfy Rule 26. Document Request No. 43(a), however, is
distinguishable because it requires Defendant (or her attorneys) to go back and re-review
documents to come up with a list of individuals to use in a new document search.
Applying Rule 26 parameters, this is too much.

cases manager, lead agency and/or DHS, and case notes" relating to the 42 individuals identified by paragraph (e) is vague and ambiguous and, as drafted, overly broad. Accordingly, Defendant need not separately search for correspondence and all case notes unless Defendant has correspondence or case note files regarding the individuals wanting to move out of corporate foster care facilities, or it comes upon correspondence and case notes about individuals wanting to move out of corporate foster care facilities when searching for discoverable information and documents.

Two issues regarding paragraph (e) then remain: (1) whether Defendant must search its own databases for additional responsive materials relating to the 42 individuals; and (2) whether Defendant must reach out to the corresponding lead agencies for each of the 42 individuals listed to obtain the "My Move Form, transition plan, and person-centered plans" from the lead agencies.

As to the first issue, it appears that documents responsive to Document Request No. 43(e) are available in the SSIS database, which DHS has access to. (Doc. No. 210 at 15 (stating in Defendant's response how much time it would take to pull documents out of SSIS).) Further, this Court has already ordered Defendant to look for responsive information to Interrogatory No. 6(c) in particular databases that are used by DHS,[6] including the SSIS database, and to supplement Interrogatory No. 6(c) with

---

[6]     These databases include the Medicaid Management Information System ("MMIS"), the Waiver Management System ("WMS"), the Customer Relationship Management ("CRM"), the MAXIS, the Social Service Information System ("SSIS"), the Rates Management System ("RMS"), MnCHOICES Assessment and Support Planning Databases, and Lead Agency Reviews ("LAR"). (Doc. No. 189, 2/21/18 Order 5 (citing
(Footnote Continued on Next Page)

responsive information. (Doc. No. 189, 2/21/18 Order 14.) That decision was affirmed.
(Doc. No. 235, 5/18/18 Order.) Since Defendant will be searching the SSIS database
anyway, it is not unduly burdensome to add a search relating to these 42 individuals.
Indeed, there may be overlap between the individuals identified in Interrogatory No. 6(c)
and Document Request No. 43(e).[7] Accordingly, Defendant must search the SSIS
database for additional MnCHOICES assessments, Consumer Support Plans, and the
Community Services and Support Plans for the 42 waiver recipients identified in
paragraph (e); Plaintiff's request is otherwise denied.[8]

As to the second remaining issue—whether Defendant must reach out to lead
agencies to obtain the "My Move Form, transition plan, and person-centered plans" for
the 42 individuals—this Court finds this part of the request sufficiently particular and
also finds that Defendant has control over this relatively narrow set of documents. As
evidenced through deposition testimony in this case, DHS reviewers have access to
individual case files as part of their review of lead agencies, which likely includes various
personal transition plans:

---

(Footnote Continued from Previous Page)
Doc. No. 182, Decl. of Alexandra Bartolic ¶ 2).)

[7]    Consistent with the instruction from the District Court, if Defendant wishes to
renew her burdensomeness and proportionality objections after reviewing a substantial
and representative portion of the records at issue, she may do so. In particular, if initial
search results plainly reveal that the documents in Defendant's databases contain no
responsive information relevant to Document Request No. 43(e), such a course of action
may be appropriate. (*See* Doc. No. 235, 5/18/18 Order 16, n. 2.)

[8]    As discussed below, the process for searching these databases should be
incorporated into the updated ESI plan and protocol.

Q.    Okay. Are we still a few months out from the actual visit then?

A.    Correct.

Q.    Okay.

A.    Like I say, roughly a month out from when we go on-site.

Q.    Okay. So then what?

A.    So then we go out on-site. So we travel physically in person to each lead agency that we review, and usually set up a conference room, much like this one, for a series of days or weeks to do our review.

Q.    And let's just focus in on the review of individual case files for these next couple questions.

        Do you get any permission from the individual themselves who are reviewing before you review their file and their case notes, and then before you show up to the county?

A.    Specific to Lead Agency Review are you asking?

Q.    Yes.

A.    No.

Q.    Do you have access to the entire case file of the person during the Lead Agency Review process?

A.    It is -- we have access to whatever the county or lead agency or tribe has given us when we are there. So we request their case file, and it is whatever the county or tribe brings to us.

