# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Tenner Murphy, by his guardians Kay and Richard Murphy; Marrie Bottelson; and Dionne Swanson; and on behalf of others similarly situated, | Civ. No. 16-2623 (DWF/BRT) |
| Plaintiffs, | **ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS** |
| v. | |
| Emily Johnson Piper, in her capacity as Commissioner of the Minnesota Department of Human Services, | |
| Defendant. | |

Joseph W. Anthony, Esq., Peter McElligott, Esq., and Steven M. Pincus, Esq., Anthony Ostlund Baer & Louwagie PA; and Justin H. Perl, Esq., Christen Leigh Chapman, Esq., Steven C. Schmidt, Esq., and Justin M. Page, Esq., Mid-Minnesota Legal Aid, counsel for Plaintiffs.

Janine Wetzel Kimble, Esq., Scott H. Ikeda, Esq., Aaron Winter, Esq., and Brandon L. Boese, Esq., Minnesota Attorney General's Office, counsel for Defendant.

This matter is before the Court on Plaintiffs' Motion for Sanctions (Doc. No. 243). The dispute can be summarized as follows. Plaintiffs claim that Defendant ambushed them with a huge document production just weeks before the June 15, 2018 deadline for fact depositions. Plaintiffs concede that they were notified that a substantial production of documents would be produced; however, they did not expect the high volume of documents that were "dumped on Plaintiffs."[1] Plaintiffs assert they were prejudiced

---

[1] This Court wishes to make clear that it agrees with Defendant that her document
(Footnote Continued on Next Page)

because they could not review and use the documents during fact depositions, and seek sanctions for Defendant's conduct. Specifically, Plaintiffs request that (1) they be permitted to "re-open any deponent's deposition or take the depositions of the 12 custodians identified in Defendant's May 23, 2018 letter for Plaintiffs to ask questions related to any documents and any topics discussed therein from Defendant's narrowed re-production of the May 8 production, documents produced on May 29, 2018, and documents that will be produced for the 12 custodians that have yet to be produced," and (2) Defendant be "prohibited from introducing any documents included in Defendant's May 8, 2018 document production, DHSGOR0716852-DHSGOR3314373, that are not included [in] Defendant's narrowed re-production of the May 8 production[] or in a previous production during pre-trial, trial, and post-trial proceedings." (Doc. No. 248, Proposed Order.) Plaintiffs note that "[t]he narrowed re-production consists of documents from the May 8 production with only documents for the time frame of January 1, 2016 to present, without the imaged excel spreadsheets, and without duplicates." (*Id.* at n.1.) The Court held a hearing on the motions on July 13, 2018, at which the parties were represented by counsel. (Doc. No. 283.) For the reasons stated below, Plaintiffs' motion is denied.

---

(Footnote Continued from Previous Page)
production should not be characterized as a "document dump" because there is no evidence that Defendants intended to comingle a high volume of irrelevant documents with relevant responsive discovery. Indeed, it appears that the discovery produced corresponds to requests served by Plaintiffs. As discussed below, both parties share responsibility for failing to pin down what a "rolling production" or "substantial number" of documents meant.

**BACKGROUND**

This case has been riddled with discovery disputes, some of which have been resolved through meet and confers, but many others have not. The Court has issued many orders ruling on various aspects of discovery,[2] which inevitably required the parties to adjust and supplement their productions. Because of the disputes and the Court rulings requiring further production, the schedule in this case has been amended several times.

