# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Tenner Murphy, by his guardians<br>Kay and Richard Murphy; Marrie<br>Bottelson; Dionne Swanson; and<br>on behalf of others similarly situated,<br><br>                 Plaintiffs,<br><br>v.<br><br>Pam Wheelock[1] in her capacity<br>as Commissioner of The Minnesota<br>Department of Human Services,<br><br>                 Defendant. | Civil No. 16-2623 (DWF/BRT)<br><br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

---

Joseph W. Anthony, Esq., Peter McElligott, Esq., and Steven M. Pincus, Esq., Anthony Ostlund Baer & Louwagie PA; Laura Farley, Esq., and Steven Andrew Smith, Esq., Nicholas Kaster PLLP; Barnett I. Rosenfeld, Esq., and Justin H. Perl, Esq., Mid-Minnesota Legal Aid; Eren Ernest Sutherland, Esq., Justin M. Page, Esq., and Steven C. Schmidt, Esq., Mid-Minnesota Legal Aid, Minnesota Disability Law Center, counsel for Plaintiffs.

Aaron Winter, Brandon L. Boese, Janine Wetzel Kimble, and Scott H. Ikeda, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for Defendant.

Pari McGarraugh, Esq., and Samuel D. Orbovich, Esq., Fredrikson & Byron, counsel for amicus ARRM.

---

[1] The Court has substituted Pam Wheelock, Acting Commissioner of the Minnesota Department of Human Resources, for Emily Johnson Piper. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(D).

## INTRODUCTION

This matter is before the Court on Defendant's Motion to Decertify the Class (Doc. No. 418). For the reasons set forth below, the Court denies Defendant's motion.

## BACKGROUND

The Court previously detailed the background of this case in its May 18, 2017 Memorandum Opinion and Order, (Doc. No. 54), and the Court only briefly summarizes the facts here.[2] In short, Plaintiffs are individuals with disabilities and Medicaid recipients who receive Home and Community Based Disability Waivers ("Disability Waivers") from the State of Minnesota under the direction of Defendant Pam Wheelock ("Defendant"), Acting Commissioner of the Minnesota Department of Human Services ("DHS"). Plaintiffs reside in Community Residential Setting ("CRS") facilities—otherwise known as corporate adult foster care—and wish to access various individualized housing services available under the Disability Waivers to pursue more integrated housing options. Plaintiffs assert that their current living situations isolate and segregate them from their communities in violation of federal law. To access the services they seek in a timely manner and with proper due process, Plaintiffs seek declaratory and injunctive relief to reform Defendant's administration of the Disability Waiver programs. The Court supplements the relevant facts as needed, below.

---

[2] The Court directs readers to its May 18, 2017 Memorandum Opinion and Order and otherwise assumes familiarity with the facts and law elaborated therein. *See Murphy ex rel. Murphy v. Minn. Dep't of Human Servs.*, Civ. No. 16-2623, 2017 WL 2198133 (D. Minn. May 18, 2017).

On September 29, 2017, the Court granted Plaintiffs' Motion for Class Certification, certifying the following class: "All individuals age 18 and older who are eligible for and have received a Disability Waiver, live in a licensed Community Residential Setting, and have not been given the choice and opportunity to reside in the most integrated residential setting appropriate to their needs." (Doc. No. 99 ("Cert. Order") at 35.) Defendant now argues that the Class should be decertified because discovery has shown that: (1) the Named Plaintiffs are not adequate class representatives; (2) Plaintiffs lack sufficient evidence to meet the numerosity requirement; (3) Named Plaintiffs' claims are neither common nor typical of the class; and (4) Plaintiffs' claims cannot be remedied by a single injunction. (Doc. No. 421 ("Decertify") at 2.) Defendant also challenges Class member standing. (*Id.* at 33-34.) Plaintiffs oppose decertification. (Doc. No. 582 ("Opp. to Decertify").)

