# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Tenner Murphy, by his guardians
Kay and Richard Murphy; Marrie
Bottelson; Dionne Swanson; and
on behalf of others similarly situated,

Civil No. 16-2623 (DWF/BRT)

                    Plaintiffs,

**MEMORANDUM
OPINION AND ORDER**

v.

Pam Wheelock[1] in her capacity
as Acting Commissioner of The
Minnesota Department of
Human Services,

                    Defendant.

---

Joseph W. Anthony, Esq., Peter McElligott, Esq., and Steven M. Pincus, Esq., Anthony
Ostlund Baer & Louwagie PA; Laura Farley, Esq., and Steven Andrew Smith, Esq.,
Nicholas Kaster PLLP; Barnett I. Rosenfeld, Esq., and Justin H. Perl, Esq., Mid-
Minnesota Legal Aid; Eren Ernest Sutherland, Esq., Justin M. Page, Esq., and
Steven C. Schmidt, Esq., Mid-Minnesota Legal Aid, Minnesota Disability Law Center,
counsel for Plaintiffs.

Aaron Winter, Brandon L. Boese, Janine Wetzel Kimble, and Scott H. Ikeda, Assistant
Attorneys General, Minnesota Attorney General's Office, counsel for Defendant.

Pari McGarraugh, Esq., and Samuel D. Orbovich, Esq., Fredrikson & Byron, counsel
for amicus ARRM.

---

[1]      The Court has substituted Pam Wheelock, Acting Commissioner of the Minnesota
Department of Human Resources, for Emily Johnson Piper. A public officer's "successor
is automatically substituted as a party" and "[l]ater proceedings should be in the
substituted party's name." Fed. R. Civ. P. 25(D).

**INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion to Exclude Expert Testimony of John Patterson (Doc. No. 488), and Defendant's Motion to Exclude Plaintiffs' Expert Testimony, Reports, and Opinions (Doc. No. 468). For the reasons set forth below, the Court grants Plaintiffs' motion, and denies Defendant's motion.

**BACKGROUND**

The Court previously detailed the background of this case in its May 18, 2017 Memorandum Opinion and Order (Doc. No. 54), and the Court only briefly summarizes the facts here.[2] In short, Plaintiffs are individuals with disabilities and Medicaid recipients who receive Home and Community Based Disability Waivers ("Disability Waivers") from the State of Minnesota under the direction of Defendant Pam Wheelock ("Defendant"), Acting Commissioner of the Minnesota Department of Human Services ("DHS"). Plaintiffs reside in Community Residential Setting ("CRS") facilities—otherwise known as corporate adult foster care—and wish to access various individualized housing services available under the Disability Waivers to pursue more integrated housing options. Plaintiffs assert that their current living situations isolate and segregate them from their communities in violation of federal law. To access the services they seek in a timely manner and with proper due process, Plaintiffs seek declaratory and

---

[2]     The Court directs readers to its May 18, 2017 Memorandum Opinion and Order and otherwise assumes familiarity with the facts and law elaborated therein. *See Murphy by Murphy v. Minn. Dep't of Human Servs.*, 260 F. Supp. 3d 1084 (D. Minn. 2017).

injunctive relief to reform Defendant's administration of the Disability Waiver programs. The Court supplements the relevant facts as needed, below.

Plaintiffs move to exclude the expert testimony of Defendant's expert, John Patterson ("Patterson"). (Doc. No. 488.) Patterson serves as Minnesota Housing's Director of Planning, Research, and Evaluation. (Doc. Nos. 491 ("Page Aff.") ¶ 3; 491-1, Ex. 2 ("Patterson Report") at 6.) He holds a Bachelor of Arts in Economics from Middlebury College, and a Master of Public Affairs from the Woodrow Wilson School of Public and International Affairs at Princeton University. (*Id*. at 102.) He has over twenty-five years of professional experience—eleven in his current capacity. (*Id.* at 101.) His testimony and opinions relate to the availability of affordable housing in Minnesota. (Page Aff. ¶ 2; Doc No. 491-1, Ex. 1 ("Expert Disclosure") at 2.)

