UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────

| | |
|---|---|
| Tenner Murphy, by his guardian Kay Murphy; Marrie Bottelson; Dionne Swanson; and on behalf of others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>Jodi Harpstead, in her Capacity as Commissioner of the Minnesota Department of Human Services,<br><br>　　　　　　Defendant. | Civil No. 16-cv-2623 (DWF/BRT)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |

───────────────────────────────

## INTRODUCTION

After almost six years of contested and intense litigation, Plaintiffs and Defendant (collectively, "the Parties") in this matter have reached consensus on a proposed settlement agreement ("the Agreement") that will benefit the lives of Minnesotans with disabilities by providing them with a greater opportunity to live in the homes of their own choosing. As set forth in the Agreement, Defendant will take a variety of actions that will improve the administration of the Disability Waiver system and provide class members who want to move out of their four-person group homes and into homes or apartments of their own with information and access to services that will allow them to do so. The Agreement avoids the significant risks, costs, and delay of ongoing litigation, and provides important relief to class members in a timely manner.

1

On many occasions, this Court made clear its belief that a settlement of this matter represented the best possible outcome, and that continued litigation was detrimental to the Parties. *See* Doc. 629 at 148:1-5 ("With all the talented people I've met through all the cases I've had on all sides of the issues, I just wish there was some way we could bring everybody together and say, well, let's just get some global resolution and end all this litigation."); Doc. 661 at 40 ("The Court is mindful that the parties worked diligently to reach a settlement agreement prior to its rulings. The Court hopes that the parties may now redouble their efforts, as continued litigation will do little to serve the interests of either party."); Doc. 737 at 9 ("As this matter continues, the Court encourages the parties to work together and to use their energy to work toward a solution that benefits all. The Court cannot understand how continued litigation benefits either party and continues to make itself available to assist with settlement if the parties have an interest in doing so."). The Parties have heeded the Court's advice and have reached agreement on a global solution that benefits all. Plaintiffs' file this unopposed motion, asking the Court to issue an Order that grants preliminary approval of the Agreement, approves the Notice procedure described in Paragraph 6 of the Agreement, sets a time for the filing and hearing of the Parties' Joint Motion for Costs and Attorneys' Fees pursuant to Rule 23(h)(1), and schedules a Fairness Hearing consistent with the requirements of Rule 23(e)(2) of the Federal Rules of Civil Procedure.

## **BACKGROUND**

Plaintiffs filed their Complaint in this matter on August 3, 2016. *See* Doc. 1. The basic allegations in the Complaint set forth that Defendant over-relies on the four-person

group home model to serve people with disabilities, instead of offering them the opportunity to live in their own homes or apartments. *Id.* Plaintiffs asserted that Defendant's administration of the Disability Waiver program violated the reasonable promptness provision of the Medicaid Act, the due process requirements of the 14th Amendment and Medicaid Act, and the Integration Mandate of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *Id.* Plaintiffs sought a variety of reasonable modifications to Defendant's Waiver program to enable them to have a greater opportunity to move out of their group homes and into homes of their own. *Id.* Defendant has and continues to deny any liability. *See* Doc. 55.

After the Court denied Defendant's motion to dismiss in May 2017, *see* Doc. 54, it certified this matter as a class action in September 2017. *See* Doc. 99. The class is defined as:

> All individuals age 18 and older who are eligible and have received a Disability Waiver, live in a licensed Community Residential Setting, and have not been given the choice and opportunity to reside in the most integrated residential setting appropriate to their needs.

*Id.* at 35. Tenner Murphy, by his guardians Kay and Richard Murphy,[1] Marrie Bottelson, and Dionne Swanson were appointed as class representatives. *Id.* Attorneys from Mid-Minnesota Legal Aid and Anthony Ostlund Baer & Louwagie P.A.[2] were appointed as

---

[1] Richard Murphy was removed from the case caption after he passed away in 2019. *See* Doc. 649.
[2] Anthony Ostlund Baer & Louwagie P.A. is now known as Anthony Ostlund Louwagie Dressen & Boylan P.A.