Q.    And what do you expect to see in that case file?

A.    We are likely to see signatures and forms. We are likely to see a person's plan, a person's CSP and their CSSP. Community Support Plan I believe is the term for CSP.

        We might see health information, we might see various release of information, HIPPA release, privacy notices. It varies by county.

13

(Doc. No. 211, Aff'd of Christen Chapman ¶ 11, Ex. 10 (Stacey Twite deposition transcript) at 18–19.) Requiring the Defendant to obtain this relatively narrow set of documents from the corresponding lead agencies for the 42 individuals is not unduly burdensome and is proportional to the needs of the case. Therefore, this part of the request is granted.

The court now turns to Plaintiffs' motion to compel the production of documents responsive to paragraph (f). Plaintiffs' motion is denied for the same reasons stated above relating to Interrogatory No. 33 and Document Request No. 43(a). If it is true that Defendant does not know the identities of the Waiver recipients referred to in the DHS Local Planning Grants, Defendant does not have to investigate the identities through lead agencies to determine scope of this request, and then, collect documents responsive to the request (internally or from lead agencies).

### c.  The Asserted Deliberative Process Privilege

Plaintiffs assert that Defendant has failed to adequately raise the deliberative process privilege with respect to various documents and portions of documents. Plaintiffs point out that Defendant has not provided the necessary affidavit or declaration from a department head or appropriate delegate invoking the deliberate process privilege, and contends that an assertion of the privilege on a privilege log alone is insufficient. Alternatively, Plaintiffs assert that factors weigh in favor of disclosure because (1) there is a compelling need for the documents and they are not otherwise available to Plaintiffs; (2) DHS is the pertinent decision maker and also funds the public services that are at issue, so the government's role in the litigation weighs in favor of disclosure; and

14

(3) disclosure would not hinder frank and independent discussion regarding contemplated policies and decisions.

Defendant argues that Plaintiffs did not meet and confer on this issue, including on the issue of deficiencies in the privilege log. Even so, Defendant asserts that she properly invoked the privilege by serving a privilege log, and that the factors do not weigh in favor of disclosure.

The Court concludes that an *in camera* review of the documents at issue would be appropriate in this circumstance after the parties fully meet and confer on this issue. Accordingly, if there are issues regarding privilege log entries remaining after the meet and confer, Defendant must provide the Court with the documents at issue (i.e., those designated privileged under the deliberative process privilege) no later than **July 16, 2018**, for an *in camera* review. The documents must be clearly marked as either designated privileged in full, or privileged in part by redaction. Those documents where the redacted material is asserted privileged, Defendant must provide the Court with a copy that shows the redaction through highlighting so that the Court can clearly see what was redacted. For each document asserted privileged or privileged in part under the deliberative process privilege, Defendant must provide the Court with a short description of the basis for the privilege.

### d.  Documents Kept in the Usual Course of Business

Based on the representations provided by both counsel at the hearing on this issue, the Court deems Plaintiffs' request moot. The parties have resolved the issue of identification of custodians for all documents provided in hard copy, and Defendants

15

have sufficiently explained why some electronic discovery records were produced in the usual course of business but do not have individual custodians.

## II.    Defendant's Motion to Compel Discovery

### a.    Interrogatory Nos. 20, 21, 22, 24, 25, 26

Defendant seeks supplementation from Plaintiffs on Interrogatory Nos. 20, 21, 22, 24, 25, and 26 because Plaintiffs' previous responses either have reservation language indicating that the response might not be complete, or Plaintiffs have indicated that they are withholding information because it is information known by counsel, but not necessarily known by the named Plaintiffs. For each of these Interrogatories, Plaintiffs must provide supplemental responses, on or before **June 29, 2018**, that provide what factual information they know (which includes information known to Plaintiffs' counsel) that is responsive to the Interrogatory and that is not subject to the attorney-client privilege or work-product protected.

When responding, Plaintiffs are not required to provide the equivalent of a narrative account of their case including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents. Regarding Interrogatory Nos. 20, 24, 25, and 26, Plaintiffs must identify primary and material facts known. *See Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000) (finding interrogatories seeking "every fact and document" overly broad and unduly burdensome, and limiting the scope "to identification of the material or principal facts and documents supporting plaintiff's contentions"). Plaintiffs should also confirm that they are not withholding known primary and material facts by using a "may not be limited to" clause.