The Court entered its first Pretrial Scheduling Order on November 9, 2016. (Doc. No. 25.) The parties thereafter sought to amend the Scheduling Order on July 13, 2017, claiming they needed more time for discovery and asserting that "the number of documents produced will likely increase dramatically following Defendant's production pursuant to the search terms." (Doc. No. 56, Stipulated Proposal at 2.) Their proposal to amend the Scheduling Order did not include a proposal for when the substantial completion of documents should occur; however, the Court inserted a provision in the

---

[2] (*See* Doc. No. 78, 8/21/17 Order and Opinion (addressing Plaintiff's motion to compel answers to interrogatories and one document request seeking documents that were relied upon in responding to interrogatories), affirmed by Doc. No. 151, 11/22/17 Order by District Court Judge; Doc. No. 116, 10/30/17 Order (addressing Defendant's Motion for a Protective Order), affirmed by Doc. No. 188, 2/16/18 Order by District Court Judge; Doc. No. 102, 10/4/17, Order and Opinion (addressing Plaintiffs' Motion to Compel Regarding Temporal Scope and Terms for Searching Electronically Stored Information (ESI)), affirmed by Doc. No. 160, 12/14/17 Order by District Court Judge; Doc. No. 148, 11/20/17 Order (addressing Plaintiffs' Motion to Compel Regarding Plaintiffs' Third Set of Request for Documents), affirmed by Doc. No. 188, 2/16/18 Order by District Court Judge; Doc. No. 189, 2/21/18 Order (addressing Plaintiffs' Motion for Sanctions related to Interrogatory No. 6(c)), affirmed by Doc. No. 235, 5/18/18 Order by District Court Judge; Doc. No. 238, 6/4/18 Order (addressing both Plaintiffs' and Defendant's Motions to Compel and the parties proposed ESI Protocol).)

Amended Scheduling Order stating that document production should be "substantially complete by September 29, 2017." (Doc. No. 58, Amended Pretrial Scheduling Order at 2.)

On October 25, 2017, the parties filed a stipulation to amend the Scheduling Order again. (Doc. No. 110, Second Stipulated Proposal.) The parties proposed an amendment to the fact discovery deadline, but did not propose any specific deadline for the substantial completion of document discovery. (*See* Doc. No. 111, Proposed Order.) The Court entered a Second Amended Scheduling Order on October 30, 2017. (Doc. No. 115, Second Amended Pretrial Scheduling Order.) The Order reset the fact discovery deadline to February 15, 2018; however, no deadline for the substantial completion of document discovery was included consistent with the parties' proposal. (*Id.*)

On November 2, 2017, Plaintiffs filed a Motion to Compel Discovery Regarding Plaintiffs' Third Set of Requests for Documents. (Doc. No. 119.) This Court granted in part and denied in part Plaintiffs' motion on November 20, 2017.[3] (Doc. No. 148.) In light of the Court's ruling, a Third Amended Scheduling Order was also entered on November 20, 2017. (Doc. No. 149, Third Amended Pretrial Scheduling Order.) This Order provided that discovery responses (or supplemental responses) relating to requests served on or before January 30, 2018, were due by March 5, 2018. (*Id.* at 4.) The Order also expressly contemplated that documents might be produced later:

[I]f the responding party is producing copies of documents or copies of

---

[3] On appeal, the District Court affirmed this Court's Order on February 16, 2018. (Doc. No. 188.)

4

> electronically stored information and the copies are not produced with the
> responses, another reasonable time must be specified in the response. If the
> requesting party disagrees that this is reasonable, the parties must meet and
> confer to agree on the timetable for production.

(*Id.*) The Third Amended Pretrial Scheduling Order required fact depositions to be completed by June 15, 2018. (*Id.* at 5.) At the time relevant to the discovery dispute that is now presently before the Court, the November 20, 2017 Third Amended Pretrial Scheduling Order was the operative scheduling order in the case. (*See id.*)

On February 9, 2018, the parties submitted an updated "Discovery Plan and Protocol." (Doc. No. 187.) In that Plan, Defendant indicated she would be "producing documents on a rolling basis" and that production of electronically-stored information responsive to requests served before January 30, 2018 would be "complete on or before April 30, 2018." (*Id.*) Defendant did not commit to a production date for the later served requests in the plan. (*Id.*)