## DISCUSSION

### I. Legal Standard

Once a class is certified pursuant to Federal Rule of Civil Procedure 23, the court retains a continuing duty to assure the propriety of certification. *See Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986). In addition, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Whether to decertify a class is within the district court's discretion. *See Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1157 (8th Cir. 2017). A decision to decertify a class should arise based on changed circumstances that were not present when

the class was certified. *Karsjens v. Piper*, 336 F.Supp.3d 974, 988 (D. Minn. 2018) (citing William B. Rubenstein, *Newberg on Class Actions* § 7:34 (5th ed. 2018 Update).)

The Court certified the Plaintiff Class on September 29, 2017 pursuant to Federal Rule of Civil Procedure 23(b)(2), concluding that the Class "comprises a cohesive group of similarly situated individuals receiving Disability Waivers and residing in CRS facilities whose circumstances are impacted by Defendant's actions and inactions with respect to the class as a whole." (Cert. Order at 34.) The Court observed that the Named Plaintiffs "assert injuries that are common to and typical of those alleged on behalf of the proposed class" and that the Named Plaintiffs and the proposed class "would all benefit from the remedies they seek in the form of a more consistent and equitable distribution of resources statewide." (*Id.* at 30-31.) The Court further observed that while Plaintiffs seek individualized services in order to obtain individualized housing options, they do not seek individualized injunctive relief for each class member; rather, "Plaintiffs seek final relief that would enable them to access individualized housing services and integrated residential settings through improvements to Defendant's administration of the Disability Waivers." (*Id.* at 34.)

Defendant contends that "in light of changed circumstances not present when the class was certified, including additional information exchanged during discovery that this Court could not consider when it certified the class," the Court should decertify the Class. (Decertify at 2.) Specifically, Defendant argues that the Named Plaintiffs are no longer adequate Class representatives, the Class no longer satisfies the numerosity requirements, Plaintiffs cannot show that their claims are common or typical to the Class, relief cannot

4

be granted through a single injunction, and Class members lack standing. The Court addressed many of the same arguments in its Order certifying the Class and finds that Defendant has failed to present changed circumstances such that its original analysis no longer applies. *Karsjens*, 336 F.Supp.3d at 988. The Court also finds that the Class is defined in such a way that all members within it have standing.

   A.   **Adequate Representation (Rule 23(a)(4))**

Defendant first argues that the Named Plaintiffs are no longer adequate Class representatives because two have moved into individualized and integrated homes, and a third has interests that differ from other Class members. (Decertify at 4-6.)

Plaintiffs argue that Defendant's focus on the present, individual circumstances of the Named Plaintiffs "is an attempt to bypass the Class-wide problems timely raised and the systemic relief sought by the Named Plaintiffs when moving for certification." (Opp. to Decertify at 19.) Plaintiffs contend that once the Class was certified, the claims that the Named Plaintiffs brought on behalf of the Class became the subject of the litigation; that no individual claims remained. (*Id.*) The Court agrees.

Once a Class has been certified, the Class acquires a "legal status separate from the interest" of the representative plaintiffs. *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975). So long as a live controversy remains between the defendant and the represented class, a class action will not be mooted even if the class representative's individual claims become moot. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

The record reflects that the two Named Plaintiffs who moved did not move until after the Class was certified, and that until they moved, their claims for systemic relief

5

were common to and typical of the members of the Class.  Defendant has not cited changes in her management of the Waiver programs such that the Court's analysis when it certified the Class no longer apples; therefore, the claims as they pertain to the Class continue.[3]  The Court also finds that the two Named Plaintiffs who moved have continued to adequately protect the interests of the class, and that their interests do not conflict with those they seek to advance; therefore, they remain adequate representatives of the Class as a whole.  *See Sosna*, 419 U.S. at 402 (1975).  With respect to the third Named Plaintiff, the Court finds that Defendant has failed to make a proper showing that she no longer shares the interests or has suffered the same injuries as the Class.  Therefore, she too remains an adequate class representative.  Only one adequate class representative is needed to satisfy the requirements of Rule 23(a)(4).  *Dalton v. Lee Publ'ns, Inc.*, 270 F.R.D. 555, 561 (S.D. 2010).  Accordingly, the Court finds that the Class continues to have adequate representation and declines to decertify it on this basis.