Defendants move to exclude the expert testimony, reports, and opinions of Plaintiffs' experts, David Michael Mank, Ph.D. ("Dr. Mank"), and Dennis F. Price ("Price"). (Doc. No. 468.) Dr. Mank holds a Bachelor of Arts in Psychology and English from Rockhurst College, a Master of Science in Special Education from Portland State University, and a Doctor of Philosophy in Special Education and Rehabilitation from University of Oregon. (Doc. Nos. 494 ("Winter Decl. Part 1") ¶ 41; 498 ("Winter Decl. Part 3"), Ex. 40 ("Dr. Mank Report"), Ex. A ("Dr. Mank Resume") at 2.) Dr. Mank worked for 5 years as a resident assistant in an Oregon Intermediate Care Facility for people with intellectual and developmental disabilities. (Dr. Mank Report at 2.) He then worked as a Research Assistant, and later, Associate Professor at the University of Oregon on projects related to community living and integrated employment for people

with intellectual and developmental disabilities.  (*Id.*)  From 1996 to September 2016, Dr. Mank was director of the Indiana Institute on Disability and Community at Indiana University.  (*Id.*)  Mank's testimony and opinions relate to the nature of segregation and extent of choice in Corporate Foster Care ("CFC") facilities versus individualized housing options ("IHOs") in Minnesota.  (*Id.* at 1.)

Price holds a Bachelor of Arts in Psychology from Oakland University.  (Doc. Nos. 310 ("Schmidt Aff.") ¶ 5; 310-1, Ex. 4 ("Price Report") at 21.)  He has worked for over 40 years as a professional in the social services field.  (*Id.* at 20.)  For the past 30 years, he developed and oversaw the creation and continuous improvement of a variety of alternative means of supporting individuals with disabilities in the community, including housing.  (*Id.* at 20-24.)  Price's professional experience includes oversight of the Dakota County Housing and Resource Development Unit.  (*Id.* at 22.)  His opinions relate to: (1) whether Minnesota's *Olmstead* Plan is an effectively working plan ensuring that individuals with disabilities who live in CFC facilities are provided with reasonable choice and opportunity in their housing and appropriate assistance if they chose to move to IHOs; (2) whether the policies and practices of DHS are providing individuals with disabilities who live in CFC facilities with adequate choice and opportunity to reside in individualized housing options; (3) whether Plaintiffs' requested relief constitutes reasonable modifications to DHS's Disability Waiver service system that will assist individuals with planning or, moving to, and living in individualized housing options that are the most integrated settings appropriate to their needs; and (4) whether Plaintiffs'

requested relief fundamentally alters DHS's Disability Waiver Service System.  (*Id.* at 19.)

## DISCUSSION

### I.    Legal Standard

Before accepting the testimony of an expert witness, the trial court is charged with the "gatekeeper" function of determining whether an opinion is both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 820 (D. Minn. 2011).  The Eighth Circuit extended the *Daubert* holding to apply to non-scientific experts qualified by their experience, education, skill, or expertise in their field.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  When the district court sits as a finder of fact, "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."[3]  *David E. Watson*, *P.C. v. U.S.*, 668 F.3d 1008, 1015 (8th Cir. 2012).

A duly qualified expert may testify if:  (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).  "Expert

---

[3]    Plaintiffs withdrew their demand for a jury trial in this matter on November 8, 2018.  (Doc. No. 413.)  Defendant did not object.  (Doc. No. 414.)

testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation marks and citation omitted). Finally, expert testimony is appropriate when "it relates to issues that are beyond the ken of people of ordinary experience." *U.S. v. Clapp,* 46 F.3d 795, 802 (8th Cir.1995) (internal quotation marks and citation omitted). "Where the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous." *Id.*

In determining whether the proposed expert testimony is reliable, the Court can consider: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known rate of potential error; and (4) whether the theory has been generally accepted. *Id.* at 593-94. The purpose of these requirements "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co.,* 526 U.S. at 152.