3

class counsel. *Id.* The Court later appointed attorneys from Nichols Kaster PLLP as additional class counsel. *See* Doc. 230.

The initial discovery period occurred from July 2017 until September 2018. Dispositive motions were filed in November 2018, and heard by the Court in January 2019. After allowing the parties to engage in settlement negotiations, the Court issued its orders on the parties' dispositive motion in July, August, and September 2019. *See* Docs. 640, 644 & 661. The Court granted Plaintiffs' motion for partial summary judgment and their motion to exclude one of Defendant's experts, and denied Defendant's motions for summary judgment, decertification, and to exclude both of Plaintiffs' experts. *Id.*

The COVID-19 pandemic began before the Court set the matter for trial. Because Plaintiffs' Complaint seeks prospective injunctive relief, the Court ruled that an additional discovery period was needed to provide both parties with information on events that had occurred since June 15, 2018, the end date of the initial discovery period. *See* Doc. 718. The parties engaged in a supplemental discovery period from February 2021-April 2022. In April 2022, the Court set this matter for a bench trial to begin on July 11, 2022. *See* Doc. 823.

The Parties then engaged in a two-day mediation with the Honorable James M. Rosenbaum (Ret.) on June 2 and 3, 2022. At the conclusion of the mediation, the Parties reached consensus on the principal terms of a settlement agreement. The Agreement was fully executed on June 27, 2022. The Agreement sets forth that Plaintiffs will file this unopposed motion for preliminary approval.

## THE PROPOSED SETTLEMENT AGREEMENT

The parties' Agreement is provided as an exhibit to this motion and will be briefly summarized here. *See* Declaration of Steven C, Schmidt ("Schmidt Decl."), Ex. 1. The injunctive relief provided for in the Agreement can be broken into five main categories: Inform and Educate, Train, Assess, Provide Services, and Measure Outcomes.

- **Inform and Educate:** Paragraphs 2.A.-2.C. of the Agreement require changes to Minnesota Department of Human Services ("DHS") policies so that class members who are interested in moving or learning more about moving receive information about services that are available to them, including Housing Stabilization Services ("HSS").[3] The changes also set forth that notices must be provided when HSS is denied, ensuring that the class members' due process rights are protected.

- **Train**: Paragraphs 2.D.-2.F. add new training information and requirements for MnCHOICES assessors and Disability Waiver case managers related to assisting individuals who reside in group homes and wish to move to their own homes.

- **Assess**: Paragraph 2.G. requires MnCHOICES Assessors to ask individuals who reside in group homes whether they would like to move or are interested in learning more about moving, and to document those responses. Paragraph 2.H.

---

[3] Housing Stabilization Services ("HSS") is a new Medicaid benefit in Minnesota that is designed "to help people with disabilities, including mental illness and substance use disorder, and seniors find and keep housing." *See* Minnesota Department of Human Services, "Housing Stabilization Services," https://mn.gov/dhs/partners-and-providers/policies-procedures/housing-and-homelessness/housing-stabilization-services/housing-stabilization-services.jsp, last updated June 28, 2022.

takes information learned from the MnCHOICES assessments to generate a report (the "MnCHOICES Report") that will help identify class members who wish to move.

- **Provide Services:** Paragraph 2.I. sets forth that Defendant will work with Lead Agencies to help them assist class members who have indicated that they wish to move or learn more about moving. For each individual identified in the MnCHOICES Report, Defendant will instruct the individual's Waiver case manager to provide the individual with information about HSS, and Defendant will conduct follow up to help the Lead Agencies develop plans and overcome barriers that may exist for people who are having difficulty accessing HSS or have concerns about their case managers.

- **Measure Outcomes:** Paragraph 2.J. requires Defendant to create and publicize additional measurements related to the Agreement and the provision of HSS.

The Agreement also contains a specific provision related to additional assistance for Named Plaintiff Dionne Swanson, and a provision for Plaintiffs' costs and attorneys' fees. The Agreement is effective for 36 months from the date that the Court grants final approval.