16

This Court rejects the notion that Defendant's Interrogatory No. 21 (i.e., identify "every person who you believe is a class member") seeks attorney work product. *See Hickman v. Taylor*, 329 U.S. 495 (1947) ("A party clearly cannot refuse to answer interrogatories on the ground the information sought is solely within the knowledge of his attorney."). Indeed, Plaintiffs' argument does not square with their supplemental initial disclosures, which purportedly identify class members. Therefore, Plaintiffs must identify known class members and provide the reasons why they are believed to be class members.[9] As for Interrogatory No. 22, Plaintiffs concede they have additional responsive information, but they want to delay a response until they have more time to review Defendant's discovery and obtain additional discovery. The Court appreciates that Plaintiffs' complete answer may depend on additional discovery they have not yet obtained. But Plaintiffs have had sufficient time to review discovery produced and to provide updated answers to include principal and material facts known at this time. Therefore, Defendant's motion with respect to Interrogatory Nos. 20, 21, 22, 24, 25, and 26, subject to the guidance and limitations above, is granted.

---

[9] This ruling on discovery should not be construed to require Plaintiffs to identify all class members or interpreted to suggest that it is Plaintiffs' burden to identify all class members; however, to the extent Plaintiffs know of facts about class members, they should be produced. *See Kress v. Price Waterhouse Coopers*, No. CIV S-08-0965 LKK GGH, 2012 WL 1991951, at *5 (E.D. Cal. June 4, 2012) (stating that the defendant "knows the identity of the class members as well as plaintiffs" and "cannot foist the burden of identification of who-worked where, when, off on plaintiffs . . . when [defendant] should have access to the information without making a single query").

### b. Document Request No. 18

Document Request No. 18 asks for "All documents reviewed, consulted, or referenced in your Answers to Interrogatories or Requests for Admission." Plaintiffs have agreed to produce those documents "referenced" but not those "reviewed and consulted," arguing that the "reviewed and consulted" part of the request is overbroad, burdensome, unreasonable, and may implicate the work-product doctrine. Regarding Document Request No. 18, Defendant's motion is granted to the extent that Plaintiffs reviewed, consulted, or referenced documents to respond to Interrogatories or Requests for Admission. Documents that are attorney-client privileged or that are protected by the work-product doctrine must be listed on a privilege log.

### c. Document Request No. 19

Document Request No. 19 asks for "All documents that refer or relate to the Interrogatories, Requests for Admission, or your responses thereto, in Defendant's current, past, or future discovery requests." This request is overly broad. Therefore, Defendant's motion regarding Document Request No. 19 is denied.

### d. Plaintiffs' Second Amended Initial Disclosures

Defendant raises several concerns with Plaintiffs' Second Amended Initial Disclosures, including that Plaintiffs now list 120 people in their disclosures but Plaintiffs' responses to previous discovery requests have not been supplemented to include these individuals. Defendant's motion relating to Plaintiffs' Second Amended Initial Disclosures is granted to the extent that Plaintiffs must supplement previous interrogatories that required identification of people if the newly disclosed people in

18

Plaintiff's Second Amended Initial Disclosures would be responsive to those requests. Otherwise, Defendant's motion is denied.

### III.    Discovery Plan and Protocol Dispute

The Court has reviewed the parties' proposed plan and protocol for the written discovery served on January 30, 2018. (Doc. No. 187.) However, in light of this Court's February 21, 2018 Order (Doc. No. 189) as affirmed by the District Court (Doc. No. 235), and this Order as delineated above, the Court now requires the parties to further meet and confer and file an updated proposed plan and protocol for the remaining written discovery.

It appears that the parties agree on the following:

- Preservation and litigation hold;

- Production format; and

- Identification of custodians for the collection of documents responsive to the January 30, 2018 requests.

The parties are not in agreement on how Defendant should search custodial files for documents responsive to Plaintiffs' January 30, 2018 requests. (*See* Doc. No. 187.)

In October 2017, this Court resolved the parties' dispute regarding search terms for previously served discovery requests. (Doc. No. 102, 10/4/17 Order and Opinion). Plaintiffs' proposed search terms were adopted. (*Id.*) A November 16, 2017 email from Defendant's counsel indicates that DHS agreed to run searches on Disability SharePoint, Housing SharePoint, Lead Agency Review SharePoint, CRM Database, DSD S drive and DSD X drive sources. (Doc. No. 187, Ex. B.) Apparently, these sources were satisfactory

to Plaintiffs. (*See id.*, 11/16/17 email from Plaintiffs' counsel.)