On March 19, 2018, after the Third Amended Pretrial Scheduling Order's deadline of March 5th for producing discovery responses (or supplemental responses) relating to requests served on or before January 30, 2018, had passed, the Court set a telephone status conference for April 6, 2018, to discuss the parties' ESI proposals and disputes. (Doc. No. 205.) A few days later, on March 23, 2018, both Plaintiffs and Defendant filed another round of motions to compel discovery. (Doc. No. 207, 213.) The Court scheduled the hearing on the motions for April 6, 2018 – the same day as the scheduled status conference. (Doc. No. 215.) On April 6, 2018, the parties argued their motions to

compel.[4]

On April 30, 2018, Defendant informed Plaintiffs that a "substantial production" would arrive in a few days. (Doc. No. 246, Affidavit of Steven Schmidt ("Schmidt Aff.") ¶ 3, Ex. 1.) On May 8, 2018, Defendant produced 169,000 documents. (Schmidt Aff. ¶ 4, Ex. 2.) Two days later, on May 10, 2018, Defendant informed Plaintiffs that DHS did not transmit documents for twelve custodians for review and production and that those documents would be reviewed and ready for production in approximately three weeks. (Schmidt Aff. ¶ 5, Ex. 3.)

Plaintiffs complained to Defendant on May 16, 2018, claiming that they were prejudiced by the volume of documents that were "dumped on Plaintiffs." (Schmidt Aff. ¶ 6, Ex. 4.) Specifically, Plaintiffs' May 16 letter stated the following, in part:

> I write regarding Defendant's document production on May 8, 2018 and the future production from 12 unnamed custodians that is mentioned in Defendant's subsequent correspondence on May 10, 2018.

---

[4] The Court ruled on the parties' discovery motions on June 4, 2018. (Doc. No. 238.) The Court granted in part and denied in part Plaintiffs' motion to compel, requiring Defendant to produce additional documents. (*Id.*) Defendant's motion was also granted in part and denied in part. (*Id.*) The Court ordered that any "supplementation, production, or certification required by this Order must be completed on or before June 29, 2018." (*Id.*) Also in its June 4, 2018 Order, the Court required the parties to meet and confer by June 8, 2018, regarding ESI search protocol to identify additional documents responsive to some of the requests in Plaintiffs' Third Set of Document Requests. (*Id.*) Separately, the Court issued an Order amending the Third Amended Pretrial Scheduling Order, which provided that all non-dispositive motions related to fact depositions must be filed, served, and heard by June 22, 2018. (Doc. No. 239.) This Order also repeated the requirement that the parties "meet and confer to resolve fact and expert discovery disputes when they arise, and if unresolved, bring discovery disputes promptly to the Court's attention." (*Id.*)

6

> On May 8, 2018, Defendant produced 169,476 documents, which consisted of 2,599,281 pages. Defendant's May 8, 2018 document production constitutes 72% of Defendant's total discovery production to date. The volume of Defendant's May 8, 2018 document production at this stage in the case is problematic for several reasons.
>
> To start, producing 72% of Defendant's total discovery production 38 days before the end of discovery on June 15, 2018 and 45 days before the deadline for the submission of Plaintiffs' expert reports on June 22, 2018 is highly prejudicial.[5] The timing and volume of Defendant's May 8, 2018 document production makes it impossible for Plaintiffs to effectively use those documents in preparation for the scheduled depositions and submission of Plaintiffs' expert reports. Furthermore, Defendant served her privilege log yesterday where she asserted privilege and withheld 13,072 documents (or portions of documents). It is extremely prejudicial and unrealistic for Plaintiffs to evaluate these claims of privilege at this stage in the case. The problem is exacerbated by yet another production of documents from as-yet 12 unnamed custodians, the topic of which was mentioned for the first time on May 10, 2018.
>
> Next, the prejudice to Plaintiffs is compounded by the fact that while Defendant informed Plaintiffs that her production of discovery would be complete by April 30, 2018, at no point did Defendant indicate that she would be producing most of her discovery production at that time. The first time that Defendant even hinted at the volume of her most recent production was on April 30, 2018 when Ms. Kimble noted in an email that "Defendant is currently preparing a substantial production, which it expects to serve upon Plaintiffs in the next few days." Over 2.5 million pages were then dumped on Plaintiffs on May 8, 2018.