### B. Numerosity (Rule 23(a)(1))

Defendant next argues that the Court should decertify the Class because it no longer satisfies the numerosity requirement pursuant to Rule 23(a)(1) and that discovery has made clear that determining whether a person is a member of the Class is a highly individualized process that cannot be based on objective criteria.  (Decertify at 6-7.)

---

[3]  Ongoing justiciability of a class action requires a named plaintiff with a live case or controversy when her complaint is filed and at the time of class certification; however, the case may continue between the named defendant and a member of the class represented by the named plaintiff, even if the claim of the named plaintiff has become moot.  *See Sosna*, 419 U.S. at 401-02 (1975).

Citing responses to discovery requests, Defendant argues that Plaintiffs cannot demonstrate numerosity because Plaintiffs have not identified a sufficient number of persons "believed to be a class member, as well as 'each and every fact that refers or relates to [Plaintiffs'] belief that individual is a class member.'" (*Id.* at 8.)

Plaintiffs contend that this argument reiterates Defendant's initial opposition to certification, and that Defendant has not demonstrated any changed circumstances to her management policies and practices governing the Waiver programs that would provide a basis for the Court to reverse its determination that the numerosity requirement has been satisfied. (Opp. to Decertify at 23.) When the Court certified the Class, it recognized that according to Defendant's own 2016 Lead Agency Review of Hennepin County's Waiver programs, "nearly 100 individuals [with low needs] were not evaluated regarding or offered an opportunity to reside in the most integrated setting appropriate to their needs, consistent with Plaintiffs' proposed class definition." (Cert. Order at 10.) The Court accepted Plaintiffs' proposal to extrapolate the Hennepin County data by 5% to obtain a statewide Class member estimate. (*Id.*) The Court observed that "even if the Court relied on only the approximately 100 individuals in Hennepin County as the estimated class size, Defendant's role in overseeing the Disability Waivers statewide would support certification of a statewide class to remedy the alleged deficiencies in the program for all Disability recipients. (*Id.* at 10-11.)

Defendant contends that because Plaintiffs did not reference extrapolating the data from Hennepin County to a statewide estimate or state whether any person was "low needs" during discovery, Plaintiffs abandoned their extrapolation argument, and cannot

7

now satisfy the numerosity requirement. (Decertify at 8.) Defendant argues that at best, Plaintiffs identified only nine actual Class members. (Doc. No. 602 at 1.) Defendant relies on *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267-68 (11th Cir. 2009) to argue that Plaintiffs' failure to present actual evidence of additional class members amounts to mere speculation that the numerosity requirement is met. (Decertify at 11.)

In *Vega*, the court observed, "Vega has not cited, and we cannot locate in the record, any evidence whatsoever (or even an allegation) of the number of retail associates T-Mobile employed during the class period . . . who would comprise the membership of the class." *Vega*, 564 F.3d 1256 at 1267.) Here, the record is replete with evidence, including Defendant's own December 2018 press release, that raise questions common to a sufficiently large group of similarly situated Waiver recipients to satisfy the numerosity requirement. (*See, e.g.*, Doc. No. 584 ¶¶ 2-6 Ex. Nos. 1-5.) As the Court previously noted, "Plaintiffs are not required to specify an exact number or to prove the identity of each class member, rather, the plaintiffs must only show a reasonable estimate of the number of class members." (Cert. Order. at 6. (citing *Postawko v. Mo. Dep't of Corr.*, Civ. No. 2:16-cv-04219, 2017 WL 3185155, at *6, 12 (W.D. Mo. July 26, 2017), *aff'd*, No. 17-3029 (8th Cir. Dec. 7, 2018).)