In *Kuhmo Tire,* the Supreme Court determined, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152. In other words, a trial court should consider the specific factors identified in *Daubert* where there are reasonable measures of the reliability of expert testimony. *Id.* The objective of that requirement is to ensure the reliability and relevancy of expert testimony. *Id.*

The Court also notes that "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion.

*Lauzon*, 270 F.3d at 686 (quoting *Weisgram v. Marley Co.*, 169 F.3d 514, 523 (8th Cir. 1999)). When examining an expert opinion, a court applies a general rule that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner*, 259 F.3d at 929-30 (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)). "[I]f the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury," then it must be excluded. *Id.* at 929-30.

### A. Plaintiffs' Motion

Plaintiffs move to exclude the expert testimony of John Patterson. Patterson intends to testify with respect to "issues related to the availability and affordability of housing in Minnesota; the supply of low-income housing in Minnesota; [and] the Minnesota Housing Finance Agency's work to address issues related to low-income housing in Minnesota. (Page Aff. ¶ 2, Expert Disclosure at 2.) Patterson's report consists of four documents: (1) Minnesota Housing: Statewide Analysis of Gaps in Affordable Housing, dated March 2015; (2) Minnesota Housing Memorandum: Updated Gaps Analysis, dated September 7, 2017; (3) a PowerPoint entitled, Minnesota Housing: Key Trends in Housing, dated, January 2018; and (4) Minnesota Housing: The Loss of Naturally Occurring Affordable Housing, dated May 2, 2018. (*See* Patterson Report at 6.) Patterson did not prepare the documents for this case; nor did he review case specific facts prior to preparing his opinions in this matter. (Page Aff. ¶ 4, Doc. No. 491-1, Ex. 3 ("Patterson Dep.") at 31-32.)

Plaintiffs argue that Patterson's expert opinion and testimony should be stricken because "it is not relevant to the issue presented in the case, and it is common knowledge within the knowledge of the trier of fact." (Doc. No. 490 ("Pl. Memo.") at 6.) Specifically, Plaintiffs argue that Patterson's testimony is not relevant because this case is not about affordable housing. (*Id.* at 7.) They contend that Patterson's report does not offer any opinions about the essential elements of their claims, whether Defendant has fulfilled her statutory obligations with respect to those claims, or any opinion about causation. (*Id.* at 8.)

Plaintiffs argue further that even if Patterson's opinion is relevant, it should be excluded because "it will not help the trier of fact understand the evidence or determine a fact in issue." (*Id.*) Plaintiffs contend that there is no question that there is a tight housing market in parts of Minnesota, and that a deluge of recent media reports makes it such that "people of ordinary experience are clearly aware that there is a tight housing market in Minnesota." (*Id.* at 10.) To this end, Plaintiffs contend that having Patterson testify about "the obvious existence of a tight housing market would be superfluous and unnecessary." (*Id.*)

Defendant argues that Patterson's testimony is both relevant and helpful. (Doc. No. 547 ("Def. Opp.") at 8-12.) Defendant contends that Plaintiffs actually do expect her to provide affordable housing; therefore, Patterson's testimony with respect to the availability of affordable housing is relevant. (*Id.* 2-3.) She argues that Patterson's report directly addresses why people are unable to live in their preferred housing setting, and that this is plainly relevant to the issue in this case as a "cause-in-fact of an

individuals' failure to move not relating to any action of Defendant, but to the lack of an adequate affordable housing supply." (*Id.* at 9.) Defendant also argues that Patterson's opinions are beyond the scope of common sense, and disagrees that they are within the knowledge or experience of lay people. (*Id.* at 10.) She contends that Patterson's report contains a number of facts and opinions that "go beyond the simple existence" of a tight housing market, citing several statements laden with data and statistics that are outside of "common knowledge." (*Id*. at 10-12.)