## DISCUSSION

Federal Rule of Civil Procedure 23(e) sets forth that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." "In the class action context in particular, there is an overriding public interest in favor of settlement. . . Settlement of the complex disputes often involved in class actions minimizes the

6

litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Yarrington v. Solvay Pharms., Inc*., No. 09-CV-2261 (RHK/RLE), 2010 WL 11453553, at *6 (D. Minn. Mar. 16, 2010) (citations omitted). In the class action context, "[a] settlement agreement is 'presumptively valid.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *In re Uponor,* 716 F.3d 1057, 1063 (8th Cir.2013)).

To grant preliminary approval of a proposed settlement agreement, the Court must determine that it is likely that it will grant final approval of the agreement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B)(i). "[B]efore scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing" *Cleveland v. Whirlpool Corp.*, No. 20-CV-1906 (WMW/KMM), 2021 WL 5937403, at *6 (D. Minn. Dec. 16, 2021) (citations omitted). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval." *Id.* (citations omitted).

To decide that it is likely that it will grant final approval of a proposed settlement agreement, the Court must consider whether the agreement is "fair, reasonable, and adequate" by taking into account whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

7

>(C) the relief provided for the class is adequate . . . and
>(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). A review of these criteria establishes that the Agreement is fair, reasonable, and adequate. As a result, the Court should grant preliminary approval, approve the plan to distribute notice to the class members, and set a date for a Fairness Hearing.

## I. THE AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

### A. The Class Representatives and Class Counsel have Adequately Represented the Class.

First, the Court should consider whether the class representatives and class counsel have adequately represented the class. This Court has previously determined on two occasions that the class representatives and class counsel were adequate representatives of the Class. *See* Doc. 99 at 29-31; Doc. 640 at 5-6. There is no reason for the Court to now deviate from these determinations. On the contrary, since the Court's decision to deny decertification of the class, the class representatives have each produced additional documents related to their personal lives, sat for additional depositions, and actively participated in the settlement negotiations that led to the Agreement. Moreover, class counsel vigorously advocated for the class during the additional discovery period and in settlement negotiations. The class representatives and class counsel have adequately represented the class throughout the course of this litigation.

### B. The Proposal Was Negotiated at Arm's Length.

Second, the Agreement was negotiated at arm's length. In evaluating this factor, "courts are most concerned with the character of the settlement negotiations and the

8

absence of collusion." *Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023-RAL, 2016 WL 96156, at *6 (D.S.D. Jan. 8, 2016) (citing Newberg on Class Actions § 13:13 (5th ed. 2011)).  When a proposed agreement is "preceded by a lengthy period of adversarial litigation involving substantial discovery," or the negotiations are "conducted by a third-party mediator," courts are less likely to determined that there is collusion.  *See* 4 Newberg on Class Actions § 13:14 (5th ed.) (citing cases); *see also Khoday v. Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016) ("[A]rm's length negotiations and an absence of collusion is reasonably inferred in light of the fact that the adversarial process of this litigation has been vigorous during the course of the dispute, spanning several years and hundreds of court filings....").

In this instance, the Agreement was preceded by an incredibly lengthy and adversarial litigation involving substantial discovery, and multiple rounds of negotiations conducted by third-party mediators. The parties have litigated this matter since 2016. During the course of this litigation, there were 29 contested motions filed and 13 appeals of decisions by the Magistrate Judge to the District Court. Given delays caused by the COVID-19 pandemic, the parties essentially engaged in two discovery periods.  In total, the discovery in this matter consisted of millions of pages of documents, close to eighty fact depositions, and ten expert reports.  This extensive amount of discovery allowed the parties to obtain a "sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.,* 315 F.R.D. 226, 236 (E.D. Mich. 2016).