Plaintiffs now argue that a new ESI protocol should apply to their January 30, 2018 requests.[10] Defendant asserts that the already litigated search terms and sources should apply to the January 30, 2018 requests. Plaintiffs do not clearly explain why the current search terms did not capture documents responsive to the new document requests, nor do they offer concrete alternatives.

Based on the parties' submissions, the Court finds that Defendant need not repeat a search of sources already searched using the search terms subject to this Court's October 4, 2017 Order. (*See* Doc. No. 102, 10/4/17 Order and Opinion.) A do-over search of electronic discovery sources is overly burdensome. However, the results of the previous searches should be further examined to determine if the pool of documents includes discoverable documents now responsive to Plaintiffs' January 30, 2018 requests. The parties must meet and confer to identify search terms to further narrow the pool and locate documents that are unique to the January 30, 2018 requests.[11] If there are disputes regarding a targeted search of the subset of the pool, the parties must file a joint submission setting forth their respective positions and include a discussion of why the

---

[10]    Plaintiffs' January 2018 discovery requests and Defendant's responses to those requests can be found at Doc. Nos. 197, 200, and 201.)

[11]    The Court understands that approximately 70,000 documents were originally tagged by Defendant using the original search terms. The relevant subset for further review will be further limited to (a) only include documents that were not already produced; or (b) have not been flagged as privileged or work-product protected. Only this subset of the original pool is subject to searching using additional terms unique to the January 18, 2018 requests.

specific January 30, 2018 discovery request(s) at issue are satisfied or not satisfied by the competing search term proposals.

If new electronic sources—including new databases—are now at issue, the parties must meet and confer to determine the search terms to be used to locate responsive documents from these new electronic sources or databases. The Court notes that neither party has proposed sampling electronic discovery sources. *See* Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment ("[P]arties may request an opportunity to test or sample materials sought under the rule in addition to inspecting and copying them."). The Court encourages the parties to consider such an approach for any new electronic discovery sources, especially given the District Court's note that Defendant will have the opportunity to renew her burdensomeness and proportionality objections after reviewing a substantial and representative portion of the records at issue. (*See* Doc. No. 235, 5/18/18 Order 16, n. 2.)

Finally, the ESI proposals indicate a disagreement about whether Plaintiffs should have negotiated search terms instead of unilaterally applying their own search terms to locate responsive documents. The Court does not conclude that Plaintiffs did anything improper by using search terms to search the source documents of the Named Plaintiffs and guardians "as one tool, in addition to other traditional efforts." (Doc. No. 187 at 17.) The Court agrees with Plaintiffs that search terms would be inapplicable to locate documents responsive to Document Request Nos. 18 and 19. And the Court lacks information necessary to assess whether Plaintiffs' efforts to locate documents responsive to other requests are insufficient. (*See id.* at 16–17.) The Court will not convert

Defendant's search-term complaint into a new motion to compel at this stage in the case.

In sum, disputes regarding electronic discovery plans and protocols could have been raised and resolved more efficiently had both sides better communicated and collaborated in the early stages of this case. (*See* Doc. No. 235, 5/18/18 Order at 16.) The Court hopes that the multiple discovery rulings will now permit the parties to engage in a meaningful meet and confer about the electronic discovery protocol that should be applied. The parties' updated proposed plan and protocol, consistent with the requirements of this Order, should be filed on or before **June 8, 2018**.

**ORDER**

Based on the file, records, argument of counsel, and for all of the above reasons,

**IT IS HEREBY ORDERED** that:

1.    Plaintiffs' Motion to Compel Discovery (Doc. No. 207) is **GRANTED IN PART** and **DENIED IN PART** as explained above;

2.    Defendant's Motion to Compel Discovery (Doc. No. 213) is **GRANTED IN PART** and **DENIED IN PART** as explained above;

3.    Any meet and confers required by this Order must be completed by **June 8, 2018**.

4.    Any supplementation, production, or certification required by this Order must be completed on or before **June 29, 2018**.

Date:   June 4, 2018                                   *s/ Becky R. Thorson*
                                                                BECKY R. THORSON
                                                                United States Magistrate Judge