(*Id.*) Plaintiffs also noted the following:

> Defendant's representations to the Court about the volume of documents

---

[5] It appears that any issues relating to the discovery production and use of the documents in expert reports is now alleviated by the recent stipulated amended scheduling order issued on June 4, 2018, which extended the dates for expert disclosures. (*See* Doc. No. 239, Order Amending Third Amended Pretrial Scheduling Order.) The Court notes that the parties proposed order, submitted on May 29, 2018, did not seek any modification of fact discovery deadlines or address issues relating to document production. (Doc. No. 237.) Therefore, the June 4, 2018 Order did not address document production either. (Doc. No. 239.)

7

> responsive to Plaintiffs' requested search terms and temporal scope
> provided no warning to Plaintiffs that such a large production was
> forthcoming. In Janine Kimble's affidavit supporting Defendant's
> opposition to Plaintiffs' motion to compel discovery, Ms. Kimble expressly
> noted that applying Plaintiffs' proposed search terms from January 1, 2009
> to present would hit upon a total of 70,561 documents. Doc. 101, J. Kimble
> Aff. (Sept. 29, 2017), at 3. Magistrate Judge Thorson relied on Defendant's
> figures when granting Plaintiffs' motion to compel discovery. *See* Doc.
> 102, Oct. 4, 2017 Order, at 4; 8. Prior to Defendant's May 8, 2018
> document production, Defendant had produced 71,680 documents. Yet,
> Defendant has now produced 169,476 additional documents without
> warning or notice that her previous figures were wildly inaccurate.

(*Id.* at n.1.)

After a meet and confer, Defendant agreed to cull down the May 8, 2018 production per Plaintiffs' request. (Schmidt Aff. ¶ 8, Ex. 6.) Defendant then wrote to Plaintiffs, saying: "It is Defendant's understanding that this resolves all of the issues raised by Plaintiffs in their May 16, 2018 letter." (*Id.*) Plaintiffs did not concede that all issues were resolved and requested another meet and confer. (Schmidt Aff. ¶ 9, Ex. 7.) After the parties met again, Defendant understood that an agreement was reached, but it appears that Plaintiffs disagreed. (Schmidt Aff. ¶ 10, Ex. 8.) Defendant went ahead per their perceived agreement and reproduced the culled-down discovery set as a "courtesy." (*Id.*; *see also* Doc. No. 267, Affidavit of Janine Kimble ¶ 2, Ex. 2.) Plaintiffs then reiterated their concerns and sought to bring this motion. (Schmidt Aff. ¶ 12, Ex. 10.) The Court was not informed of any dispute regarding the volume or timetable for the production of documents until this sanctions motion was filed on June 8, 2018. (Doc.

No. 243.)[6]

## DISCUSSION

Before considering whether any sanctions should apply, the Court must first find sanctionable conduct. Plaintiffs rely on two bases for sanctions: (1) Federal Rule of Civil Procedure 37(b)(2); and (2) the Court's "'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (Doc. No. 245, Pls.' Mem. in Supp. of Mot. for Sanctions ("Pls.' Mem.") 6 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. \_\_\_, 137 S. Ct. 1178, 1186 (2017)).)

Rule 37(b)(2) provides the following:

(b)  Failure to Comply with a Court Order.

. . . .

(2)  ***Sanctions Sought in the District Where the Action is Pending***.

   (A)  *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

   (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

   (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated

---

[6] On June 8, 2018, the parties filed a stipulation, which was then approved by the Court, to "allow Plaintiffs to file a Motion related to Defendant's document productions that occurred after April 6, 2018 by June 8, 2018." (Doc. Nos. 240, 242.)

matters in evidence;

(iii)  striking pleadings in whole or in part;

(iv)  staying further proceedings until the order is obeyed;

(v)  dismissing the action or proceeding in whole or in part;

(vi)  rendering a default judgment against the disobedient party; or

(vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Plaintiffs argue that the timing of Defendant's May 8, 2018 production is not compliant with the Court's Third Amended Pretrial Scheduling Order. A close look at that Order, however, shows that it was not clearly violated. The Order contemplated that documents might be produced after the March 5, 2018 response date. (Doc. No. 149, Third Amended Pretrial Scheduling Order 4.) And the Order did not contain a "substantially completed by" date for document production; therefore, the Order did not dictate the percentage of documents that had to be produced at what time. Therefore, Plaintiffs' request for sanctions pursuant to Rule 37(b)(2) is denied.