While Defendant argues that Plaintiffs' Class fails the numerosity requirement because of alleged incomplete answers to interrogatories, the Court declines to overlook the remainder of the record which clearly indicates a sufficiently large group of similarly

situated individuals receiving Disability Waivers and residing in CRS facilities whose circumstances are impacted by Defendant's actions and inactions.[4]

Defendant also contends that the numerosity requirement fails because the Plaintiffs' Class is not ascertainable through objective data. (Decertify at 12.) Again citing Plaintiffs' responses to interrogatories, Defendant argues that Class membership requires an individualized determination. (*Id.* at 13.) The Court addressed this argument when it certified the Class; the Court adopts and incorporates herein its previous analysis and finds no reason to alter its determination that the Class is ascertainable through objective data. (*See* Cert. Order at 12-13.)

The Court reiterates that whether "the most integrated setting" requires an "individualized determination" is irrelevant to determining the scope of the Class; Plaintiffs do not have to prove a violation to establish that there is a sufficiently large enough group of people similarly affected by Defendant's conduct to warrant Class treatment of Plaintiffs' claims. (*See* Cert. Order at 12.) As the Court previously stated, "[b]ecause the focus in a [](b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a [](b)(2) action than in a [](b)(3) action." (Cert. Order at 13 (citing *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d. Cir. 2015).) This is true with respect to all of Plaintiffs' claims. A successful challenge to

---

[4] Defendant alleges that Plaintiffs abandoned their extrapolation theory because their answers to interrogatories did not cite their certification brief or any facts related to their previously argued theory. (Doc. No. 602 at 4.)

9

systemic issues can be remedied by requiring appropriate criteria and procedures, benefiting eligible individuals regardless of individual differences.

A decision to decertify a class should arise based on changed circumstances that were not present when the class was certified. *Karsjens*, 336 F.Supp.3d at 988. Defendant has failed to present changed circumstances such that the Court's analysis that the numerosity requirement is satisfied no longer applies. Accordingly, the Court declines to decertify the Class on this basis.[5]

### C. Commonality (Rule 23 (a)(2))

Defendant also argues that the Court should decertify the Class because Plaintiffs cannot show that their claims are common to the Class. (Decertify at 20.) Defendant largely reiterates the arguments she used to oppose Class certification. To the extent Defendant argues that discovery has shown that Plaintiffs admit that lead agencies are responsible for informing waiver recipients of available services, and therefore there are no common answers to the question of why a waiver recipient has not moved, the Court is unpersuaded. (*See*, *e.g.*, Doc. No. 291-1 at 61.) The Court adopts and incorporates herein its previous analysis and again rejects Defendant's arguments against commonality. (*See* Cert. Order 13-26.)

Defendant also argues that Plaintiffs have failed to identify any specific evidence in the record that demonstrates a common answer to why purported Class members have not moved to allegedly more integrated settings. (Decertify at 23.) Citing barriers

---

[5] If Defendant wishes to modify the Class definition, she may move the Court to do so.

10

"unrelated to Defendant's system" including employment opportunities, the state's minimum wage, the housing market, and criminal history, Defendant argues that the question of why an individual does not live in the most integrated setting cannot be answered on a classwide basis. (*Id.*)

Plaintiffs need only show that Defendant's actions are "a substantial factor in bringing about the harm." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003). As a public entity, Defendant must "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28. C.F.R. § 35.130(d). Whether Defendant's administration of its Waiver system is a substantial factor contributing to segregation is a question of fact common to the class that is capable of classwide resolution.[6] At this stage, Plaintiffs need not answer this question; it is sufficient that resolution of Plaintiffs' claims turn on common questions with common proof that will lead to common answers if Plaintiffs are successful. *Brown*, Civ. No. 17-7152, at *9.