The Court finds that opinions or testimony on the availability of affordable housing in Minnesota will not "assist the trier of fact to understand the evidence or the determine a fact in issue" in this case. *Daubert*, 509 U.S. at 591 (citing Fed. R. Evid. 702). Plaintiffs' case alleges that Class members rely on Defendant to access home and community-based Waiver services and that Defendant has failed to provide Class members with Waiver services to allow them to live in the most integrated setting appropriate to their needs. (*See generally* Doc. No. 33 ("Am. Compl.").) Plaintiffs seek declaratory and injunctive relief to reform Defendant's administration of the Disability Waiver programs. (*Id.* at 34-37.) Plaintiffs' desired relief does not include a request that Defendant actually provide housing.

Even if lack of affordable housing is one factor preventing an individual from living in the most integrated setting appropriate to his or her needs, it has no bearing on the unrelated issue of whether Defendant's Waiver system prevents an individual from living in the most integrated setting appropriate to his or her needs, nor does it have any impact on Plaintiffs' requested relief.

The District of Columbia Court of Appeals recently addressed a similar issue. *See Brown v. District of Columbia*, Civ. No. 17-7152, 2019 WL 2985992 (D.C. Cir. July 5, 2019). There, plaintiffs alleged that class members remained in nursing facilities in violation of the ADA and the Rehabilitation Act because defendant failed to provide effective transition services. *Id.* at *1. They requested injunctive relief that included a requirement to transfer a certain number of class members to the community each year. *Id.* at *11 n.13. The court addressed defendant's argument that its ability to transition class members into the community was impacted by barriers outside of its control, including lack of affordable housing. *Id.* at 11 n.13. The court found that the lack of affordable housing had "no bearing" on multiple portions of plaintiffs' requested relief, and that lack of available housing alone would not resolve the litigation in defendant's favor. *Id.* Unlike *Brown*, Plaintiffs' requested relief does not include a requirement to transfer any number of class members to the community each year. Therefore, the availably of affordable housing is of even lesser relevance here.

Even if the availability of affordable housing was relevant to Plaintiffs' claims, Patterson's report contains no analysis about the barriers that peoples with disabilities face in finding housing. (Patterson Dep. at 65-66.) Because Patterson's opinions and testimony "[do] not relate to any issue in the case, [it] is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Accordingly, the Court grants Plaintiffs' motion to exclude Patterson's expert opinions and testimony.[4]

---

[4]     Because the Court finds that Patterson's opinions and testimony are not relevant, the Court does not address whether they are common knowledge.

## B.    Defendant's Motion

Defendant moves to exclude the expert testimony, reports, and opinions of Plaintiffs' experts, Dr. David Michael Mank and Dennis F. Price.  She alleges that their opinions should be excluded because "they are not helpful to the factfinder; the experts are not qualified; and they are not reliable."  (Doc. No. 471 ("Def. Memo.") at 1.)

### 1.    Dr. David Michael Mank

Dr. Mank offers three opinions: (1) integrated settings must offer people with disabilities the ability to make meaningful life choice and experience full community participation; (2) CFC facilities are more segregated settings than IHOs because they are likely to have characteristics that limit choice and community engagement; and, (3) IHOs are more integrated settings than CFC facilities because they are likely to have characteristics that promote choice and community engagement.  (Dr. Mank Report at 4- 22.)  Dr. Mank's opinions are based on review of related documents, interviews of key informants, observations in CFC facilities and IHOs in Minnesota, and his personal experience in the disability services field.  (*Id. at* 1, 3-4.)