Moreover, the negotiations were conducted by both an experienced federal magistrate judge and a well-respected former federal district court judge. The Honorable James M. Rosenbaum (Ret.) presided over a two-day mediation session on June 2 and 3, 2022, that led to the terms of the Agreement. Prior to that, the parties engaged in a series of settlement conferences with Magistrate Judge Becky R. Thorson in 2017 and 2019, which provided the framework for the later mediation. There is no doubt that negotiations in this matter were conducted at arm's length and that there was no collusion between the parties in reaching the Agreement.

### C. The Relief Provided for the Class is Adequate.

Next, the Court must determine that the relief provided in the Agreement for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Fed. R. Civ. P. 23 instructs courts to consider four factors:

(i)   the costs, risks, and delay of trial and appeal;
(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)  any agreement required to be identified under Rule 23(e)(3);

Fed. R. Civ. P. 23(e)(2)(C). Each of these factors supports a conclusion that the relief provided for the class is adequate.

### 1. The costs, risks, and delay of trial and appeal.

First, the Court must consider "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). "Class actions, in general, 'place an enormous burden of costs and expense upon [ ] parties.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th

Cir. 2015) (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir.1975)). This matter is no different. As noted above, this case has gone on for nearly six years with two extensive rounds of discovery, and the parties have already consumed significant resources and incurred significant expenses. Had the parties not reached an Agreement, these costs would have grown substantially. The parties would have had to generate numerous pretrial filings and engage in a trial that would have lasted 15-20 days, with hundreds of exhibits, dozens of fact witnesses, and three expert witnesses. Following trial, an appeal to the Eighth Circuit Court of Appeals was likely by one or both parties. The Agreement allows the parties to avoid the major costs associated with trial and appeal.

Furthermore, the risk associated with proceeding to trial and appeal is significant for both sides. This matter had been highly contested since its inception, with dozens of legal and factual disputes between the Parties. The Court's Order on the Parties' motions for summary judgment identified numerous questions of fact that would need to be determined at trial. *See, e.g.*, Doc. 661 at 34 (noting that Plaintiffs needed to show at trial that their requested accommodations would lead to an increased opportunity to move); *id.* at 36 (noting Defendant needed to demonstrate at trial that Minnesota's *Olmstead* Plan is "sufficiently comprehensive or effectively working such that it serves as a total defense to Plaintiffs' claim."). With an Agreement in place, the Parties avoid the significant risk associated with uncertain answers to these and other fact questions. Moreover, the Court has made many legal determinations that would likely be subject to argument on appeal. *See, e.g.*, *id.* at 14 (holding that that the reasonable promptness and fair hearing

11

provisions of the Medicaid Act are privately enforceable); *id.* at 28 (holding that unjustified isolation constitutes discrimination based on disability beyond the limited scope of institutionalization). By reaching consensus, the Parties avoid the risk associated with an appellate review of the Court's legal conclusions.

Most importantly, the delay that would result if this case proceeded to trial and appeal, even if Plaintiffs prevailed, would be detrimental to the wellbeing of the class members. Plaintiffs filed this lawsuit because of their belief that class members needed assistance as soon as possible to have the opportunity to move out of group homes and into their own homes. The Agreement achieves that objective. Had this case gone to trial and the Court's ruling appealed, any substantial relief for the class members would not have been realized for several years. By that time, it is likely additional changes to Defendant's service system would occur, creating the potential need for additional discovery to determine the proper scope of injunctive relief. *See* Doc. 726 at 6 (noting that changes to Defendant's policies could "require even more discovery for a remedies phase"). By adopting the Agreement, the parties avoid these various negative outcomes, and the class members should begin to receive the assistance that will increase their opportunity to move out of their group homes and into their own homes within 12 months of final approval of the Agreement. This fact weighs strongly in favor of approving the Agreement. *See Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (recognizing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making settlement an "attractive resolution" of the case).