The Court then turns to the question of whether Defendant's document production—just weeks before fact depositions—abuses the judicial process sufficient to trigger sanctions pursuant to the Court's inherent authority. Throughout this case, the parties have hotly disputed the scope of discovery, including the scope of document discovery. As was her right, Defendant appealed almost every discovery order entered by the undersigned to the District Judge, leaving open the question as to the scope of

Defendant's obligations during the pendency of those appeals.

What is readily apparent through the timeline of events and through the vast motion practice in this case, is that everyone should have been aware that further document production by Defendant would occur after pending motions were ruled in Plaintiffs' favor. *See Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-cv-1094-JTM-TJJ, 2018 WL 741795, at * (D. Kan. Feb. 7, 2018) (concluding that the circumstances surrounding plaintiffs' document production just prior to a deposition diminished the movant's allegation that plaintiffs engaged in an "eleventh hour document dump"). And the fact that the production was voluminous is not surprising. This Court had earlier indicated that it would not be surprised if a large number of documents were to be produced in this case. Plaintiffs sought documents pursuant to three sets of documents requests and argued vehemently in some instances that documents dating back to 2009 were relevant and proportional to this case. Further, in responding to Plaintiffs' Interrogatories in this case, Defendant invoked Federal Rule of Civil Procedure 33(d), opting to produce business records rather than answer the interrogatory in writing, which should have been an indication to Plaintiffs that more documents were coming in response to interrogatories.

Plaintiffs claim they expected a few thousand documents, based on Defendant's early estimate that Plaintiffs' search terms hit approximately 70,000 documents; however, Defendants early estimate was provided to the Court to support her argument that Plaintiffs' discovery requests and proposed search terms created an undue burden to Defendant. Defendant's estimate to show burden did not equal a representation made in

bad faith[7] of the total number of documents that would eventually be produced. Indeed, it appears that the estimate pertains to the number of document hits run across "Defendant's custodians' email records." (Doc. No. 101, Affidavit of Janine Kimble ¶ 7 (emphasis added).) Plaintiffs could have probed further about what the 70,000 estimate for production stood for.[8] And, as discovery progressed and documents were identified and collected, Plaintiffs could have easily inquired about the total volume and timetable for Defendant's rolling production "[T]he discovery rules require litigants to be proactive[.]"

---

[7] The Court acknowledges that it could order sanctions without a showing of bad faith. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993) (finding that a showing of bad faith was not required where the case "involve[d] neither an assessment of attorneys' fees nor dismissal," but rather excluding a party's evidence after the other party made a showing of spoliation); *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993) (concluding that "bad faith" is not required for every possible disciplinary exercise of the court's inherent power); *but see Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 458 F.3d 733, 739 (8th Cir. 2006) ("A bad faith finding is specifically required in order to assess attorneys fees.").

[8] Given the many disputes about discovery, it is surprising that the parties did not map out the rolling document production dates—other than a April 30, 2018 completion date—or discuss the number of documents that would likely be produced following the resolution of multiple discovery disputes. And, it is also surprising that Plaintiffs did not ask about the number of documents they could expect – especially when they elected to take depositions at the very end of fact discovery.

But Plaintiffs are not the only ones at fault for this situation. Defendant absolutely could have notified Plaintiffs earlier that a substantial number of documents would be produced after March 5, 2018, and could have clarified what "a substantial number of documents" meant. Defendant knew that depositions were fast approaching, and as a courtesy she could have alerted Plaintiffs of the remaining production so that both sides would be prepared. *See Cherrington Asia Ltd. v. A & L Underground, Inc.*, 263 F.R.D. 653, 660 (D. Kan. 2010) (stating that "[w]hile Gilstrap's email certainly does not indicate the type of cooperation that is expected by the court in discovery, the court will not impose sanctions on A & L in connection with the 2006–2007 production of the computer hard-drive").