### D. Typicality (Rule 23(a)(3))

Defendant next argues that the Class should be decertified because the Named Plaintiffs' claims are not typical of the Class members' claims. (Decertify at 27.)

---

[6] At this stage in the proceedings, Plaintiffs need not prove whether they will prevail on their claims; it is sufficient that they have raised common questions capable of classwide resolution. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Here, an injunction need not be perfect, so long as it provides relief to each member of the Class. *Brown v. District of Columbia*, Civ. No. 17-7152, 2019 WL 2985992, at *9 (D.C. Cir. July 5, 2019). Regardless of other barriers, an injunction that helps Defendant achieve her legally mandated outcome can provide relief to each member of the Class. (*See id.*)

Defendant reiterates her earlier arguments that: (1) the two Named Plaintiffs who moved are no longer Class members and therefore cannot raise claims typical of the Class; and (2) Plaintiffs' claims require individualized inquiries to determine whether they are actually in the Class and whether a legal violation has occurred. As discussed above, the Court is unpersuaded by these arguments. Defendant also argues that records produced in discovery show that Named Plaintiffs all received notice of their ability to appeal decisions regarding waiver services with which they disagree, and therefore cannot be typical of a Class that claims to have failed to receive notice. (Decertify at 28-29; Doc. No. 423 ¶¶ 5, 46, 47, Ex. Nos. 4, 45, 46.) The Court has reviewed the alleged notices and finds that the general information provided in them is not a proxy for proper notice of a specific proposed adverse action and that they fail to comply with the Due Process Clause or Medicaid regulations. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (due process requires that a recipient of public benefits must have timely and adequate notice detailing the reasons for a proposed termination and an opportunity to challenge the termination); *see also* 42 C.F.R. § 431.210 (governing the contents of proper "notice" under Medicaid.) Accordingly, the Court finds that the Plaintiff Class continues to satisfy the typicality requirement and declines to decertify the Class on this basis.

### E. Injunctive Relief (Rule 23(B)(2)

Defendant next argues that the Court should decertify the Class because the Court cannot provide the requested relief with a single injunction. (Decertify at 30.) While the Court previously rejected this argument in its order to certify the Class, Defendant challenges the Court's conclusion by citing *Brown v. District of Columbia*, 322 F.R.D. 51

(D.D.C. 2017) to argue again that barriers outside of its control prevent the Court from fashioning a single injunction that would remedy Class members' ability to transition to less restrictive residences. (Decertify at 32.)

In *Brown,* plaintiffs alleged that class members remained in nursing facilities in violation of the ADA and the Rehabilitation Act because defendant failed to provide effective transition services. *Brown*, 322 F.R.D. at 53. In concluding that the plaintiffs' claims could not be redressed by a single injunction, the court observed that numerous issues outside of the defendant's control, including lack of affordable housing, lack of income, or criminal histories, prevented class members from moving. *Id.* at 95. The court observed that "[g]iven the unique totality of barriers to community transition for each individual class member," a single injunction that would result in the class members being transitioned to community-based long-term care cannot be crafted." *Id.* at 95. Defendant argues that as in *Brown*, the Court would have to implement numerous mini-injunctions in order to provide relief for each class member. (Decertify at 32.)

*Brown* was overturned on July 5, 2019. *See Brown v. District of Columbia*, Civ. No. 17-7152, 2019 WL 2985992, (D.C. Cir. July 5, 2019) (hereinafter "*Brown II"*). The District of Columbia Circuit Court observed:

> Although the injunction must provide relief to each member of the class, the perfect need not be the enemy of the good. If a certain outcome is legally mandated and an injunction provides each member of the class with an increased opportunity to achieve that outcome, Rule 23(b)(2) is satisfied.