Defendant first argues that Dr. Mank's opinions should be excluded because they are not helpful.  (Def. Memo. 11-12.)  She contends that Dr. Mank started with a conclusion because he relied on Plaintiffs' counsel to determine what housing was a CFC or an IHO.  (*Id.*)  She alleges that without any testimony about how those locations were selected, or why they were categorized as CFCs or IHOs, Dr. Mank is unable to assist the factfinder in making any determination about the general characteristics of CFCs or

IHOs.[5]  (*Id.* at 11.)  Dr. Mank testified that he asked Plaintiffs' counsel to see both CFC facilities and IHO settings, but that he did not have any part in in the process of selecting which ones he visited.   (Winter Decl. Part 1 ¶ 40; Doc. No. 496 ("Winter Decl. Part 2"), Ex. 39 ("Dr. Mank Dep.") at 276-77.)[6]

If Dr. Mank's opinions were based solely on his visits to CFC facilities and IHO settings without context or experience to draw from, Defendant's argument would be more persuasive.  Here, Dr. Mank opines on the characteristics of CFC facilities and IHOs he visited in the context of his professional experience, published studies, and interviews with key informants.  (Dr. Mank Report at 1.)  Whether or not he observed every CFC facility or IHO in the state or relied on Plaintiffs' counsel for a list of which to target does not negate the overall usefulness of his opinions with respect to helping the factfinder better understand issues in this case, namely, the general differences between CFC facilities and IHOs.  Defendant's critique of Dr. Mank's methodology may be addressed on cross examination; however, the factual basis of his opinion goes to the

---

[5]     The Court observes that CFCs are statutorily defined.  *See* Minn. Stat. § 245D.02, Subd. 4d ("'Corporate foster care' means a child foster residence setting licensed according to Minnesota Rules, parts 2960.3000 to 2960.3340, or an adult foster care home licensed according to Minnesota Rules, parts 9555.5105 to 9555.6265, where the license holder does not live in the home.").

[6]     Dr. Mank subsequently filed a declaration stating that he "expressly asked [Plaintiffs' counsel] for a range of CFC facilities and IHOs to visit" and that "based on [his] experience and expertise conducting such research, [he] believe[d] the data [he] used was representative and reliable."  (Doc. 590 ("Dr. Mank Decl.") ¶¶ 6-7.)  Defendant argues that the cited portions of Dr. Mank's declaration should be stricken as untimely and unfairly prejudicial.  (Doc. No. 597 ("Def. Reply") at 9.)  at 2-4.)  The Court agrees. Accordingly, the Court does not consider the cited portions of Dr. Mank's declaration in its analysis.

credibility of the testimony, not its admissibility. *Bonner*, 259 F.3d at 929. The Court resolves any doubts regarding the overall value of Price's testimony in favor of its admissibility. *See Clark by Clark v. Hendrick*, 150 F.3d 912, 915 (8th Cir. 1998) (noting that "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility").

Defendant next argues that Dr. Mank's report, testimony, and opinions should be excluded because he is not qualified to opine on a system or setting in which he has no experience. (Def. Memo. at 14.) She contends that Dr. Mank lacks the requisite experience because he has not: (1) administered a statewide or county disability waiver system; (2) worked in an IHO or visited a CFC in Minnesota apart from his work in this case; or (3) provided direct care to a disability waiver recipient. (*Id.*) She also argues that his published works do not involve characteristics of CFCs or IHOs, that much of his scholarly research relates to integrated employment as opposed to housing, and that he did not consider or review Named Plaintiffs' income, medical, case management, or employment records to determine whether they are or were living in their most integrated settings. (*Id.*)

Despite Defendant's objections, the Court finds that Dr. Mank is qualified to opine on this case. Dr. Mank has over 40 years of experience working in the disability services field. (*See generally* Dr. Mank Resume.) His experience includes providing direct support to individuals in both segregated and integrated settings, and work as a researcher and educator on integration and full inclusion of people with disabilities. (*Id.*) He has also served as an expert in several disability related lawsuits involving housing and

community integration.  (Mank Report at 2-3.)  The Court finds that whether or not Dr.