### 2. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.

Next, the Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). In this case for prospective injunctive relief, the class members will not need to submit claim forms or otherwise inform Defendant that they would like to benefit from the Agreement. Rather, the provisions of the Agreement will assist all individuals who indicate during their MnCHOICES assessment that they are interested in moving or learning more about moving. Moreover, other provisions of the Agreement, such as the mandatory training of case managers and new notice and measurement requirements, should benefit both the class members and the Disability Waiver service system as whole. Under the terms of the Agreement, relief will be distributed effectively to the class.

### 3. The terms of any proposed award of attorney's fees, including timing of payment.

The Court should also consider "the terms of any proposed award of attorney's fees, including timing of payment" when determining the adequacy of Plaintiffs' relief. Fed. R. Civ. P. 23(e)(2)(C)(iii). The Agreement requires Defendant to pay Plaintiffs' attorneys $1.138 million for costs and attorneys' fees associated with this matter. This figure represents approximately 22% of the total costs and fees that Plaintiffs' counsel has

incurred over the course of the seven years that they have been working on this matter.[4] This figure is significantly less than awards of attorneys' fees and cost in other complex disability rights class action matters that have proceeded for a similar or shorter length of time. *See, e.g.*, *C.P.X. v. Garcia*, No. 417CV00417SMRHCA, 2021 WL 302754, at *2 (S.D. Iowa Jan. 7, 2021), *aff'd*, No. 21-1206, 2021 WL 5917780 (8th Cir. Dec. 15, 2021) (awarding $4.89 million in attorneys' fees and costs in a disability rights class action that lasted 4 years); *Lane v. Brown,* No. 3:12-CV-00138-ST, 2016 WL 589684, at *4 (D. Or. Feb. 11, 2016) (awarding $5.25 million in attorneys' fees and costs in an *Olmstead* class action that lasted four years); *Rosie D. ex rel. John D. v. Patrick*, 593 F. Supp. 2d 325, 335 (D. Mass. 2009) (awarding $7.1 million in attorneys' fees and cost in a Medicaid class action lawsuit that lasted seven years).  While Plaintiffs may have been able to recover more than the agreed-upon amount after a successful trial, in order to obtain resolution for the class, Plaintiffs and their counsel were willing to compromise on this issue.

As required by Fed. R. Civ. P. 23(h)(1) and Paragraph 2.M of the Agreement, the Parties will file a joint motion for costs and attorneys' fees at a date the Court sets.  The joint motion will set out the request for costs and attorneys' fees in more detail.  Plaintiffs respectfully request the Court set a time for the Parties to submit this joint motion, with the motion being due at least 14 days prior to the deadline that the Court sets for class member objections to the Agreement.  Plaintiffs also request that a hearing on the Parties'

---

[4] Prior to Plaintiffs filing this lawsuit, the Parties spent approximately one year attempting to negotiate a resolution.

14

joint motion for costs and attorneys' fees be set for the same time as the Fairness Hearing in this matter.

### 4. Any agreement required to be identified under Rule 23(e)(3).

There are no additional agreements "made in connection with the proposal," as defined in Rule 23(e)(3), that the Court needs to consider when determining the adequacy of the relief provided to the Class. Fed. R. Civ. P. 23(e)(2)(C)(iv). This factor further supports the adequacy of the Agreement.

In sum, a consideration of the four factors enumerated in Fed. R. Civ. P. 23(e)(2)(C) demonstrates that the relief provided in the Agreement is adequate for the Class.

### D. The Proposal Treats Class Members Equitably Relative to Each Other.

Finally, the Court must consider whether the proposal treats class members equitably relative to each other. With the exception of one provision for the benefit of Named Plaintiff Dionne Swanson,[5] the Agreement does not differentiate between class members. All class members will benefit from the broad policy changes. Moreover, each class member who indicates a desire to move or interest in learning more about

---

[5] Paragraph 2.K of the Agreement affords additional injunctive relief to Dionne Swanson, in the form of assistance from DHS's Community Capacity and Positive Supports Team. Given the effort Ms. Swanson has put forth as a class representative and her current living situation, this relief is appropriate. Ms. Swanson remains in the same group home that she has lived in since 2004. Ms. Swanson continues to wish to move into a home of her own, and this provision assists her with that goal. To the extent that the Court considered this an "incentive award" for Ms. Swanson, it is appropriate. *See Tussey v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017) (recognizing that incentive awards are acceptable because they "compensate lead plaintiffs for their work and the benefit they have conveyed on the rest of the class.").

moving will be offered the opportunity to receive HSS. The Agreement treats class members equitability, and thus this factor supports preliminary approval of the Agreement.