12

*Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-00946, 2017 WL 3534993, at *3 (E.D. Pa. Aug. 17, 2017).

As stated above, the Third Amended Pretrial Scheduling Order also provided that the parties were to agree on reasonable deadlines for document production if they planned to produce documents after March 5, 2018. Plaintiffs did not object to this provision in the Scheduling Order when it was issued. Defendant did notify Plaintiffs that they were working under a rolling production and that a production would occur on April 30, 2018. Plaintiffs did not object to this April 30, 2018 date. Then, when Defendant informed Plaintiffs that a "substantial production" would arrive a few days after April 30, Plaintiffs again did not object to the timing of the production. Simply put, Plaintiffs could have seen this document production coming. When it did come, Plaintiffs did not seek an extension to the fact deposition deadline.

Furthermore, there is nothing indicating that the large May 8, 2018 document production included irrelevant documents or documents that were not responsive to Plaintiffs' requests. In fact, Defendant's cover letter to the May 8, 2018 production provides additional description, identifying the discovery requests certain documents were responsive to, and otherwise states which documents were responsive to the application of Plaintiffs' search terms. (Schmidt Aff. ¶ 4, Ex. 2.) Rather than a case of sanctionable wrongdoing, this should be a lesson now learned – be careful what you ask for, you just might get it. *See Commercial Steam Cleaning, L.L.C. v. Ford Motor Company*, No. 2:09-cv-01009, 2010 WL 11619261, at *1 (S.D. W.Va. Apr. 2, 2010) ("It appears to the Court that this is a case of Plaintiffs not being careful what they asked for,

because they got it.").

Finally, even if the Court found sanctionable conduct here (which the Court does not), the relief Plaintiffs seek does not correspond to the prejudice alleged by Plaintiffs (i.e., that they did not have time to use the documents during depositions). Plaintiffs request that (1) they be permitted to "re-open any deponent's deposition or take the depositions of the 12 custodians identified in Defendant's May 23, 2018 letter for Plaintiffs to ask questions related to any documents and any topics discussed therein from Defendant's narrowed re-production of the May 8 production, documents produced on May 29, 2018, and documents that will be produced for the 12 custodians that have yet to be produced," and (2) Defendant be "prohibited from introducing any documents included in Defendant's May 8, 2018 document production, DHSGOR0716852-DHSGOR3314373, that are not included [in] Defendant's narrowed re-production of the May 8 production[] or in a previous production during pre-trial, trial, and post-trial proceedings." (Doc. No. 248, Proposed Order.) Plaintiffs have not offered any support for the need to re-open depositions; they have not identified any documents that they would need to re-question a witness on or why. In fact, at the time of the hearing they had not yet reviewed the documents. And as to their second request for relief, Plaintiffs fought hard for the broader temporal scope, which Defendant vehemently objected to. Plaintiffs may not narrow the scope through this sanctions motion.

## CONCLUSION

The Federal Rules of Civil Procedure provide tools for the parties to manage their own discovery. This Court's multiple scheduling orders, discovery orders, and status conferences provided more than the usual guidance to the parties and laid out a process to bring disputes promptly to the Court's attention. Both parties bear responsibility for the problem underlying Plaintiffs' motion. However, while conduct during the discovery process in this case is unfortunate, in the Court's view, it is not sanctionable. And even if it was, the proposed sanctions do not align with any prejudice claimed by the Plaintiffs.

## ORDER

Based on the file, records, argument of counsel, and for all of the above reasons,

**IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Sanctions (Doc. No. 243) is **DENIED**.

Date: August 6, 2018         *s/ Becky R. Thorson*
                             BECKY R. THORSON
                             United States Magistrate Judge