*Brown II* at 9. As in *Brown II*, Plaintiffs claim that their ability to live in the most integrated settings appropriate to their needs is legally mandated.[7] Because the proposed injunction would provide, at least in part, each member of the class an increased opportunity to achieve that outcome, the Court finds that Rule 23(b)(2) remains satisfied on the record before it. *See id.*

### F. Standing

Finally, Defendant argues that the Court should decertify the Class because Plaintiffs cannot show that every Class member has standing to sue on his or her own behalf. (Decertify at 33.) Specifically, Defendant contends that the Class is defined in such a way that it encompasses individuals who have not been injured by Defendant, and thus would not be affected by any remedy fashioned by the Court. (*Id.* at 34.)

Federal courts "do not require that each member of a class submit evidence of personal standing." *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1034 (8th Cir. 2010) (citing *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263–64 (2d Cir. 2006).) Still, a class cannot be certified if it contains members who lack standing. *Avritt,* 615 F.3d at 1034. A class "must therefore be defined in such a way that anyone within it would have standing." *Id.* at 1034 (citing *Denney*, 443 F.3d at 264.)

---

[7]  Defendant is a state agency responsible for ensuring Minnesota's compliance with the Medicaid Act in its provision of services. *See* 42 C.F.R. §§ 431.10(b), 431.10(e); Minn. Stat. §§ 256B.04, subd. 1; 256B.02, subd. 5. In addition, as a public entity that receives federal funds, Defendant is obligated to comply with the integration mandates of the ADA and Section 504 of the Rehabilitation Act ("RA") in administering the Disability Waivers. *See generally Murphy ex rel. Murphy v. Minn. Dep't of Human Servs.*, Civ. No. 16-2623, 2017 WL 2198133, at *21 (D. Minn. May 18, 2017).

The Class includes all individuals age 18 and older who are eligible for and have received a Disability Waiver, live in a licensed Community Residential Setting, and have not been given the choice and opportunity to reside in the most integrated residential setting appropriate to their needs. (Cert. Order at 35.) Defendant argues that because the Class definition contains no requirement that the members be denied services in violation of the Medicaid Act, be denied due process, or that the Class members' lack of choice and opportunity is the fault of Defendant, the Class is defined in such a way that it encompasses individuals who have not been be injured by Defendant, and thus would not be affected by any remedy fashioned by the Court. (Decertify at 34.)

As discussed above, Defendant is a public entity that must "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28. C.F.R. § 35.130(d). Defendant's administration of the Waiver system potentially affects the choice and opportunity of each Class Member to reside in the most integrated residential setting appropriate to their needs. Because the proposed injunction would provide, at least in part, each member of the class an increased opportunity to achieve increased choice and opportunity to live in the most integrated setting appropriate to their needs, all participants in the Waiver system will be affected by the proposed remedy. Accordingly, the Court finds that the Class is defined in such a way that anyone within it has standing.[8]

---

[8] To the extent that Defendant takes issue with the way the Class is defined, she
(Footnote continued on next page.)

## CONCLUSION

For the reasons set forth above, the Court finds that Defendant has failed to demonstrate changed circumstance warranting decertification of the Class.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Decertify the Class (Doc. No. [418]) is **DENIED**.

Dated: July 26, 2019                     s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge

---

(Footnote continued from previous page.) may move the Court to modify the definition; however, decertification is not the proper remedy. *See Alig v.Quicken Loans Inc.,* Civ. No. 5:12-cv-114, 2017 WL 5054287, at *10 (N.D. W. Va. July 11, 2017) ("decertification is a drastic step not to be taken lightly"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 302 F.R.D. 448, 459 (N.D. Ohio 2014), *appeal filed*, No. 15-3159 (6th Cir. Feb. 26, 3015) ("if possible, modification of the class definition, or use of subclasses, is generally preferred"). "Prior to decertification, the Court must consider all options available to render the case manageable." *Chisolm v. TranSouth Fin. Corp.,* 194 F.R.D. 538, 554 (E.D.Va.2000).