Mank has administered a statewide or county disability waiver system not applicable to

the testimony and opinions he provides in this matter.  Further, the scope of his

experience with respect to integration and inclusion of individuals with disabilities

negates any argument that he is unqualified because he has not provided direct care

specifically to a disability waiver recipient, or failed to work in an IHO or visit a CFC

outside of his work for this case.  The Court finds that Dr. Mank's competencies clearly

match the testimony, report, and opinions he offers such that he qualifies as an expert in

this case.  *Robinson v. Geico Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006.)

Finally, Defendant argues that Dr. Mank's testimony and opinions should be

excluded because they are not reliable.  (Def. Memo. at 14-18.)  Defendant contends that

because Dr. Mank conducted interviews at only five CFCs and nine IHOs selected by

Plaintiffs' counsel to generate characteristics and quality of life outcomes that are more

likely at CFCs and IHOs, the analytical leap he attempts to draw from his small sample to

all CFCs and IHO in Minnesota is too great.  She also argues that Dr. Mank relied on

National Core Data ("NCI") that is flawed because DHS does not retain data in the form

that NCI requests, and because he used the most recent year available to compare

national-level group home versus "individual home" data on NCI's website which did not

include Minnesota, and was stale because it was from 2013-2014.  (Def. Memo. at 20.)

She argues further that the Minnesota Quality of Life Data that Dr. Mank relied on did

not compare group homes and IHOs and related only to daytime activities.  (*Id.*)  Finally,

she contends that Dr. Mank did not rely on sufficient facts to reach his opinions about

14

whether the Named Plaintiffs are or were in their most integrated setting because he relied on self-reports as opposed reviewing any documents. (*Id.*)

There is no one-size-fits-all test for reliability; rather, the Court must determine if an expert's opinions comply with the standards of the "relevant field." *Kumho Tire*, 526 U.S. at 152. Here, Dr. Mank conducted a qualitative study that drew from a variety of sources including interviews with various stakeholders, observations at CFC facilities and IHOs in Minnesota, national and state data, and review of nearly 100 different documents. (Dr. Mank Report at 3-4; *see also* Dr. Mank Report, Ex. B.) While Defendant argues that Dr. Mank's sampling of CFC facilities and IHOs was too small to generalize to Minnesota's CFC facilities and IHOs as a whole, Dr. Mank testified that qualitative research involves "collecting information that is credible and corroborated with other information" and that there is "no specific number" that constitutes an adequate sample size. (Dr. Mank Dep. at 192-93.) Dr. Mank also testified that the appropriate number of people to interview was based on, "context, what one is studying, [and] what other available sources other sources of information there are." (*Id.* at 221-222.)

The Court finds that Dr. Mank's approach is "one generally employed in the social sciences." *See U.S. v. Hammoud*, 381 F.3d 316 337 (4th Cir. 2004) (en banc) (rev'd on other grounds). In *Hammoud*, the Fourth Circuit upheld the admission of an opinion based on qualitative research that the expert described as:

> Basic academic intellectual research combined with the techniques I was taught in . . . various courses I took as an analyst for the government both taught that the best way to go about making sense of something in the

> social sciences is to collect as much information as possible and to balance
> each incoming piece of information against the body of information
> that you've built to that point....So it's a constant vetting process. And the
> more rigorous you are, the better your information will be.

381 F.3d at 337. This explanation closely resembles Dr. Mank's approach; he collected and corroborated information from a number of sources to build a body of information from which to draw his opinions. Accordingly, the Court declines to exclude his opinions based on the size of the specific size of his interview sample.

With respect to the reliability of the NCI data, that is a fact dispute that cannot be resolved on a motion to exclude experts. Even if the data is not reliable, Dr. Mank's opinions are based on his own experience and a variety of sources, rendering the NCI data a single element in a much larger framework. *See Glossip v. Gloss*, 135 S. Ct. 2726, 2745 (2015) (declining to exclude expert testimony when two of expert's multiple sources were disputed as unreliable).