## II. THE NOTICE PROVISION DIRECTS NOTICE TO CLASS MEMBERS IN A REASONABLE MANNER.

When granting preliminary approval, Rule 23 requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-CV-2863 (WMW/BRT), 2022 WL 872909, at *5 (D. Minn. Mar. 24, 2022) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)). "Under Rule 23(e), notice to class members 'must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id.* (*quoting Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)). Generally speaking, the notice is sufficient if it "informs the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the [Fairness] hearing." § 3 Newberg on Class Actions § 8:17 (5th ed.).

In this instance, the parties proposed notice document and process are sufficient to satisfy due process and Rule 23. The parties intend to direct the notice to potential class members who reside in group homes and have indicated a desire to move or learn more

16

about moving. The notice document informs class members about the basics of the lawsuit and the terms of the Agreement. *See* Schmidt Decl., Ex. 1 at 22 ("Exhibit B to the Settlement Agreement and Release"). It directs the class members to the Court file and to Plaintiffs' counsel if they would like more information about the case. It apprises class members of their right to object to the Agreement, and explains the process for filing an objection. It also explains that the approved settlement will bind the class members, as there is no right to opt out of this 23(b)(2) class action. The notice process and document included in the Agreement satisfy the reasonableness standard imposed by due process, and should be approved by the Court.[6]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Agreement for the purposes of approving and ordering dissemination of the Notice Documents, as described in Paragraph 6 of the Agreement; set a time for the Parties' joint motion for Costs and Attorneys' Fees pursuant to Rule 23(h)(1); and schedule a Fairness Hearing consistent with the requirements of Rule 23(e)(2) of the Federal Rules of Civil Procedure.

---

[6] The notice also provides specific information about the costs and attorneys' fees provision and the joint motion the Parties intend to file under Rule 23(h)(1). Consequently, the notice documents also satisfy the requirement of Fed. R. Civ. P. 23(h)(1) that notice of any motion for attorneys' fees and costs be "directed to class members in a reasonable manner." *See* Fed. R. Civ. P. 23(h)(1) advisory committee's note (2003) ("In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e)").

**MID-MINNESOTA LEGAL AID**
**MINNESOTA DISABILITY**
**LAW CENTER**

Dated: July 1, 2022    By: *s/Justin H. Perl*
Justin H. Perl (#151397)
Steven C. Schmidt (#0392442)
Justin M. Page (#0321631)
Eren Sutherland (#0397863)
111 N. 5th St., Suite #100
Minneapolis, MN 55403
Telephone: 612-746-3727
Fax: 612-334-5755
jperl@mylegalaid.org
sschmidt@mylegalaid.org
jmpage@mylegalaid.org
esutherland@mylegalaid.org

**ANTHONY OSTLUND**
**LOUWAGIE DRESSEN &**
**BOYLAN P.A.**

Dated: July 1, 2022    By: s*/Steven M. Pincus*
Joseph W. Anthony (#0002872)
Steven M. Pincus (#0171414)
Peter J. McElligott (#0397578)
90 South 7th Street
3600 Wells Fargo Center
Minneapolis, Minnesota 55402
Telephone: 612-349-6969
janthony@anthonyostlund.com
spincus@anthonyostlund.com
pmcelligott@anthonyostlund.com

**NICHOLS KASTER, PLLP**

Dated: July 1, 2022   By: s/*Laura A. Farley*
Steven Andrew Smith (#0260836)
Laura A. Farley (#0397455)
4700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
smith@nka.com
lfarley@nka.com

**ATTORNEYS FOR PLAINTIFFS**