While Defendant also cites other data as unreliable and takes issue with Dr. Mank's reliance on self-reports as opposed to document review, the factual basis of Dr. Mank's opinions go to the credibility of his testimony, not its admissibility. *Bonner*, 259 F.3d at 929–30. To the extent Defendant disputes his credibility, she may address her concerns through cross examination or rebut his testimony with her own expert. *See, e.g.*, *Rockwood Retaining Walls, Inc. v. Patterson, Thuente, Skaar & Christensen, P.A.*, Civ. No. 09-2493, 2011 WL 2845529, at *5 (D. Minn. July 18, 2011). Accordingly, the Court declines to exclude Dr. Mank's opinions as unreliable.

In summary, the Court finds that Dr. Mank is qualified as an expert in this matter, and that the testimony and opinions he offers are both helpful and reliable. The questions that Defendant raises with respect to the factual basis of Dr. Mank's opinions go to the credibility of his testimony, not its admissibility. *Bonner*, 259 F.3d at 929. Accordingly, Court denies Defendant's motion with respect to Dr. Mank.

### 2. Dennis F. Price

Price offers four opinions: (1) Minnesota's *Olmstead* Plan Does not effectively ensure that individuals with disabilities who live in CFC facilities are provided with reasonable choice, opportunity, or assistance to move to IHOs; (2) the policies and practices of DHS do not provide individuals with disabilities who live in CFC facilities with adequate choice and opportunity to reside in IHOs that are the most integrated settings appropriate to their needs; (3) Plaintiffs' requested relief constitutes reasonable modifications to DHS's Disability Waiver System that will assist individuals with disabilities with planning for, moving to, and living in IHOs that are the most integrated settings appropriate to their needs; and, (4) Plaintiffs' requested relief does not fundamentally alter DHS's Disability Waiver System. (Price Report at 26-77.) The opinions in his report are based on his personal knowledge, professional judgment, expertise, and analysis of materials and information, including information collected through interviews. (*Id.* at 24-25.)

Defendant first argues that Price's opinions about reasonable accommodation and fundamental alternation are not helpful because he does not offer an opinion about the cost of the proposed relief. (Def. Memo. at 10-11.) Defendant contends that because

Price does not opine about the State's budget or the competing demands of other services the State provides, his testimony will not be helpful to determine whether the State has an effectively working *Olmstead* Plan.[7]  (*Id.* at 11.)  She argues that Plaintiffs have the burden to show that their requested relief is reasonable before she has the burden to prove that the proposed accommodations constitute a fundamental alternation to its *Olmstead* Plan.  (Def. Reply at 9.)

The fact that Price does not offer a formal opinion on cost does not negate the overall helpfulness of his opinions with respect to the reasonableness of Plaintiffs' requested relief.  The Court finds that Price's opinions and supporting analysis will help it better understand the evidence in this case to determine the facts in issue, whether or not they include a full cost analysis.  Further, the record reflects that Price did consider the cost of Plaintiffs' requested relief to inform his opinions.[8]  The Court resolves any doubts regarding the overall value of Price's testimony in favor of its admissibility.  *See Clark by Clark*, 150 F.3d at 915.

Defendant next argues that Price's report, testimony, and opinions should be excluded because he is not qualified.  (Def. Memo. at 13.)  Defendant does not argue that Price is unqualified to offer any opinion in any case, but that he is not qualified to offer the opinions he gives in this particular case.  (Def. Reply at 7.)  In support, she argues

---

[7]     The Court notes that Price states, "[m]any of the items in Plaintiffs' requested relief can be incorporated in DHS's current efforts at little or no cost to the state."  (Price Report at 76.)  He also states his belief that Plaintiffs' requested relief would likely result in costs savings for DHS.  (*Id.*)

[8]     Defendant later cites these assertions as unreliable.

that he does not have experience administering a state waiver program, he has not managed a statewide review of the program, and he has not read the *Olmstead* decision.

The Court is unpersuaded. While Price has not administered a state waiver program, he has over 40 years of professional experience in the disability services in Minnesota, a decade of which included supervision of the waiver program of third largest county in Minnesota. (Doc. No. 589 ("Price Decl.") ¶¶ 4, 8, 9.) He also represented Dakota County on the Waiver Rates Advisory Group and served as an appointee of the Minnesota Association of County Social Service Agencies on the State Quality Council, which helped monitor and improve the quality of community-based services statewide. (Price Report at 21.) Based on Price's experience and knowledge in the disability services field, particularly in the area of waiver services, the Court finds that Price possesses sufficient "knowledge, skill, experience, training, or education sufficient to assist the trier of fact, which is satisfied where expert testimony advances the trier of fact's understanding to any degree." *Robinson v. Geico Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006.) (internal quotation marks and citation omitted.)

Finally, Defendant argues that Price's testimony and opinions should be excluded because they are not reliable. (Def. Memo. at 14-18.) Specifically, she argues that Price relied on "irrefutably unreliable data and failed to control for relevant factors when assessing the cost of service."[9] (*Id.* at 16.) Consequently, Defendant contends that

---

[9]     Defendant argues that Price used unreliable NCI data to conclude that "Minnesota has more individuals with disabilities living in four-person group homes than any other state in the country." (Def. Memo. at 16.) As discussed above, Defendant alleges that this data is not reliable because DHS does not retain data in the form that NCI requests.

Price's opinions on whether Plaintiffs' proposed modifications are reasonable, whether Minnesota has a working *Olmstead* Plan; and whether Plaintiffs' requested relief fundamentally alters DHS's Disability Waiver System are nothing more than *ipse dixit* and should be excluded. (*Id.* at 18.)

As discussed above, while cost is one factor that affects the reasonableness of Plaintiffs' modifications, failure to formally opine on the cost of service does not negate the overall usefulness or reliability of Price's opinions as a whole. While Defendant argues that Price relied on unreliable data to support his opinions, the Court finds that the contested data is one of several sources Price used to inform his opinions including his own personal knowledge, professional judgment, expertise, and consideration of hundreds of documents in preparing his report. (*See, e.g.*, Price Report at 79-88.) The factual basis of Price's opinions goes to the credibility of the testimony, not its admissibility. *Bonner*, 259 F.3d at 929. Defendant may test the credibility of Price's opinions on cross examination, rebut the testimony with her own witnesses, and submit her own contrary expert evidence so the factfinder my determine the proper weight and credibility to assign Price's testimony. *See*, *e.g.*, *Rockwood Retaining Walls, Inc.*, 2011 WL 2845529, at *5.

---

(*Id.*) Defendants also argue that Price relied on testimony taken out of context to assert that Plaintiffs' requested relief could result in cost savings for DHS. (*Id.*) Plaintiffs argue that the contested data is reliable. (Doc. No. 588 ("Pl. Opp.") at 24-25.) Whether or not the disputed data is reliable does not alter the Court's analysis.

In short, the Court finds that Price is qualified as an expert in this matter, and that the testimony and opinions he offers are both helpful and reliable. Accordingly, the Court denies Defendant's motion with respect to Price.

## CONCLUSION

For the reasons stated above, the Court finds that the expert testimony and opinions of John Patterson are not relevant to Plaintiffs' claims and excludes them on this basis. The Court also finds that despite Defendant's objections, experts Dr. David Michael Mank and Dennis F. Price both qualify as experts in this matter, and that their opinions are both helpful and reliable.

## ORDER

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion to Exclude Expert Testimony of John Patterson (Doc. No. [488]) is **GRANTED.**

2.    Defendant's Motion to Exclude Plaintiffs' Expert Testimony, Reports, and Opinions (Doc. No. [468]) is **DENIED**.


Dated:  August 6, 2019                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge